Demian A. Schane
Thomas S. Waldo
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: dschane@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, SIERRA CLUB, and LYNN CANAL CONSERVATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; COLONEL TIMOTHY J. GALLAGHER, in his official capacity as District Engineer; LARRY L. REEDER, in his official capacity as Chief of the Regulatory Branch; DOMINIC IZZO, in his official capacity as Principal Deputy Assistant Secretary of the Army (Civil Works); and UNITED STATES FOREST SERVICE,<br><br>Defendants. | Case No. J05-0012 CV (JKS) |

**DECLARATION OF COUNSEL**

I, Thomas S. Waldo, hereby declare:

1. I am one of the attorneys representing the Plaintiffs in this case. I submit this declaration pursuant to Local Rule 7.2(c)(1)[A] in support of Plaintiffs' Motion for Shortened Time and Expedited Consideration filed today.

2. Plaintiffs seek expedited consideration because it is possible that an expedited briefing schedule on the merits of this case could resolve the case without the need for preliminary injunction proceedings. Coeur Alaska, Inc. is currently constructing the Kensington Mine. This action challenges an important permit needed for the mine. If Count I is not briefed and decided on an expedited schedule, preliminary injunction proceedings will be necessary.

3. This action challenges a permit issued by the Army Corps of Engineers under section 404 of the Clean Water Act for the discharge of "fill material" into a lake. The permit would allow Coeur to discharge about 210,000 gallons per day of a tailings slurry into Lower Slate Lake, an undeveloped, fish-bearing water body located in the Berners Bay watershed between Juneau and Haines, in the Tongass National Forest. The discharge would ultimately deposit about 4.5 million tons of solids into the lake, killing all the fish and aquatic life for at least the 10 to 15 year life of the mine. Plaintiffs allege that this permit violates the Clean Water Act.

4. According to information provided to me by the attorneys for Coeur Alaska, Inc., the mining company began building a road from the proposed mill site to the Slate Lakes area last October, before the permit was suspended. At some point after the construction of the road but before spring runoff, Coeur planned to build a drainage ditch and pipeline system around Lower Slate Lake, with the intention of diverting spring runoff and Slate Creek around the lake, to lower the lake's water level. The lowered water level would facilitate construction to begin later in the summer of a dam 90 feet high and 500 feet long, for the purpose of creating an impoundment that will contain the tailings discharge from the mine. Before the water level can be raised behind the dam, Coeur will need to clearcut all of the trees around the lake.

5. On March 30, 2006, the day the revised Record of Decision reinstating the permit was released to the public, Coeur d'Alene Mines Corporation issued a press release stating the company "will now focus on moving forward with the full-scale construction of the mine," with gold production anticipated to begin in 2007. Media reports stated that Coeur plans to add 100 new workers. That day, I phoned one of the attorneys representing Coeur to ask more specifically what the construction schedule would be for the road, the diversion system, and the dam, now that the permit has been reinstated. I spoke again with one of the attorneys on Monday, April 3, 2006. They are still attempting to ascertain this information from Coeur. In response to my inquiries, Coeur has shown no willingness to refrain voluntarily from any construction activities during this litigation.

6. Each step of this process causes progressively more harm to Plaintiffs' interests. The road to the Slate Lakes area will enter a wooded basin that is currently roadless. Based on advice available to Plaintiffs, construction of the ditch and pipeline will likely cause significant erosion problems detrimental to the lake, and the lowering of the water level in the lake would have a particularly adverse effect on fish and aquatic life in Lower Slate Lake. Further, Coeur has changed its construction plans frequently, and Plaintiffs cannot be certain what else might change as time passes.

7. It is impossible to identify a specific date by which it is critical to have a resolution of this dispute. The dates will depend on weather and on construction decisions by Coeur that are beyond the control of Plaintiffs. While the harm is progressively worse over time, the diversion of spring runoff and construction of the dam are of particular concern to Plaintiffs because of the significant adverse effect they will have on Slate Lake and its surrounding environment. In light of the ongoing harm, and to reduce the likelihood that Plaintiffs will need to seek a preliminary

injunction, Plaintiffs request that the Court decide Count I at the earliest date allowed by the Court's calendar.

8. Plaintiffs have attempted to work out this problem in several ways before filing this motion.

9. First, months before all the permits were issued, Southeast Alaska Conservation Council entered into negotiations with Coeur in an attempt to see if there was a solution that would avoid litigation. After several months of effort, these negotiations were unsuccessful, and Plaintiffs promptly filed this action.

10. Shortly after the original complaint was filed, I contacted attorneys for the Federal Defendants and for Coeur to discuss the possibility of negotiating a schedule that would avoid irreparable harm to Plaintiffs while resolving the case promptly. These discussions were inconclusive, because, at about that time, the City and Borough of Juneau offered its resources to facilitate mediation between Plaintiffs and Coeur. The parties accepted. Plaintiffs and Coeur participated in one full day of mediation on October 20, 2005, facilitated by former Alaska Attorney General Avrum Gross and Juneau Mayor Bruce Botelho. This mediation was unsuccessful.

11. In deference to the mayor, Plaintiffs did not file any motions for injunctive relief before the mediation, and Coeur did not proceed with construction of the road to Slate Lakes.

12. Following the unsuccessful mediation, Plaintiffs filed a motion for a shortened briefing schedule and expedited consideration, which the Court granted on November 3, 2005. Before briefing began, Federal Defendants moved for a voluntary remand and to stay the litigation schedule. The Court entered an order remanding the case on November 14, 2005.

13. The Army Corps subsequently suspended the permit, prohibiting additional fill but allowing construction to continue on previously filled lands.

14. Last Thursday, March 30, 2006, the Army Corps released its decision, dated the previous day, to reinstate the original permit. That same day, I spoke with Mark Nitczynski, counsel for the Corps, about expediting the briefing. I have spoken with him several times since then, and he agreed to the schedule presented in the motion for shortened time filed today. However, Mr. Nitczynski asked Plaintiffs to include the following text in their motion and in this declaration:

> "Counsel for Defendants has advised Plaintiffs' counsel that Defendants do not oppose the briefing schedule proposed in this motion. However, Defendants' counsel has emphasized that non-opposition to the proposed schedule should not be construed as Defendants' agreement to the characterizations and other statements made by Plaintiffs in this motion and related filings. Defendants maintain their right to contest any and all such statements, and to oppose any and all subsequent motions filed by Plaintiffs."

I declare under penalty of perjury that the foregoing is true and correct.

_4/5/06_
Date

_Thomas S. Waldo_
Thomas S. Waldo