DAVID W. MÁRQUEZ, Attorney General
CAMERON M. LEONARD, Assistant Attorney General
RUTH HAMILTON HEESE, Assistant Attorney General
State of Alaska, Department of Law
P.O. Box 110300
Juneau, Alaska 99811-0300
Telephone:  (907) 451-2811
      or    (907) 465-3600
Facsimile:  (907) 465-6735
cam_leonard@law.state.ak.us
ruth_hamilton_heese@law.state.ak.us

Attorneys for State of Alaska
Applicant for Intervention


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| SOUTHEASTALASKA CONSERVATION COUNCIL, SIERRA CLUB, AND LYNN CANAL CONSERVATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS; COLONEL TIMOTHY J. GALLACHER, in his official capacity as District Engineer; LARRY L. REEDER, in his official capacity as Chief of the Regulatory Branch; JOHN C. LEEDS, III, in his official capacity as Chief of the Juneau field office; GLEN E. JUSTIS, in his official capacity as Chief of the East Section; DOMINIC IZZO, in his official capacity as Principal Deputy Assistant Secretary of the Army (Civil Works); and UNITED STATES FOREST SERVICE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. J05-0012CV (JKS) |
| Defendants. | ) ) | |

**STATE OF ALASKA'S MOTION TO INTERVENE**

Pursuant to Fed. Rule Civ. Proc. 24, the State of Alaska ("the State") hereby moves to intervene as a party defendant in all phases of the litigation in this case in order to protect the State's and its citizens' socio-economic interests in the continued operation of the Kensington Gold Mine ("the Kensington mine"), and the State's regulatory interests in the federal and State permitting of mines in Alaska.

If an injunction were to issue in this case, it would have direct, adverse effects on the State's ability to permit not only the Kensington mine, but other mine projects in the State. Such injunction would result in significant economic losses to not only the public purse, but to the socio-economic well-being of communities and citizens affected by the mine projects. Further, an injunction would likely adversely affect and interfere with the State's statutory and regulatory duties in responsibly managing development of the State's natural resources in a way that meets applicable environmental requirements.

The State is entitled to intervene as of right under F.R.C.P 24(a)(2), because the State has significant protectable interests in the permitting of the mine that are not adequately represented by the other parties, as detailed below. Alternatively, the State requests permission to intervene under F.R.C.P. 24(b)(2). This motion is supported by the Points and Authorities below, and by the attached declarations of Richard Hughes, Edmund Fogels, and Dan Easton. This motion is accompanied by a proposed order. Also accompanying this motion and lodged with the Court is the State's First Amended Answer to the plaintiffs' First Amended Complaint.

State's Second Motion to Intervene                                    Page 2
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

## POINTS AND AUTHORITIES

**Introduction.**

The First Amended Complaint challenges the United States Army Corps of Engineers ("COE") decision to issue two permits in connection with the Kensington mine project. The gravamen of Count I is that the Section 404 permits issued by the COE to Coeur Alaska, Inc., under the Clean Water Act ("CWA") (33 U.S.C. § 1344) for the disposal of mine tailings in a tailings storage facility at Lower Slate Lake (hereinafter "Slate Lake 404 permit") is illegal, and that it therefore is arbitrary and capricious for the COE to issue to Goldbelt, Inc., a 404 permit for development of a marine terminal at Cascade Point (hereinafter "Cascade Point 404 permit) in order to support the mine's operations. Count I also challenges the United States Forest Service's ("USFS'") approval of the mine operator's plan of operations. Plaintiffs request both declaratory and injunctive relief.

If the plaintiffs prevail, the mine will effectively be shut down, probably before gold is produced. The State can demonstrate a substantial economic interest (from mining license taxes and corporate income taxes) in the Kensington mine being developed. The threat of a shutdown also brings with it the potential for lost jobs and diminished health of more diversified local economies. For those reasons alone, the State has the right to intervene.

However, the State's interest in the case is broader than the socio-economic benefits from Kensington mine gold production and its associated infrastructure. The

State's Second Motion to Intervene                                          Page 3
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

State has an interest and responsibility to responsibly manage Alaska's natural resources and to minimize the impacts of mining on the environment, including impacts to water quality. Plaintiffs' theory in Count I could set a precedent that may affect how tailings disposal is to be permitted by State and federal agencies at other Alaskan mine sites.

