

United States
Department of
Agriculture

**Forest Service**

Tongass
National
Forest
R10-MB-500a





# Kensington Gold Project

**Final
Supplemental Environmental Impact Statement**

*Volume 1: Sections 1–10*

**Lead Agency**
USDA Forest Service, Tongass National Forest

**Cooperating Agencies**
US Environmental Protection Agency, Region 10
US Army Corps of Engineers, Alaska District
Alaska Department of Natural Resources

**&EPA**
United States
Environmental Protection
Agency



**US Army Corps
of Engineers**
Alaska District



**Prepared by**
Tetra Tech, Inc.
143 Union Boulevard
Suite 1010
Lakewood, CO 80228

**December 2004**

Exhibit 1, page 1 of 61

# Kensington Gold Project

# Final

# Supplemental Environmental Impact Statement

**Volume 1 of 2**
**Sections 1–10**

United States Department of Agriculture
Forest Service
Tongass National Forest
R10-MB-500a

December 2004

# SECTION 1.0
# PURPOSE AND NEED FOR THE PROPOSED ACTION

## 1.1 BACKGROUND

The Kensington Gold Project is a permitted underground gold mine approximately 45 miles north-northwest of Juneau, Alaska (Figure 1-1). Coeur Alaska, Inc. (Coeur), the project operator, maintains a wastewater treatment plant, including settling ponds, near the 850-foot portal in the vicinity of the Kensington Mine site. The settling ponds treat mine drainage and are authorized to discharge to Sherman Creek under a National Pollutant Discharge Elimination System (NPDES) permit. A waste rock pile resulting from exploration activities is in the same vicinity. A small personnel camp at Comet Beach houses workers conducting maintenance activities at the site. The mine received all permits required to begin construction and operations following publication of the 1997 *Kensington Gold Project Final Supplemental Environmental Impact Statement* (1997 SEIS) and issuance of a Record of Decision (ROD).

Coeur has not yet constructed the mine. A desire to improve efficiency and reduce the extent of disturbance of the approved project motivated Coeur to submit an Amended Plan of Operations (Amended Plan) to the U.S. Department of Agriculture, Forest Service, Tongass National Forest, Juneau Ranger District (Forest Service). The Amended Plan forms the basis for this Final SEIS.

This Final SEIS represents the third time the Kensington Gold Project has undergone a review under the *National Environmental Policy Act* (NEPA). In 1992 the Final EIS was completed (1992 FEIS). The Kensington Venture, a joint venture between Coeur and Echo Bay Exploration Inc., initially proposed to develop the Kensington Gold Project. Their proposal, submitted to the Forest Service in 1990, described mining the Kensington deposit. The operations proposed would have used underground techniques to recover the ore, processed the ore on-site using flotation and cyanidation circuits, and disposed of the tailings in a tailings impoundment built in the Sherman Creek drainage. The impoundment would have been sized to accommodate 30 million tons of tailings. The proposal included discharging wastewater to Lynn Canal following treatment and shuttling employees to the mine site using helicopters. The operation would have used liquefied petroleum gas to fuel on-site generators. A marine terminal developed at Comet Beach in Lynn Canal would have handled supply deliveries and gold shipments. One of the alternatives not considered in detail in the 1992 FEIS involved tailings disposal in Slate Lakes. This was eliminated from further consideration in large part because of difficulties of and disturbance associated with transporting tailings from the mill in the Sherman Creek drainage. At the time, the Jualin claims were under separate ownership.

The Kensington Venture never obtained all the permits necessary to build the mine, and in 1995 Coeur became the sole stakeholder in the property. Coeur then submitted an Amended Plan of Operations to the Forest Service in September 1995. Coeur's 1995 Plan of Operations included the same mining and tailings disposal scenario but proposed enhanced treatment of the tailings wastewater and a discharge to Sherman Creek rather than Lynn Canal. The proposal also included backfilling the cyanidation tailings and changing the fuel source from liquefied petroleum gas to diesel. The Forest Service published a Notice of Intent to prepare a supplemental environmental impact statement for the proposed changes, and scoping meetings were held in October 1995 to solicit public comments on the project.



