# Record of Decision

facility to address concerns about the TSF effluent meeting NPDES permit limitations intended to protect downstream water quality in East Fork Slate Creek below the TSF.

## Planning Record

The planning record for this project includes the Draft SEIS, Final SEIS, appendices, public comments, response to public comments, Forest Plan, all material incorporated by reference including the 1997 SEIS and ROD and 1992 EIS and ROD, and all materials utilized during the analysis of this project. The planning record is being compiled and will be available for review at the Juneau Ranger District office when legal notice of this decision is published in the Juneau Empire.

## Findings Required by Law

### Tongass Land and Resource Management Plan, 1997

All project alternatives are consistent with the 1997 Land and Resource Management Plan for the Tongass National Forest. The site is located within an area designated as Modified Landscape with a Minerals prescription. My decision to approve the amended plan of operations for the Kensington Gold Project as described in Alternative D is consistent with the intent of the Forest Plan's long-term goals and objectives listed on pages 2-2 to 2-5. The project was designed in conformance with Forest Plan standards and incorporates appropriate Forest Plan guidelines for Modified Landscape with a Minerals prescription (Forest Plan, pages 3-135 to 3-136 and 3-151 to 3-157).

As part of the Kensington Gold Project analysis, three small Old-Growth Reserves (OGR) within the project area were reviewed by an interagency team. These OGRs are synonymous with the Old-Growth Habitat land use designation in the Forest Plan. A non-significant amendment expands the OGRs in VCUs 160, 190, and 200 to meet the requirements of the Forest Plan. (ROD, Appendix 1)

### The Roadless Area Conservation Rule (Roadless Rule)

On January 12, 2001 the Forest Service published a final rule for roadless area conservation known as the "Roadless Rule", which generally prohibited commercial timber harvest and road construction within inventoried roadless areas on national forests. In December 2003, the Forest Service exempted the Tongass National Forest from the roadless rule.

### Alaska National Interest Lands Conservation Act (ANILCA)

An ANILCA Section 810 subsistence evaluation was conducted. The Kensington Gold Project is located within the City and Borough of Juneau, whose residents are non-rural for subsistence purposes in terms of the ANILCA. Documented subsistence use of the area is limited to the some fishing off Comet Beach by Skagway and Haines residents.

**Record of Decision**

The documented use of the project area by rural residents is well below the levels considered for subsistence use. Therefore, no significant restrictions on subsistence resources would be expected by implementing any of the alternatives..

**Endangered Species Act**

No threatened or endangered species either occur upon or would be affected by project components occurring on NFS land and approved by my decision. The Forest Service has determined that project components occurring outside of NFS land are not likely to affect threatened and endangered species. As indicated above, formal consultation with the NMFS is ongoing, and implementation of my decision is subject to the completion of this process. The USACE retains the full authority to deny or condition the activities at the marine terminals in response to a biological opinion and any reasonable and prudent alternatives to protect listed species. Other agencies may, as a result of NMFS recommendations and findings, incorporate additional mitigations or modifications. Such mitigations and modifications will be incorporated within the permits of agencies with jurisdiction. The Final Biological Assessment/Biological Evaluation (BA/BE) submitted to NMFS on November 17, 2004 is included as Appendix J to the SEIS and contains current and expected operating conditions. In the event that other mitigation measures or operating conditions are incorporated, I will review my decision to determine whether any changes are needed.

### Essential Fish Habitat

The potential effects of the Kensington Gold Project on essential fish habitat (EFH) have been evaluated. No adverse effects to freshwater EFH will occur as a result of my decision. Although the risk of measurable impact on essential fish habitat has been minimized, I have determined that this project could adversely affect essential fish habitat in the marine environment. Marine components of this project could have short- and long-term adverse effects on EFH. These components will be addressed by other Federal, state, and local agencies that may require mitigation measures to reduce adverse impacts to EFH. In addition, Coeur is sponsoring a monitoring plan by NMFS and the state to assess the effects of petroleum releases into Berners Bay. I will continue to work with the NMFS in evaluating monitoring results. For specific information regarding essential fish habitat and potential impacts refer to sections 4.9 and 4.10, and the EFH Assessment included as Appendix B in the SEIS.

