# DEPARTMENT OF THE ARMY PERMIT

Permittee: **COEUR ALASKA, INCORPORATED**

Permit No.: **POA-1990-592-M, LYNN CANAL 31**

Issuing Office: **U.S. Army Engineer District, Alaska**

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

**Project Description:** Dredge, place structures, and discharge an approximate total of 3,487,950 cubic yards of fill and dredged fill materials into an approximate total of 61.7 acres of waters, including forested and scrub shrub wetlands, deep-water habitat, and into other waters, and navigable waters of the United States (U.S.), in conjunction with the construction of new mine facilities and associated infrastructure, as described in the attached Tables 1 and 2, and drawings, 12 sheets, dated April 2005. Approximately 65.49 acres of U.S. waters will be mechanically land cleared, prior to excavation and/or construction activities.

All work will be in accordance with the attached Tables 1 and 2, and drawings (14 sheets, dated April 2005).

The following action authorized May 6, 1998, by Department of the Army (DA) permit POA-1990-592-2 (2-90059), is hereby eliminated from DA authorization:

> "Mechanized land clearing, followed by the excavation of wetlands, and the placement of fill to construct the base, containment and drain structures for the dry tailings storage facility (DTF), a footprint of 113 acres in wetlands."

**Project Location:** The project site is located within Section 1, Township 36 South, Range 61 East; and Sections 10, 14, 15, 23 through 25, and 36, Township 35 South, Range 61 East, Copper River Meridian; USGS Quadrangle Juneau D-4; Latitude 58°46'56" North, Longitude 134°00'36" West; north of Juneau, Alaska.

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on **30 June 2008**. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification of this permit from this office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and State coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization.

**ENG FORM 1721, Nov 86**        EDITION OF SEP 82 IS OBSOLETE        (33 CFR 325 (Appendix A))

5. If a conditioned water quality certification has been issued for your project, you must comply with the conditions specified in the certification as special conditions to this permit. For your convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of your permit.

**Special Conditions:**

SEE ATTACHED LIST OF PERMIT CONDITIONS

Special Information:

Any condition incorporated by reference into this permit by General Condition 5, remains a condition of this permit unless expressly modified or deleted, in writing, by the District Engineer or his authorized representative.

Further Information:

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

   (X) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S.C. 403).

   (X) Section 404 of the Clean Water Act (33 U.S.C. 1344).

   ( ) Section 103 of the Marine Protection, Research, and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization.

   a. This permit does not obviate the need to obtain other Federal, State, or local authorization required by law.

   b. This permit does not grant any property rights or exclusive privileges.

   c. This permit does not authorize any injury to the property or rights of others.

   d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability. In issuing this permit, the Federal Government does not assume any liability for the following:

   a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

   b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

   c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

   d. Design or construction deficiencies associated with the permitted work.

   e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision. This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a revaluation include, but are not limited to, the following:

**ENG FORM 1721, Nov 86**     EDITION OF SEP 82 IS OBSOLETE     (33 CFR 325 (Appendix A))

**Exhibit 9, page 2 of 12**

a. You fail to comply with the terms and conditions of this permit.

b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions. General Condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

_____          June 17 2005
(PERMITTEE) AND TITLE                              (DATE)

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

FOR: _____          17 June 2005
(DISTRICT ENGINEER) Colonel Timothy J. Gallagher    (DATE)
Larry L. Reeder, Chief
Regulatory Branch

When the structures or work authorized by this permit are still in existence at the time the property is transferred the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions have the transferee sign and date below.

_____          _____
(TRANSFEREE)                                       (DATE)

ENG FORM 1721, Nov 86       EDITION OF SEP 82 IS OBSOLETE        (33 CFR 325 (Appendix A))

- 3 -

Exhibit 9, page 3 of 12

POA-1990-592-M

### Special Conditions for Corps Permit

POA-1990-592-M

FAILURE TO COMPLY WITH CORPS OF ENGINEERS PERMIT CONDITIONS MAY BE GROUNDS TO MODIFY, SUSPEND, OR REVOKE THE DEPARTMENT OF THE ARMY PERMIT

**GENERAL**

1. Any condition incorporated by reference into this permit by Special Condition or by General Condition 5, remains a condition of this permit unless expressly modified or deleted, in writing, by the District Engineer or his authorized representative.