**Argument.**

A.  THE STATE IS ENTITLED TO INTERVENE AS OF RIGHT TO PROTECT SIGNIFICANT SOCIOECONOMIC INTERESTS AGAINST THE THREAT OF INJUNCTIVE RELIEF AND TO PARTICIPATE IN LITIGATION THAT DIRECTLY AFFECTS THE STATE'S PERMITTING OF MINES.

The Ninth Circuit Court of Appeals broadly construes Rule 24 in favor of applicants for intervention. See *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir.1986), *rev'd on other grounds*, 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987). The Ninth Circuit has adopted a four-part test for intervention as of right: (1) the motion must be timely; (2) the applicant must show an interest relating to the property or transaction that is the subject matter of the action; (3) the applicant must show that without intervention, disposition of the case may as a practical matter impair its ability to protect its interest; and (4) it must be shown that the interest is not adequately represented by an existing party. *Id.*

1.  The State's Motion to Intervene is Timely.

Timeliness is dependent on the stage of the proceedings, potential prejudice to the parties, and the reason for any delay. *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836 (9th Cir. 1996) (finding application to intervene timely when filed before any substantive rulings had been made). The State has moved to intervene in the earliest

State's Second Motion to Intervene                                        Page 4
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

stage of this case, before the federal defendants have answered and before any

substantive rulings have been made.  Thus, the State's intervention at this stage is timely

and no prejudice will result to the existing parties. *Id.*

2.  The State Has Significantly Protectable Interests Relating to the  Property or Transaction That is the Subject of the Action.

To intervene as of right at the trial level, an applicant need not establish standing,

or show a particularized injury of the type used to establish standing.  *Didrickson v.*

*United States Dept. of the Interior*, 982 F.2d 1332, 1340 (9th Cir. 1992).  "No specific

legal or equitable interest need be established."  *Greene v. United States*, 996 F.2d 973,

976 (9th Cir. 1993).  Instead,

> A prospective intervenor must establish that (1) 'the interest [asserted] is protectable under some law,' and (2) there is a 'relationship between the legally protected interest and the claims at issue.'

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996), citing

*Sierra Club v. United States EPA*, 995 F.2d 1478 (9th Cir. 1993).

The Ninth Circuit has also stated that:

> We ordinarily do not require that a prospective intervenor show that the interest he asserts is one that is protected by the statute under which the litigation is brought.  It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.

*Sierra Club v. EPA*, 995 F.2d at 1484.

The State has at least three inter-related interests at stake in this lawsuit: its

economic interest in the Kensington Mine; its economic interest in the mining industry

State's Second Motion to Intervene                                     Page 5
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

more generally; and its regulatory interest in mine permitting. Each of those interests is

discussed below.  The Ninth Circuit has on occasion held that a non-speculative

economic interest justified intervention as of right.[1]  But the Ninth Circuit has also held

that more is required than strict economic interest:

> [w]hether an applicant for intervention demonstrates sufficient interest in an action
> is a practical, threshold inquiry. No specific legal or equitable interest need be
> established … the movant must demonstrate a 'significantly protectable interest.'
> An economic stake in the outcome of the litigation, even if significant, is not
> enough.

*Greene v. United States*, *supra*, 996 F.2d at 976, citing *Portland Audubon Soc. v. Hodel*,

866 F.2d 302, 308 (9th Cir.), *cert. denied*, 492 U.S. 911, 109 S. Ct. 3229, 106 L.Ed.2d

577 (1989).  In accord with the Ninth Circuit's standard for establishing a protectable

interest, the State has broad interests at stake in this lawsuit that include, but are not

limited to, economic considerations.

First, the State has an economic interest in the successful operation of the

Kensington mine itself.  The State collects at least two revenue streams from large, hard-

rock mines such as Kensington:  mining license taxes under AS 43.65 and corporate

income taxes under AS 43.20.011, *et seq.*  The accompanying Declaration of Richard

Hughes explains both these forms of taxes in some detail and has calculated the mining

license and corporate taxes that Kensington mine would generate during its projected

operating life.  To summarize the conclusion from his Declaration: based on certain

---

[1] *See*, *Arakaki v. Cayetano*, 324 F.3d 1078, 1088 (9th Cir.2003) (proposed intervenors had significant protectable interest in continued receipt of benefits, as required to intervene as of right); *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) (Construction contractor and building trade associations had a

State's Second Motion to Intervene                                    Page 6
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

assumptions that Mr. Hughes outlines, the Kensington mine would generate

approximately $4,262,839 in mining license taxes, and approximately $8,387,402 in

corporate income taxes over the ten-year projected mine life.  Exploration tax credits on

these two amounts would result in a net mining license tax of $2,131,419 and a net

corporate income tax of $4,193,701.  *See* Hughes Declaration at ¶¶ 7 & 8.  Given Mr.