Source: Forest Service, 1997a

**FIGURE 1-1. GENERAL PROJECT AREA (APPROXIMATELY 45 MILES NORTHWEST OF JUNEAU)**

In response to comments received during the scoping process and meetings with federal, state, and local agencies, Coeur again revised its Plan of Operations and resubmitted it to the Forest Service in June 1996. The 1996 plan called for the elimination of on-site cyanidation in favor of shipping flotation concentrate off-site for gold recovery. The 1996 plan also proposed the construction of a dry tailings facility (DTF) on a "terrace area" between Sherman and Sweeny creeks and the backfilling of at least 25 percent of the tailings. Runoff from the DTF would be collected in a settling pond and discharged to Camp Creek (a small creek within the terrace area) under an NPDES permit.

The Forest Service held a second round of scoping meetings to solicit input on the 1996 plan. The Forest Service then completed the 1997 SEIS and identified Alternative D as the Selected Alternative in the 1997 ROD. Alternative D, the currently permitted project, consists of site access from Comet Beach, helicopter transport of employees, wastewater discharge to Sherman Creek, and construction of a DTF for tailings disposal.

Coeur submitted an Amended Plan of Operations for the Kensington Gold Project to the Forest Service in November 2001. The Amended Plan proposes a number of changes to the approved plan, such as changing the location of the milling facilities, tailings disposal, and site access and employing a different means of employee transportation. The operation would also mine a smaller portion of the ore body than that proposed under previous iterations. The Amended Plan proposes to use a dock to be built at Cascade Point on state tidelands adjacent to property held by Goldbelt Incorporated (Goldbelt), an Alaska Native corporation.

The Forest Service completed an EIS for the Cascade Point Access Road and issued a ROD in March 1998. The EIS and the ROD addressed access to Goldbelt's property across Forest Service lands but did not include an impact analysis for construction of a dock. Following Goldbelt's submittal of a *Clean Water Act* (CWA) Section 404 permit application for the facility in 1999, the U.S. Army Corps of Engineers (USACE) evaluated the potential effects of a dock at the site. The USACE denied the permit at the time, citing a lack of demonstrable need for the facility, as well as a number of environmental concerns.

The Forest Service directed the preparation of this Final SEIS by a third-party contractor, Tetra Tech, Inc. The U.S. Environmental Protection Agency (USEPA), USACE, and Alaska Department of Natural Resources (ADNR) participated as cooperating agencies with the Forest Service in preparing this Final SEIS (under Title 40 of the *Code of Federal Regulations* [CFR] Section 1501.6). The Forest Service requested that the National Marine Fisheries Service (NMFS) also participate as a cooperating agency although NMFS declined (Kurland, 2003). This Final SEIS was developed to evaluate the operator's proposed changes to the approved Plan of Operations for the mine on National Forest System lands and a dock on state tidelands at Slate Creek Cove. Other components include construction of a dock facility on state tidelands and private lands at Cascade Point. Approval for components not on National Forest System lands will be accomplished through other state and federal agencies with jurisdiction. This SEIS is intended to supplement the 1997 SEIS and 1992 FEIS. Information from the previous documents has been brought forward into this document to the extent practicable so the reader will not necessarily need to refer back to the previous analyses. According to requirements in the Council on Environmental Quality regulations for implementing NEPA (40 CFR Part 1500), this document analyzes and discloses the direct, indirect, and cumulative impacts associated with the proposed changes to the approved Plan of Operations.

The document is structured to present the project background and information on regulatory compliance in this section. Section 2.0 describes the Proposed Action along with alternatives to the Proposed Action. Section 3.0 describes the environment that would be affected by the Proposed

1-3

Action or alternatives. Section 4.0 discusses the environmental consequences of the Proposed Action and alternatives.

The following appendices are included at the end of the document to provide additional information:

A. Water Quality Analysis
B. Essential Fish Habitat Assessment
C. Ecological Risk Assessment of Aqueous Tailings Disposal at the Kensington Gold Mine
D. Preliminary Reclamation Plan
E. Best Management Practices and Mitigation Measures
F. Old-Growth Habitat
G. Ground Water Quality
H. Migratory Birds: Birds of Conservation Concern and Priority Species
I. CBJ Notices of Decision
J. Biological Assessment/Biological Evaluation (BA/BE)
K. USEPA and State of Alaska Preferred Alternative and Environmentally Preferable Alternative Letters
L. Draft SEIS Comment Letters and Forest Service's Responses

## 1.2  PURPOSE AND NEED

The purpose of the Proposed Action is to consider certain changes to the 1998 approved Plan of Operations for the Kensington Gold Project regarding access, tailings disposal, and support facilities. The Proposed Action is needed to improve efficiency and reduce the area of surface disturbance.