### National Historic Preservation Act

A cultural resource survey of the area of potential effect for the Kensington Gold Project was completed in 2003, in compliance with Section 106 of the National Historic Preservation Act. Determinations of eligibility for 43 historic sites within the area of potential effect were submitted to the State Historic Preservation Officer for its concurrence with our determinations of eligibility. In March 2004 the Forest Service completed the determinations of effect for each of the historic properties in each of the proposed alternatives. A mitigation plan to address the adverse effects to historic

# Record of Decision

properties has been documented in a Memorandum of Agreement (MOA) between Coeur Alaska Inc., Alaska State Historic Preservation Officer, and the Tongass National Forest as executed by the Forest Service on November 29, 2004 (FS No. 05MU-111005-017).

Implementation of this MOA during all phases of the mining operations, through closure, evidences that the Tongass National Forest has satisfied its section 106 responsibilities for all undertakings pursuant to the plan of operations.

The area of potential effect was also evaluated for the presence of any Traditional Cultural Properties (TCP). The State Historic Preservation Officer concurred with our determination of "No Traditional Cultural Properties Affected". Members of the Auk Kwaan were consulted regarding TCP in a May 2003 meeting in Juneau in order to complete and verify Forest Service records.

### Coastal Zone Management Act

The Coastal Zone Management Act (CZMA) requires that the Forest Service, when conducting or authorizing activities or development be consistent with the approved Alaska Coastal Management Program (ACMP) to the maximum extent practicable. This activity is one authorized under a Forest Service permit, as defined in 15 CFR 930.51(a). The Forest Service/State of Alaska Memorandum of Understanding on Coastal Zone Management Act/Alaska Coastal Management Program Consistency Reviews (MOU) lists permitted activities normally requiring a consistency determination (MOU, Section 302.B.2.). This activity is listed in Section 302.B.2 as normally requiring a consistency determination. Coastal Project Questionnaires have been completed by Coeur Alaska, and submitted to the State of Alaska for a consistency determination. A consistency determination must be received before the state can issue any permits and before the Forest Service can approve the plan of operations.

## Executive Orders

### Executive Order 11988 (Floodplain Management)

This area is not located within floodplains as defined by executive order 11988.

### Executive Order 11990 (Protection of Wetlands)

Because wetlands are so extensive in the Kensington Gold Project area, it is not feasible to avoid all wetland areas. I have determined that the selected alternative includes all reasonable measures to minimize harm to wetlands, which may result from such use. A separate permit, issued by the USACOE, is required for all wetland fill. The selected alternative eliminates the permanent loss of 122 acres of wetlands resulting from construction of the DTF. Construction of the TSF will impact 23 acres of wetlands,

however, a similar amount of wetlands are expected to develop naturally or be created along the edges of Lower Slate Lake upon the completion of reclamation.

### Executive Order 12898 (Environmental Justice)

Implementation of this decision will not result in disproportionate adverse human health or environmental effects to minority or low-income populations.

### Executive Order 12962 (Recreational Fisheries)

With the application of Forest Plan standards and guidelines, including those for riparian areas, no significant adverse effects to freshwater or marine fisheries will occur. Most recreational fishing throughout the Tongass National Forest occurs by boat in saltwater, and any adverse effects would be minimal.

### Executive Order 13175 (Indian Tribal Governments)

The Forest Service conducted consultations with the Chilkoot Indian Association, Chilkat Indian Village, and the Tlingit-Haida Central Council, as well as regional corporations, on the proposed project.

### Executive Order 13186 (Migratory Birds)

Implementation of this decision will not have any significant adverse effects to migratory birds and their habitat. (SEIS Appendix H)

## Process for Change During Implementation

Proposed changes to the authorized project actions will be subject to the requirements of National Environmental Policy Act (NEPA), National Forest Management Act (NFMA), Section 810 of Alaska National Interest Lands Conservation Act (ANILCA), Coastal Zone Management Act (CZMA), 36 CFR 228 (Subpart A), and other laws concerning such changes.