2. The work limit for each mine component, in waters of the United States, shall be clearly identified in the field prior to excavation, clearing and/or construction. The fill limit boundaries shall be located and flagged prior to fill placement. Permanent markers shall be placed and monumented so an observer can delineate the clearing and fill limits while walking on the ground at the site.

3. Permittee shall be responsible to obtain all permits and comply with all appropriate State and Federal Statutes for oil storage and transfer. An oil storage facility shall be subject to the provisions of a plan of operation approved by the United States Coast Guard and Oil Spill Contingency Plan approved by the Alaska Department of Environmental Conservation.

4. Permittee shall provide an annual progress report to the Corps on project status. This report shall summarize the wetland acres disturbed and reclaimed. The report will be due annually on or before February 15.

5. The permittee shall ensure that all project contractors and all workers whose work is subject to this permit are advised of its terms and conditions.

6. Permittee shall comply with the terms and conditions of the most recently approved version of the Kensington Gold Project's "<u>Final Plan of Operations</u>", to include "<u>Appendix I, Reclamation and Closure Plan</u>", as approved by the U.S. Forest Service. All measures involving concurrent and end-of-project reclamation in wetlands shall become enforceable conditions of the Department of the Army (DA) permit. The DA recognizes that the reclamation document is a 'living' document and will undergo many revisions between now and project closure, to comply with pertinent Federal, state and local regulations.

7. Permittee shall minimize tree clearing at the mine and mill complex and along the haul road, and shall maintain as large a buffer of standing timber as practicable between the haul road, the mill and the processing area at Berners Bay.

8. Permittee shall identify methods in the approved Plan of Operations and implement the best management practices that allow for quick action to be taken where erosion is imminent or under way.

1

POA-1990-592-M

9. Permittee shall reclaim disturbed areas on steep slopes and shall avoid disturbing steep slopes during inclement weather.

10. A nontoxic chemical flocculent shall be added to the slurry to enhance the deposition of suspended particles in the Lower Slate Lake disposal site [see CFR 230.71(d)].

**FRESHWATER**

11. A brush berm or equivalent shall be placed on the wetland permit boundaries down gradient of flow to keep sediment from leaving the project site. The berm footprint shall not exceed the approved permit boundary.

12. Natural drainage patterns shall be maintained in the project area by the installation of culverts in sufficient number and size under access roads to prevent flooding or excessive drainage of adjacent wetlands. The flood channels identified in the approved permit boundary in and around laydown yards and pads shall be clearly marked and shall remain undisturbed except as shown in the approved permit boundary.

13. No fill or construction materials will be stockpiled, temporarily or permanently, on adjacent wetlands or waters outside the approved footprint.

14. All surface disturbances in wetlands shall be confined to the project footprint to prevent unnecessary damage to adjacent wetland areas. No motorized equipment shall be operated, stored or serviced outside of approved areas. No fuel, lubricants, or other hazardous substances shall be stored below the Ordinary High Water level of Johnson Creek, Slate Creek, Ophir Creek or Sherman Creek, Upper Slate Lake, Lower Slate lake, or below the High Tide Line of Berners Bay or Lynn Canal.

15. Permittee shall construct a cofferdam in East Fork Slate Creek, to capture Upper Slate Lake waters and other waters and divert the water via a diversion pipeline past the Tailings Storage Facility (TSF) and into the East Fork Slate Creek segment located below the dam.

16. The waters and the discharged processed mine tailing sediments, located in Lower Slate Lake, shall be tested, at lake closure or just prior to cessation of discharges of mine wastes into Lower Slate Lake, in accordance with appropriate testing requirements (at the time of closure) for the presence of toxic materials and contaminants and the results shall be made available to the United States Army Corps of Engineers, Alaska District, Regulatory Branch, for dissemination to the appropriate State and Federal resource agencies.

17. Silt screens or other appropriate methods shall be used to confine suspended particles and turbidity to a small area where settling can occur in Lower Slate Lake (see 40 CFR 230.73[c]), and include filter blankets and curtains to filter out suspended solids.

**POA-1990-592-M**

18. No in-water work shall occur in Johnson Creek between May 1 through October 1, to direct construction to low-flow periods.