Hughes' projections, the State has a significant economic interest in the operation of the

Kensington mine.

   The City and Borough of Juneau is one local community which will also benefit

socio-economically from operation of the Kensington mine.  Hughes Declaration, ¶ 9.

The present property tax rate for the mine's property is 7.51 mills. *Id*.  The published

capital cost of the project is $190,000,000. *Id*.  The improvements to the mine will be

subject to property tax.  *Id.*  Based on certain assumptions and the 7.51 mill rate, the

property taxes over the first 10 years of the life of the mine could equate into $7,572,583

for the City and Borough of Juneau and its residents.  *Id*.  It is also reasonable to assume

that the mine's operator will purchase many of its supplies locally and will add to the

City's local sales tax base.  *Id*. at ¶ 10.

   The second State interest in this lawsuit is the precedent that this case may set, a

precedent that could impact the State's long-term regulatory interest in existing and

future Alaskan mines that contribute to a viable Alaskan mining industry and healthy

diversified economies in affected communities in the State.   Count I of the First

significantly protectable interest relating to suit in which environmental groups alleged that plan and program did
not comply with requirements of Endangered Species Act, and thus could potentially intervene as of right in suit).

State's Second Motion to Intervene                                    Page 7
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

Amended Complaint raises a legal challenge with implications not just for the Kensington mine, but for similarly situated existing and future mines in Alaska.

The attached Declarations of Edmund Fogels and Dan Easton explain how State and federal regulators have closely considered the question of how to permit the Kensington mine under the CWA. The EPA policy statement that resulted from those deliberations was a memorandum issued by EPA's Office of Water, dated May 17, 2004, and signed by Diane Regas (the "Regas memo"). The COE's Slate Lake 404 permit, which the plaintiffs challenge in this suit, followed the permitting strategy outlined in the Regas memo. While the Regas memo was directed specifically at the disposal of tailings at the Kensington mine, the memo outlines a permitting approach that would also apply to other, similarly situated, Alaska mines.

If plaintiffs prevail in this lawsuit, then the court's decision may affect not only the future of the Kensington mine, but could determine the permitting requirements for other existing and future mines that face similar tailings disposal issues. Mr. Fogels' states his belief that, if plaintiffs prevail, "the lawsuit could potentially eliminate the ability for most economically viable and environmentally appropriate mine designs to be permitted in Alaska." *See* Fogels Declaration, ¶ 12.

The State's long-term interest in promoting corporate investment in future mines in Alaska can only be realized in a regulatory climate where the State and federal agencies share a common understanding of how to permit large metals mines like Kensington. *See* Fogels Declaration, ¶ 11; Easton Declaration, ¶¶ 7-8. The State's

State's Second Motion to Intervene                                  Page 8
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

interest in promoting investment in all Alaskan mines, like its interest in the Kensington mine, can be quantified in economic terms. Mr. Hughes calculates the contribution of the mining industry to the State economy in 2005 at $1.8 billion, while estimating that, in 2004, it also created 3,048 full-time jobs in the State. *See* Hughes Declaration, ¶ 3.

The State indisputably has a significant interest in promoting investment in existing and future mines. Knowing the ground-rules for permitting mines is a prerequisite to ensuring a viable industry. Because this lawsuit challenges a coherent permitting approach developed by the federal agencies, and because this approach necessarily impacts the State's permitting responsibilities, the State has a significant regulatory interest in defending the permitting framework, and by extension, Alaska's entire mining industry.

A third, equally important State interest in this lawsuit is its obligation to responsibly manage development of natural resources and minimize the impacts of mining on the environment, including impacts to water quality. Easton Declaration, ¶¶ 4-7. The Alaska Department of Natural Resources and the Alaska Department of Environmental Conservation (ADEC) share the statutory responsibilities. Easton Declaration, ¶ 3; Fogels Declaration, ¶¶ 3, 4, 9 and 10. The former does so through the reclamation requirements of AS 27.19, while the latter does so through it various duties under AS 46.03. Under federal law, ADEC also has the responsibility to certify that permits issued by federal agencies are compliant with State water quality standards. *See* CWA § 401(a), 33 U.S.C. § 1341(a).