The proposed changes are intended to provide more reliable transportation and access by improving worker safety during transit to the site and eliminating shipping delays related to weather and sea conditions at Comet Beach. The improved reliability of access would allow Coeur to reduce the amount of fuel storage, as well as inventories of materials and supplies.

The proposed changes are also intended to reduce the area of disturbance compared to the approved plan and to be more efficient in terms of operational cost and material handling. There would be no requirement to dewater the tailings, no trucking associated with hauling and placement, and two of the sand and gravel borrow pits would be eliminated.

## 1.3  PROPOSED ACTION

The Forest Service proposes to approve certain changes to an existing plan of operations based on an Amended Plan of Operations submitted by Coeur in November 2001. Under the currently approved plan, all mining operations would take place in the vicinity of the Kensington Mine. Under the Proposed Action, the mill and administrative facilities would be built in the Johnson Creek drainage in the vicinity of the Jualin Mine. Supplies and ore concentrate would be shipped into and out of the facility by barge via a dock in Slate Creek Cove, in Berners Bay. A more selective mining plan would be followed. The ore processing methods used would be the same as those under the approved plan; however, access to the ore body would be through a 12,000-foot-long tunnel connecting the Jualin Mine to the Kensington Mine. Tailings would be disposed of in a tailings storage facility (TSF) built in Lower Slate Lake. Employee housing would be eliminated in favor of a daily crew shuttle boat service that would operate between Cascade Point and Slate Creek Cove. The existing road between Slate Creek Cove and the Jualin Mine would be upgraded to handle mine-related traffic. Treatment of the mine water and storage of waste rock would occur near the Kensington 850-foot portal in the

Sherman Creek drainage. Figure 1-2 shows the location of the project area, including Sherman Creek and Berners Bay.

## 1.4 DECISIONS TO BE MADE

The Forest Supervisor of the Tongass National Forest is the responsible official for deciding whether to select the Proposed Action or another alternative for implementation. The Forest Supervisor will identify any additional mitigation measures and monitoring required for this project. His decision will be documented in a ROD, which will include the reasons for his decision based on the analyses presented in this Final SEIS. It should be noted that in the case of this document, the No Action Alternative is not a "no-build" alternative. Selection of the No Action Alternative as a result of this Final SEIS would deny the proposed changes to the currently approved operating plan but would allow the company to proceed under the terms of the ROD for the 1997 SEIS and the approved operating plan. A No Action Alternative that considered the effects of no mining in the project area was evaluated in the 1992 FEIS.

The Director of the Office of Water and Watersheds for USEPA Region 10 will decide whether to issue a permit under Section 402 of the Clean Water Act, and what terms and conditions apply. USACE will also decide whether to issue permits under Section 404 of the Clean Water Act. Section 1.7 below provides additional information on agency responsibilities.

## 1.5 SCOPING AND PUBLIC INVOLVEMENT

The Notice of Intent to prepare this SEIS for the Kensington Gold Project was published in the *Federal Register* on September 13, 2002. The publication of the Notice of Intent started the scoping process, a public review and comment period required under NEPA (40 CFR 1501.7). The formal scoping comment period ended on October 15, 2002.

Scoping is a public participation process with several objectives:

- Provide the public, tribes, and regulatory agencies with a basic understanding of the Kensington Gold Project and the proposed changes to the mine's Amended Plan of Operations.
- Provide opportunities for people to ask questions, voice concerns, identify specific issues, and recommend options other than those proposed by the mine operator.
- Ensure that potentially significant issues from the public, tribes, and agencies are identified and fully addressed during the course of the EIS process.
- Explain where people can find additional information about the project.

The Forest Service sent email notification of the Notice of Intent, as well as an electronic link to a copy of the scoping document, to approximately 40 agencies, tribes, organizations, and private individuals that had previously expressed interest in the project. The scoping document provided a brief history of the Kensington Gold Project dating back to 1990; numerous maps; discussions on the proposed action, agency involvement, permits and authorizations, and the scoping process; an SEIS preparation schedule; and information sources.



Source: U.S. Geological Survey, 1985

**FIGURE 1-2. SPECIFIC PROJECT AREA**