In determining whether and what kind of NEPA action is required, the Forest Supervisor will consider the criteria set forth in the Code of Federal Regulations (40 CFR 1502.9(c)), and FSH 1909.15, sec. 18, for determining whether to supplement an existing EIS. In particular, the Forest Supervisor will determine whether the proposed change is a substantial change to the Selected Alternative as planned and already approved, and whether the change is relevant to environmental concerns. Connected or interrelated proposed changes regarding particular areas of specific activities will be considered

## Record of Decision

together in making this determination. The cumulative impacts of these changes will also be considered.

The intent of field verification is to confirm field conditions and to determine the feasibility and general design and location of a structure or road, but not to designate final locations. Minor adjustments are expected during implementation to better meet on-site resource management and protection objectives. Many of these minor changes will not present sufficient potential impacts to require any specific documentation or other action to comply with applicable laws. Some minor changes may still require appropriate analysis and documentation to comply with FSH 1909.15, sec. 18.

### Implementation of this Decision

Implementation of decisions subject to appeal pursuant to 36 CFR part 215, may occur on, but not before, 5 business days from the close of the appeal filing period.

### Right to Appeal

This decision is subject to administrative review (appeal) pursuant to 36 CFR Part 215. Individuals or organizations who submitted substantive comments during the comment period specified at 215.6 may appeal this decision. The notice of appeal must be in writing, meet the appeal content requirements at 215.14 and be filed with the Appeal Deciding Officer:

> Denny Bschor, Regional Forester
> USDA Forest Service, Region 10
> P.O. Box 021628
> Juneau, AK 99802-1628
>
> E-mail: appeals-alaska-regional-office@fs.fed.us

The Notice of Appeal, including attachments, must be filed (regular mail, fax, e-mail, express delivery or messenger service) with the Appeal Deciding Officer at the correct location within 45 calendar days of publication of notice of this decision in the Juneau Empire, the newspaper of record for the Tongass National Forest. The publication date in the newspaper of record is the exclusive means for calculating the time to file an appeal. Those wishing to appeal this decision should not rely upon dates or timeframe information provided by any other source.

Hand delivered appeals will be accepted at the Regional Office in Juneau, Alaska during normal business hours (8:00 am through 4:30 pm) Monday through Friday, excluding holidays.

**Record of Decision**

In accordance with 36 CFR Part 215.14, it is the responsibility of those who appeal a decision to provide the Appeal Decision Officer sufficient evidence and rationale to show why the Responsible Official's decision should be remanded or reversed. The written notice of appeal filed must meet the following requirements:

1. State the document is a Notice of Appeal filed pursuant to 36 CFR part 215;
2. List the name, address, and telephone number of appellant;
3. Identify the decision document by title and subject, date of the decision, and name and identify the specific change(s) in the decision that the appellant seeks or portion of the decision to which the appellant objects;
4. State how the Responsible Official's decision fails to consider comments previously provided, either before or during the comment period specified in 36 CFR 215.6 and, if applicable, how the appellant believes the decision violates law, regulation, or policy.

**Contact Person**

For additional information concerning this decision or the Forest Service appeal process, contact

Pete Griffin
Juneau District Ranger
8465 Old Dairy Road
Juneau, Alaska 99801 (907) 586-8800

**FORREST COLE**
Forest Supervisor

12.9.04
Date

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, or marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 14th and Independence Avenue, SW, Washington, DC 20250-9410 or call (202) 720-5964 (voice and TDD). USDA is an equal opportunity provider and employer.