**MARINE**

19. The permittee understands and agrees that, if future operations by the United States require the removal, relocation, or other alteration, of the structure or work herein authorized, or if, in the opinion of the Secretary of the Army or his authorized representative, said structure or work shall cause unreasonable obstruction to the free navigation of the navigable waters, the permittee will be required, upon due notice from the Corps of Engineers, to remove, relocate, or alter the structural work or obstructions caused thereby, without expense to the United States. No claim shall be made against the United States on account of any such removal or alteration.

20. All steel piles shall be driven using a vibratory hammer. Under those conditions where impact hammers are required for reasons of seismic stability or substrate type, the piles shall be driven as deep as possible with a vibratory hammer prior to the use of the impact hammer. The impact hammer shall be used at a time of year when larval and juvenile stages of fish species are not present: this will be coordinated with the Alaska Department of Natural Resources, Habitat.

21. All piles shall be driven when the current is reduced (i.e., centered around slack current) to minimize the number of fish exposed to adverse levels of underwater sound.

22. Permittee shall either use a block of wood between the impact hammer and the pilings, and/or use a bubble curtain to attenuate the sound.

23. Permittee shall install and maintain, at their expense, any safety lights and signals prescribed by the U.S. Coast Guard (USCG) through regulations or otherwise, on the authorized marine facilities. The USCG can be reached at the following address and telephone number: Commander (oan) 17th Coast Guard District, Post Office Box 25517, Juneau, Alaska 99802-5517, telephone (907) 463-2254.

24. The size of the fill footprint shall be restricted to minimize adverse environmental impacts to the Slate Creek Cove and Berners Bay ecosystem.

25. Permittee shall use metal grating as a top surface, rather than planking, as this results in greater light transmission to aquatic plants. Light penetration is needed to maintain inter-tidal habitat beneath structures such as walkways, catwalks, and gangways.

26. No portion of any floating structure may ground at any tidal stage.

27. No in-water work shall occur in Berners Bay between March 15 through June 30, to protect juvenile salmonids, herring and eulachon.

28. The placement of fill material into marine waters shall only occur during low-water periods.

3

POA-1990-592-M

29. Your use of the permitted activity must not interfere with the public's right to free navigation on all navigable waters of the United States.

   **ALASKA DEPARTMENT OF CONSERVATON CERTIFICATION:** The following conditions were listed on ADEC's Certificate of Reasonable Assurance, and in accordance with 33 U.S.C. 1341(d), are incorporated into the Department of the Army permit.

1. The permittee shall submit mine operations, water quality monitoring, and closure plans to the department for its approval before introducing any discharge into the TDF and shall secure department approval for any modification to approved plans.

2. During construction of the tailings dam the construction area shall be isolated from the flowing waters. Techniques such as stream diversion, dam and pump, or stream fluming shall be incorporated into the construction activity to insure that silt laden water resulting from construction activities is not carried downstream and to marine waters.

3. All soil disturbing construction operations that would increase turbidity of surface waters to levels that would violated Alaska Water Quality Standards shall be temporarily suspended if on site monitoring demonstrates said violations.

4. For culverts which carry waters that are discharging or will discharge into fish-bearing fresh waters or marine waters, installation shall not occur within the flowing waters of the stream/drainage. Culvert installation techniques such as stream diversion, dam and pump, or stream fluming shall be incorporated into the installation activity to insure that silt laden water is not carried into sensitive fish-habitat. DNR Habitat permits shall address the anadromous fish-bearing streams.

5. Any disturbance in the stream banks or streambeds area shall be stabilized to prevent erosion and resultant sedimentation of the water body during and after operations. Any disturbed areas shall be re-contoured and revegetated as soon as practicable.

6. During the construction and operational phases, spill response equipment and supplies shall be available on site for the cleanup and containment of petroleum product leaks or spills.

7. The wooden portions of road bridges and of the marine terminal shall not be treated with any preservative containing or pentachlorophenol and if treated with creosote, the creosote shall be applied via pressure treatment that inhibits leaching at a rate that causes a sheen to form on the water.

8. The mine tailings shall be tested on a quarterly basis, in accordance with a monitoring plan approved by the department, to insure there are no significant deviations from the original tailings analysis which may affect monitoring, closure requirements, water quality, or any other permit condition. Constituent levels that shall be measured include, but are not limited to, aluminum, ammonia, arsenic, cadmium, chromium, copper, iron, lead, mercury,

POA-1990-592-M

nickel, nitrate, pH, selenium, silver, sulfate, total dissolved solids (TDS), zinc, meteoric water mobility, and acid base accounting. These analyses shall be included in the annual report to the U.S. Forest Service for all agencies to review.