State's Second Motion to Intervene                    Page 9
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

Mr. Fogels and Mr. Easton explain how the federal permits and the required State permits are interwoven through the state certification process. When the State certifies that a federal permit complies with state law, that certification serves as the State's own permit for the activity. AS 46.03.110(e); 18 AAC 60.200(b). *See also,* Fogels Declaration, ¶ 9; Easton Declaration, ¶ 6. Given the interwoven nature of the federal and State permits and authorizations, an adverse decision by this Court in response to plaintiffs' claims could have significant impacts on the State's approach to permitting mines.

Under Ninth Circuit case law, the blend of the State's interests described above satisfies the standard for intervention as of right. In *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489 (1995), the Ninth Circuit held that because the State of Arizona and Apache County were legally responsible for ensuring environmental protections for lands adjacent to national forest lands, those responsibilities constituted significant protectable interests relating to the property or transaction that was the subject of the environmental plaintiffs' case. *Id*. at 1495, and at 1496-1497.[2]

While the *Forest Conservation Council* case was considered in light of National Environmental Policy Act ("NEPA") claims only, and the Court allowed intervention of right only at the injunctive relief (remedy) phase of the proceeding, the extension of intervention of right to the State of Alaska to all phases of the present case, including the

---

[2]   The Court also held that Arizona and Apache County were entitled to intervention of right at the remedy phase of the case because of their statutory entitlement to a portion of the timber proceeds received from federal timber harvests. 66 F.3d at 1492 & 1496.

State's Second Motion to Intervene                                   Page 10
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

merits phase, is necessary and appropriate because of the State's regulatory

responsibilities under the CWA and state law.

In *Sierra Club*, 995 F.2d 1478, the Ninth Circuit expressly recognized the right of

a non-federal governmental agency to intervene in challenges brought by environmental

groups under the CWA. The court noted how issues raised under

the CWA, and the provisions of the CWA itself, call into play third party interests:

> The City also has a protectable interest with respect to the compilation of
> problem waters, and to the identification of point sources. Once the lists
> are compiled and the point sources identified, control strategies will be
> required for [impaired] waters which fail to meet water quality standards
> 'due entirely or substantially to discharges from point sources of any toxic
> pollutants.' (33 U.S.C. § 1314(l)(1)(B) ("B" list waters). The obligation to
> implement control strategies is triggered by the compilation of the problem
> water lists and the identification of point sources, so an adjudication on
> these issues could 'result in practical impairment of the [City's] interests.'
> *Yniguez*, 939 F.2d at 735.

*Id*. at 1485-86.

While the role of City of Phoenix in *Sierra Club* was that of permit holder, the

State's role as regulator is of no lesser weight or value. What is key to the Ninth

Circuit's decision in *Sierra Club* and what makes it relevant to the present case is

whether the applicant has a "protectable interest" under the Clean Water Act. Here, it is

clear that the State of Alaska holds such an interest. The State is charged with making

key regulatory findings tied to the issuance of the Corps' Section 404 permit; it certifies

whether or not the discharges anticipated to occur and allowed under the permit in

connection with the Kensington mine will comply with state water quality standards. (33

U.S.C. § 1341(a)). The State found that the permitted discharges, including the disposal

State's Second Motion to Intervene                                      Page 11
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

of mine tailings into Lower Slate Lake, would comply with those standards.  The State's interest in carrying out its responsibility with respect to those findings would likely be impaired in the court's adjudication of plaintiffs' claims in this case concerning the Slate Lake 404 permit.

Also directly on point and supportive of the State's Motion to Intervene as of right is *Scotts Valley Bank of Pomo Indians of the Sugar Bowl Rancheria v. U.S.*, 921 F.2d 924 (9th Cir. 1990), a Ninth Circuit case cited by the appellate court in *Sierra Club,* 955 F.2d at 1484.  In *Scotts Valley*, a coalition made up of a native group and individuals sued to restore federal trust status to real property in California, some of which were located within the municipal boundaries of the City of Chico.  The Ninth Circuit held that the City of Chico had significant protectable interests under Rule 24(a)(2) to entitle it to intervene as of right in the case to protect the its statutory and regulatory rights in collecting property taxes (approximately $3,300 per year) and in enforcing certain land-use and health regulations on the subject land.  *Id*. 927-928.  The court stated that "[a]llowing the City to intervene in this action is the only practical means of protecting its taxing and regulatory interest."  *Id*. at 928.