**Record of Decision**

Appendix 1

Non-significant amendment to Forest Plan

**Record of Decision**

**SIGNIFICANCE ANALYSIS FOR A NON-SIGNIFICANT AMENDMENT TO THE FOREST PLAN**

Small Old-Growth Reserve (Habitat) Modifications in Value Comparison Units 160, 190, and 200

During the development of the *1997 Forest Plan Final Environmental Impact Statement*, a conservation strategy was designed to ensure that implementation of the Forest Plan would provide a reasonable assurance of maintaining viable and well-distributed wildlife populations across the Tongass National Forest for 100 years. As part of this conservation strategy, a forest-wide system of large, medium, and small Old-Growth Habitats or Reserves (OGRs) was established and a set of standards and guidelines developed to preserve the integrity of the forest's old-growth ecosystem. The habitats have been identified and mapped in the 1997 Forest Plan.

The Old-Growth Habitat land use designation provides for evaluation and possible adjustment of the location of the habitats based on site-specific information. Where feasible, the boundaries should follow geographic features so that they can be recognized in the field. The 1997 *Forest Plan Record of Decision* committed the Forest Service to work with the Alaska Department of Fish and Game (ADG&G) and the U.S. Fish and Wildlife Service (USFWS) to review the location, size, and suitability of the OGRs during project-level planning.

As part of the Kensington Gold Project analysis, three small OGRs were identified within the project area (Figure 1). Small OGRs require a contiguous landscape of at least 16 percent of the total Value Comparison Unit (VCU) area and 50 percent of this area must be productive old-growth timber. Along with the general criteria of size and productivity, connectivity is also a criterion. The design of each habitat should be based on wildlife concerns specific to the area. Criteria commonly used in designing small habitats include important deer winter range, probable goshawk nesting habitat, probable marbled murrelet nesting habitat, large forest blocks, rare plant associations, and landscape linkages. VCUs are distinct geographic areas encompassing one or more large stream systems with boundaries that follow watershed divides.

The study area includes three VCUs (160, 190, and 200) with a small OGR within each. The Forest Service, ADF&G, and USFWS conducted an interagency review of the existing mapped small OGRs in November 2003. The review team determined that none of the mapped small OGRs in the study area met the requirements for size or the amount of productive old growth established under the Forest Plan and recommended non-significant modifications to each of the small OGRs. The findings and recommendation of the interagency review team are summarized below by VCU and explained in more

**Record of Decision**

detail in Appendix F of the *2004 Kensington Gold Project Supplemental Environmental Impact Statement* (SEIS).

**VCU 160**
*Finding*: The small OGR in VCU 160 does not meet Forest Plan standards and guidelines for size. This small OGR covers 802 acres and is 573 acres short of the 16 percent of VCU requirement.

*Recommendation*: Increase the size of the small OGR in VCU 160. The redrawn boundaries of this OGR will border but not include the tailings storage facility, access roads, pipeline, and maintenance access facilities.

**VCU 190**
*Finding*: The small OGR in VCU 190 does not meet the Forest Plan standards and guidelines for size nor percentage of productive old growth (POG) needed. This small OGR covers 1,299 acres and is 106 acres short of the 16 percent of VCU requirement. Existing POG is 615 acres; 106 acres short of the 50 percent POG requirement.

*Recommendation*: Expand to the north in light of existing natural fragmentation and limited amounts of productive old growth.

**VCU 200**
*Finding*: The small OGR within VCU 200 does not meet the Forest Plan standards and guidelines for productive old growth. Existing POG is 648 acres; 227 acres short of the 50 percent POG requirement.

*Recommendation*: Due to the naturally fragmented area, additional acres were used in the adjacent VCU160. Appendix K of the Forest Plan allows for up to 30 percent of an OGR to be mapped in an adjacent VCU if the resulting habitat achieves the objectives of the old-growth habitats. The interagency review team agreed that expanding the small OGR in VCU 200 to include portions of VCU 160 would increase connectivity values, capture important beach and estuary fringe habitats and riparian habitats, and include higher-volume stands. The approximately 36 percent of the recommended modified OGR would extend into VCU 160.