9. Untreated runoff from the topsoil stock pile shall not be allowed to reach any natural body of water.

10. Construction of the infiltration gallery shall be isolated from the flowing waters of the stream.

11. Intertidal fill placed for the marine terminal shall be clean of organics. Fill shall be placed during low tide in those intertidal areas which are dry during low tide.

12. The appropriate water quality protection BMPs shall be utilized during the proposed timber harvest around Lower Slate Lake, to protect the waters of the lake, stream, and ocean.

13. Bridge abutment construction shall be isolated from the flowing waters of the stream.

14. Coeur Alaska, Inc., shall provide proof of financial responsibility in an amount and in form(s) acceptable to the Department, in accordance with AS 46.03.100(f) and 18 AAC 60.265. If the financial assurances provided to other state and federal agencies are not sufficient to satisfy the Departments requirements, Coeur Alaska Inc. will provide any additional financial assurances determined by the Department to be necessary.

15. Capping of the tailings, addition of organics, or other state approved mitigation measures will be required at or after mine closure if water quality criteria are not met in the impoundment, or if the tailings do not successfully re-colonize as determined by the state.

Table 1 - Kensington Gold Project – Amendment to Permit # 2-900592 – Facility Acres

| Area* | Facility Description | Status | Acres of Waters of the U.S.** | Fill Volume*** | Mechanical Land Clearing (acres) |
|---|---|---|---|---|---|
| 1 | Kensington Comet Beach Camp | Existing/Permitted | 0 | 0 | 0 |
| 2 | Kensington Road | Permitted | (0.9) | 0 | 0 |
| 3 | Kensington Borrow Source | Proposed Expansion | (0.3) | 0 | 0.3 |
| 4 | Kensington Development Rock Storage | Existing/Permitted | (5.1) | (500,000) | 0 |
| 5 | Kensington Water Treatment Plant/Ponds | Existing/Permitted | (2.6) | (20,000) | 0 |
| 6 | Kensington Topsoil Stockpile Area | Permitted | (2.1) | (30,000) | 2.1 |
| 7 | Kensington 2050 Waste Rock Dump | Existing | 0 | 0 | 0 |
| 8 | Jualin Process Area | Proposed | 1.1 | 21,000 | 1.1 |
| 9**** | Jualin Development Rock Storage | Proposed | 4.3 | 100,000 | 4.3 |
| 10 | Jualin Process Area Treatment Pond | Proposed | 0 | (20,000) | 0 |
| 11 | Jualin Process Area-Topsoil Stockpile | Proposed | 0 | (10,000) | 0.3 |
| 12 | Jualin Pumphouse Area | Proposed | 0.1 | 0 | 0.1 |
| 13 | Jualin Access Road | Proposed Expansion | 8.2 | 26,000 | 8.2 |
| 14 | Jualin Laydown Area #1 | Existing | (0.4) | (4,800) | 0 |
| 15 | Jualin Laydown Area #2 | Proposed | (3.5) | 0 | 3.5 |
| 16 | Jualin Laydown Area #3 | Existing | (0.8) | 0 | 0 |
| 17 | Jualin Administration Area | Existing | (2.5) | (32,000) | 0 |
| 18 | Jualin Borrow Source #1 | Proposed Expansion | 0 | 0 | 0 |
| 19 | Jualin Borrow Source #2 | Proposed Expansion | (0.1) | 0 | 0.1 |
| 20 | Jualin Borrow Source #3 | Proposed Expansion | (2.4) | 0 | 2.4 |
| 21 | Jualin Borrow Source #4 | Proposed | (0.7) | 0 | 0.7 |
| 22 | Tailings Facility Access Road & Pipeline | Proposed | 4.7 | 20,000 | 4.7 |
| 23 | Tailings Facility Access Road | Proposed | 0.3 | 2,000 | 0.3 |
| 24 | Tailings Lake (tailings as fill) | Proposed | 23.5 | 3,168,000 | 23.5 |
| 25 | Tailings Lake Margin Working Area | Proposed | 8.25 | 450 | 8.25 |
| 25a | Tailings Lake Water Treatment Plant | Proposed | 0.24 | 1000 | 0.24 |
| 25b | Tailings Lake Diversion Pipe Intake Dam | Proposed | 0.01 | 25 | 0 |
| 26 | Tailings Dam Borrow Source | Proposed | (0.3) | 0 | 0.3 |
| 27 | Tailings Pipeline and Access Road | Proposed | 3.0 | 15,000 | 3.0 |
| 28 | Tailings Dam and Plunge Pool Area | Proposed | 5.9 | 120,000 | 0 |
| 29 | Slate Creek Cove Marine Terminal | Proposed | 1.9 | 10,475 | 1.9 |
| 30 | Slate Creek Cove Topsoil Stockpile | Proposed | 0.2 | 4,000 | 0.2 |
| TOTALS | | | 61.7 | 3,487,950 | 65.49 |