Like the City of Phoenix's interests in *Sierra Club* and the City of Chico's interests in *Scotts Valley*, the plaintiffs' challenges in this case implicate the State's legally protected interests (1) under Alaska law in collecting taxes associated with regulated development of natural resources within the State's boundaries and (2) under CWA Section 401 in certifying the federal permits for mining projects to ensure their

State's Second Motion to Intervene                                             Page 12
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

compliance the CWA and State water quality standards, including, specifically, DEC's certification of the Slate Lake 404 permit for the Kensington Mine.

Given the interwoven roles under the CWA of the federal and State agencies in permitting mines like Kensington, this Court should heed the advice of the D.C. Circuit in *Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir. 1967). In *Nuesse*, the court opined that courts should not view too constrictively "the interest of a state administrative officer in the validity of what his federal counterpart has done in an area of overlapping fact and intertwined law." *Id*. at 701. The court held that given the necessary interplay of Wisconsin and federal banking laws, the Wisconsin banking commissioner had an adequate interest in the court's construction of the federal law at issue in the case to justify intervention of right. *Id*.

Even if this case were simply one where the environmental plaintiffs challenged the federal agency decision-making on claims involving only NEPA, and not the CWA, intervention of right is still appropriate. In *Kleissler v. United States Forest Service*, 157 F.3d 964 (3rd Cir. 1998), the Third Circuit ruled that municipalities and a school district could participate as of right in both the merit and remedy phases of the case because they held sufficient interests -- a statutory right to a portion (totaling nearly four million dollars annually) of the USFS's proceeds generated by timber sales. *Id*. at 973. The Third Circuit held that the courts are to take a flexible approach and carefully consider the specific circumstances associated with the request for intervention. The court found that the intervenor applicants had a "significantly protectable interest in the transaction

State's Second Motion to Intervene                                    Page 13
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

that may be jeopardized by the lawsuit." *Id*. at 974. Those interests are akin to the statutory mining license and corporate tax interests the State holds in mining revenues generated in Alaska.[3]

Of course, the instant case is not one involving a NEPA challenge. Plaintiffs contest decisions made under the CWA, a statute under which the State performs unique and critical analyses of proposed projects that have the potential to affect the lands and waters in Alaska. This is why the State's interest in not merely economic, but also regulatory. And Ninth Circuit authority supports intervention of right where such interests are at stake.[4]

3. <u>Absent Intervention, Disposition of This Action May Impair or Impede the State's Ability to Protect its Interests.</u>

When an action seeks injunctive relief which, if granted, could affect an intervenor-applicant's interests, practical impairment of the ability to protect those interests results if intervention is not allowed. *See Forest Conservation Council,* 66 F.3d at 1498. The State must have the opportunity to fully participate in this case as a party in order to protect its interests against the threat of injunctive relief.

---

[3] The Ninth Circuit Court of Appeals does not appear to have addressed the analysis in *Kleissler.* Nonetheless, the *Kleissler* court provides persuasive interpretation of Rule 24(a)(2) intervention of right that expressly finds its roots in Supreme Court precedent. The core reasoning in *Kleissler*, is that a flexible -- rather than "mechanical" -- approach must be taken by the courts in reviewing an application to intervene as of right. This reasoning was recently affirmed by the Third Circuit in *Liberty Mutual Insurance Company v. Treesdale, Inc.*, 419 F.3d 216, 225 (3rd Cir. 2005).

[4] *See Sierra Club* and *Scott Valley, supra; See also Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981) (U.S. Attorney General had a special protectable interest and allowed intervention of right to participate in litigation involving the scope and application of statutes and regulations it enforces). *Cf.*, *National Wildlife Federation v. U.S. Army Corps of Engineers*, 188 F.R.D. 381, 385 (D. Or. 1999) (intervenor applicants had "significant, economic and non-economic interests in the operation of the dams on the Lower Snake River and these interests may, as a practicable matter, be impaired or impeded by the relief sought by [the environmental plaintiff]" and that no limitation would be placed on the level of their participation in the case).

State's Second Motion to Intervene                                    Page 14
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

In *Sierra Club*, *supra*, the Ninth Circuit rejected the Sierra Club's assertion that the City of Phoenix could protect its interests in subsequent administrative proceedings. The court noted that "the relief sought by the Sierra Club would constrain the EPA, which would not then be free to violate the terms of the declaratory and injunctive relief in later administrative proceedings." 995 F.2d at 1486. The Court stated that the City of Phoenix would have no avenue to administratively appeal the constraints that might be placed on EPA's regulatory duties by virtue of an injunction.