The Secretary of Agriculture's implementing regulation indicates the determination of significance is to be "...based on an analysis of the objectives, guidelines and other contents of the forest plan" (36 CFR 219.10(f)). The Forest Service has issued guidance for determining what constitutes a "significant amendment" under the National Forest Management Act. This guidance, in Forest Service Handbook (FSH) 1909.12 - Chapter 5.32, identifies four factors to be used in determining whether a proposed change to a forest plan is significant or not significant. These four factors are (1) timing; (2) location and size; (3) goals, objectives, and outputs; and (4) management prescriptions. An analysis of the factors is presented below.

**Record of Decision**

**Timing** - The Tongass Forest Plan Revision was completed in 1997. The Old-Growth Habitat land use designation provides for evaluation and possible adjustment of the location of the habitats based on site-specific information. Project level analysis for the Kensington Gold Project in 2003 determined that existing OGRs in the study area did not meet Forest Plan standards and guidelines.

**Location and Size** – These modifications increase the size of three small OGRs to meet Forest Plan standards and guidelines and better preserve areas of old-growth forest and their associated natural ecological processes to provide habitat for old-growth associated resources. OGRs in VCUs 160, 190, and 200 will be increased in size by 652, 163, and 458 acres, respectively.

**Goals, Objectives, and Outputs** - The boundary modifications approved here will increase the connectivity from higher elevations to the beach and estuary fringe habitats and additional riparian habitat, and would increase the number of intact patches of medium- and high-volume old-growth stands. Maintaining forested corridors between OGRs or other non-development land use designations is a key component to maintaining viable wildlife populations on the forest.

## Record of Decision

### Management Prescriptions

These recommendations would move 1,615 acres of productive old growth in land use designations suitable for timber harvest, into OGRs unsuited for timber harvest. Table A-1 summarizes the cumulative effects of small OGR adjustments on the Forest to date. Individually and cumulatively the changes to acres suitable for timber harvest are minor.

Table A-1
Effects of Forest Plan Amendments on Acres Suitable for Timber Harvest as of December 2004

| Project | Non-development to Development LUD Suitable Acres | Development to Non-development LUD Suitable Acres | Net Change in Suitable Acres |
|---|---|---|---|
| Kensington Gold EIS | 0 | 1,615 | -1,615 |
| Madan EIS | 377 | 1,501 | -1,124 |
| Finger Mountain EIS | 0 | 593 | -593 |
| Cholmondoley EIS | 894 | 6,873 | -5,979 |
| Woodpecker EIS | 180 | 130 | +50 |
| Polk Small Sales EA | 0 | 153 | -153 |
| Threemile EIS | 458 | 826 | -368 |
| Fire Cove Salvage | 186 | 633 | -447 |
| Salty EA | 99 | 126 | -27 |
| Luck Lake EIS | 257 | 794 | -537 |
| Doughnut EIS | 0 | 19 | -19 |
| Kuakan EIS | 416 | 542 | -126 |
| Sea Level EIS | 185 | 500 | -315 |
| Canal Hoya EIS | 0 | 151 | -151 |
| Chasina EIS | 0 | 78 | -78 |
| Control Lake EIS | 446 | 142 | +304 |
| Crystal Creek EIS | 481 | 1,153 | -672 |
| Nemo Loop EA | 177 | 932 | -755 |
| Todahl Backline EA | 2 | 363 | -361 |
| Niblack EA | 252 | 0 | +252 |
| **Total** | **4,700** | **17,759** | **-13,059** |

**Record of Decision**

Conclusion

Based on the analysis and recommendations of the interagency review team and the significance analysis above, the OGRs within VCUs 160, 190, and 200 will be modified as described in Appendix F of the 2004 Kensington Gold Project SEIS and shown in Figure 2. No direct or indirect effects on OGR is expected other than the positive effect of adjusting the boundaries of the existing small OGRs to comply with Forest Plan standards and guidelines. This amendment is fully consistent with current Forest Plan goals and objectives.

This analysis in combination with the 2004 Kensington Gold Project SEIS and ROD document my decision to amend the Forest Plan with a non-significant amendment expanded OGRs in VCUs 160, 190, and 200.

_____                         12·9·04
Forrest Cole                                       Date
Forest Supervisor

# Record of Decision



Figure 1. Existing Small Old Growth Reserve Boundaries