*Areas are shown on Sheet 3 of 14
**Areas in parentheses are existing, permitted, or have no fill associated with the disturbance to wetlands
***Fill volumes in parentheses are existing or have been previously permitted
****Of the proposed facilities in this amendment, this is the only facility which will not be reclaimed as wetlands

Exhibit 9, page 9 of 12

Table 2 - Summary of Disturbed Areas and Wetlands

| Parcel | Reclamation (acres) | | |
|---|---|---|---|
| | Wetland - or open water | Upland | No Action |
| 1 - Kensington Comet Beach Camp | 0 | 3.2 | 0 |
| 2 - Kensington Road | 7.6 | 0.5 | 0 |
| 3 - Kensington Borrow Source | 1.5 | 0 | 0 |
| 4 - Kensington Development Rock Storage | 0 | 14.3 | 0 |
| 5 - Kensington WTP/Ponds | 4.3 | 0 | 0 |
| 6 - Kensington Snow/Topsoil Stockpile | 2.1 | 0 | 0 |
| 7 - 2050 Level Portal Waste Rock Dump | 0 | 0 | 1.5 |
| 8 - Jualin Process Area | 0 | 0 | 12.9 |
| 9 - Jualin Development Rock Storage Area | 0 | 4.3 | 0 |
| 10 - Jualin Process Area Treatment Pond | 0 | 0 | 1.5 |
| 11 - Process Area Snow/Topsoil Stockpile | 0 | 0.3 | 0 |
| 12 - Jualin Pumphouse Area | 0 | 0 | 0.1 |
| 13 - Jualin Access Road | 0 | 0 | 33.8 |
| 14 - Jualin Laydown Area #1 | 0.4 | 0 | 0 |
| 15 - Jualin Laydown Area #2 | 0 | 0 | 3.5 |
| 16 - Jualin Laydown Area #3 | 0 | 0 | 0.8 |
| 17 - Jualin Administration Area | 0 | 0 | 2.5 |
| 18 - Jualin Borrow Source #1 | 0 | 2.0 | 0 |
| 19 - Jualin Borrow Source #2 | 0 | 1.3 | 0 |
| 20 - Jualin Borrow Source #3 | 3.6 | 0 | 0 |
| 21 - Jualin Borrow Source #4 | 0.7 | 0 | 0 |
| 22 - TSF Access Road and Pipeline | 0 | 0 | 7.4 |
| 23 - Tailings Facility Access Road | 0 | 0 | 2.6 |
| 24 - Tailings Lake | 61.8[1,2] | 0 | 0 |
| 25 - Tailings Lake Margin Working Area | 8.5 | 9.4 | 0 |
| 26 - Tailings Dam Borrow Source | 0.5 | 4.1 | 0 |
| 27 - TSF Access Road and Pipeline | 2.8 | 7.3 | 0 |
| 28 - Tailings Dam Plunge Pool Area | 5.9 | 0.9 | 0 |
| 29 - Slate Creek Cove Marine Terminal | 1.9 | 0 | 0 |
| 30 - Slate Creek Cove Snow/Stockpile | 0.2 | 0 | 0 |
| *Totals* | 101.8 | 47.6 | 66.6 |

[1] Total area (61.8 acres) includes 58.3 acres of deep water, greater than 6.6 feet in depth.
[2] Total lake area includes area of existing lake (21.9 acres).