Even the broad declaratory relief that plaintiffs seek against the COE regarding the Kensington mine, if granted, could impact the State's varied interests in this lawsuit. The State stands to lose revenue from the loss or delay of the Kensington mine, as well as from other future Alaska mines. The State would also face uncertainty about the rules for permitting mines in the State under federal and, indirectly, under State law. Any injunction constraining the COE's CWA permitting authority will almost certainly constrain the State's CWA permitting authority or those authorizations that the State issues pursuant to Alaska law, and there will be no administrative forum in which to challenge whatever injunctive relief may be awarded in this case. It is essential that the State be allowed intervention of right to adequately protect its interests in regulating the mining industry.

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene."

State's Second Motion to Intervene                                    Page 15
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

There is no other venue, forum or opportunity that the State can use to protect its interests

in this lawsuit.  For these reasons, the Court should recognize the State's right to

intervene.

 4.  The State's Interests Are Not Adequately Represented by the Other  Parties.

 The requirement of inadequacy of representation is satisfied if the applicant shows

that representation of her interests may be inadequate, and the burden of making that

showing is minimal.  *United States v. Stringfellow*, 783 F.2d 821, 827 (9th Cir.1986),

*vacated on other grounds,* 480 U.S. 370, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987).  The

applicant for intervention need only show that representation by the present parties *may*

be inadequate.  *Northwest Forest Resource Council v. Glickman*, *supra,* 82 F.3d at 838.

 In evaluating the adequacy of representation the court considers three factors: (1)

whether the interests of a present party to the suit are such that it will undoubtedly make

all of the intervenor's arguments; (2) whether the present party is able and willing to

make such arguments; and (3) whether the intervenor would offer any necessary element

to the proceedings that the other parties would neglect. *Id., citing California v. Tahoe*

*Regional Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986).

 The current defendants are two federal agencies: the COE (including various COE

officials) and the USFS.  The interests of the federal agencies are not identical to those of

the State.  Thus, the federal defendants will by no means "undoubtedly" make the same

arguments as will the State.  For example, the federal agencies do not have an economic

State's Second Motion to Intervene                                      Page 16
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

stake in the Kensington mine, or in the mining industry generally, as does the State.

Thus, on the question of injunctive relief, the State may well present a more vigorous

opposition to any request for a preliminary injunction that the federal defendants could be

expected to assert.  Nor do the named federal agencies share identical statutory

environmental protection duties.  In both examples, the federal agencies' interests are not

identical to the State's, and one cannot assume that they will represent the State's

interests in the same manner, and assert the same arguments as would the State.

The second question is whether the federal defendants are "able and willing" to

make the arguments that the State would make.  The accompanying declarations of Mr.

Hughes, Mr. Easton and Mr. Fogels illustrate that the federal agency defendants are in

fact <u>not</u> able to make all of the State's arguments: some of the State's arguments depend

upon facts and interests that are uniquely, or at least primarily, accessible to State

representatives.  The "willingness" of the federal agencies to make the State's arguments

is speculative at this early stage of the lawsuit.

The third question is whether the State would offer any necessary element to the

proceeding that the other parties would neglect.  The State has unique interests in this

case, socio-economic interests balanced against environmental stewardship interests.

These interests may run parallel with those of the federal agency defendants, or with

those of Coeur Alaska, Inc. and Goldbelt, Inc., should those two companies be allowed to

intervene, but these interests remain unique nonetheless. *See*, *e.g*., Hughes, Fogels and

Easton Declarations, respectively.   No other party could bring to this lawsuit the

State's Second Motion to Intervene                                             Page 17
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

perspective of the State seeking to establish and preserve a stable permitting framework

within which mining can, in a environmentally responsible manner, proceed in Alaska.

No other party shares the State's role, under CWA Section 401, of certifying that

whatever permits the federal agencies issue also satisfy State law.  The Court should

recognize the value of the State's perspective and participation in this suit.

B.  IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, THE STATE
SHOULD BE ALLOWED PERMISSIVE INTERVENTION.

The State believes it is entitled as of right to intervene in this case.  However,

should the Court determine otherwise, the State should be permitted to intervene under

Fed. R. Civ. P. 24(b)(2):

> Upon timely application anyone may be permitted to intervene in an
> action…when an applicant's claim or defense and the main action have a
> question of law or fact in common…. In exercising its discretion the court shall
> consider whether the intervention will unduly delay or prejudice the
> adjudication of the rights of the original parties.

As argued above, the State's Motion to Intervene is timely.  This case and the

State's defense share common questions of law and fact.  The State, by virtue of its

regulatory responsibilities with the federal agencies under the CWA as well as state law,

shares common questions of law and fact with the challenges in this action.  The State

has a stake in the defense of the CWA Slate Lake 404 permit that plaintiffs attack in their

Count I, and wishes for the opportunity to be heard regarding the legality of that permit.

The State also was actively involved in the analysis and certification of the Cascade Point

404 permit challenged by plaintiffs, and participated in the review of the Kengington

Mine plan of operations.  The State submits that its participation in this case will also

State's Second Motion to Intervene                                      Page 18
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

"contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *U.S. Postal Service v. Brennan*, 579 F.2d 188, 192 (9th Cir. 1978); *Accord, Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

In *Nuesse, supra*, the D.C. Circuit Court reversed the District Court's denial of permissive intervention to the State of Wisconsin in a suit involving both federal and state banking laws. In so holding, the Court recognized the "intimacy of the relationship between and interdependency of the Federal and State statutes" involved. 385 F.3d at 705. The Court went on to emphasize that when an intervenor-applicant is a public official, courts should apply the rule liberally:

> It is a living tenet of our society and not mere rhetoric that a public office is a public trust. While a public official may not intrude in a purely private controversy, permissive intervention is available when sought because an aspect of the public interest with which he is officially concerned is involved in the litigation.

*Id.* at 706.

Allowing the State to intervene at this early stage of the case will not unduly delay or prejudice the adjudication of the rights of the original parties. The federal defendants have not yet answered the First Amended Complaint. The case will be able to proceed on the same schedule, with the State's participation and unique perspective. The State's intervention will also benefit the Court in considering the public interests at stake and

State's Second Motion to Intervene                                          Page 19
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

balancing the hardships of injunctive relief, if such relief is considered. *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 541-546 (1987).

**Conclusion.**

For the reasons stated above, the State requests that the court recognize the State's right to intervene in this matter, or, in the alternative, grant the State permission to intervene, for all matters, including proceedings on the merits of plaintiffs' claims. A proposed order to that effect is hereby lodged with this Motion. If the Court denies the State intervention as of right or by permission, the State respectfully requests that it be given leave to participate as an *amicus. See Forest Conservation Council, supra*, 66 F.3d at 1493; *Southwest Center for Biological Diversity v. U.S. Forest Service*, 82 F. Supp. 1070, 1072-73 (D. Arizona 2000).

RESPECTFULLY SUBMITTED this 7th day of April, 2006.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By:    /s Ruth Hamilton Heese
       Cameron M. Leonard
       Assistant Attorney General
       Alaska Bar No. 8406036
       Ruth Hamilton Heese
       Assistant Attorney General
       Alaska Bar No. 9406064
       State of Alaska
       Department of Law
       P.O. Box 110300
       Juneau, Alaska 99811-0300
       Telephone: (907) 465-3600
       Facsimile: (907) 465-6735
       ruth_hamilton_heese@law.state.ak.us

State's Second Motion to Intervene                                    Page 20
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)

## CERTIFICATE OF SERVICE

I, Ruth Hamilton Heese, certify that on April 7, 2006, a copy of the foregoing document, attached declarations of Edmund Fogels, Dan Easton, and Richard Hughes, and a proposed order granting intervention, were served electronically to Mark Nitczynski, Demian Schance, and Thomas Waldo.  A courtesy copy was also sent via e-mail to Lawrence Hartig, John Berghoff, Jr., David Crosby, and Jim Ustasiewski.

By:    /s Ruth Hamilton Heese
       Ruth Hamilton Heese
       Assistant Attorney General
       Alaska Bar No. 9406064
       State of Alaska
       Department of Law
       P.O. Box 110300
       Juneau, Alaska 99811-0300
       Telephone:  (907) 465-3600
       Facsimile:  (907) 465-6735
       ruth_hamilton_heese@law.state.ak.us

State's Second Motion to Intervene                                    Page 21
*SEACC, et al. v. U.S. Army COE*
Case No. J05-0012CV (JKS)