# federal register

FRIDAY, JULY 25, 1975
WASHINGTON, D.C.
Volume 40 ■ Number 144

PART IV



# DEPARTMENT OF DEFENSE

Corps of Engineers

■

# PERMITS FOR ACTIVITIES IN NAVIGABLE WATERS OR OCEAN WATERS

Exhibit 20, page 1 of 7

## Title 33—Navigation and Navigable Waters
### CHAPTER II—CORPS OF ENGINEERS, DEPARTMENT OF THE ARMY
### PART 209—ADMINISTRATIVE PROCEDURE

#### Permits for Activities in Navigable Waters or Ocean Waters

On May 6, 1975, the Department of the Army, acting through the Corps of Engineers, published four alternative proposed regulations in response to the order of the United States District Court for the District of Columbia in *NRDC* v. *Callaway*, et al., ____ F. Supp. ____, 7 ERC 1784, (D.D.C., March 27, 1975). Each of the four alternative proposed regulations pertained to the regulation, by the Corps of Engineers, of those activities involving the discharge of dredged or fill material in navigable waters pursuant to section 404 of the Federal Water Pollution Control Act Amendments of 1972 (hereinafter referred to as the FWPCA). Each of these alternatives offered an administrative definition of the term "navigable waters" for public review and comment, as well as a definition of the terms "fill material" and "dredged material" and varying procedures to implement the regulatory permit program under Section 404 of the FWPCA.

Over 4,500 comments were received in response to this regulation. Those responding to the regulation included a large number of Governors; members of Congress; Federal, State, and local agencies; environmental organizations; commercial, industrial, and trade organizations; port authorities; agricultural organizations; and individual members of the public. A large number of these comments addressed the issue of whether there should or should not be a Federal permit program to regulate the discharge of dredged or fill material in navigable waters (defined in the FWPCA as "waters of the United States") rather than the particular provisions in the four alternative proposed regulations under review. Many comments appeared to be responses to the wide spread news coverage of the proposed regulation.

Those comments which did address substantive aspects of the regulation were helpful in meeting the dual purposes of the FWPCA: First, the development of a workable program; and, second, the needs of water quality. The regulation has clarified the activities which are included in the program and has incorporated administrative mechanisms to lessen the impacts of the regulation on affected Federal and State agencies, and on the public. To further refine the program the Corps will again need the help of the public and of State and Federal agencies in identifying activities and bodies of water that can be excluded from the Section 404 program without adverse impact on the chemical, physical, or biological integrity of the nation's waters.

We look forward to again working with the public and the State and Federal agencies on these further changes.

The Corps of Engineers wishes to take this opportunity to express its appreciation to every individual, organization, and governmental agency and representative that submitted comments during this rule-making exercise.

The Department of the Army, acting through the Corps of Engineers, is publishing herewith an interim final regulation which prescribes the policies, practice, and procedures to be followed in the processing of Department of the Army permits for activities in navigable or ocean waters including the discharge of dredged or fill material in navigable waters. Interim final regulations are being published in order to begin immediately to implement a permit program under Section 404 of the FWPCA in those waters which will be included in the Corps regulatory jurisdiction as a result of the decision in *NRDC* v. *Callaway*. However, while this regulation becomes effective July 25, 1975, there will be an additional comment period of 90 days in order that the public can comment further on any of its provisions. Thereafter, these comments will be reviewed and the regulation modified, if necessary.

The development of a permit program to regulate the discharge of dredged material and fill material in all waters of the United States has been the subject of intensive discussions between the Corps of Engineers and the Environmental Protection Agency since the decision in *NRDC* v. *Callaway*. We have worked together in an effort to develop a program that is manageable, responsive to the concerns of protecting vital national water resources from destruction through irresponsible and irreversible decisions, and sensitive to the often conflicting needs and desires of people who utilize these resources. We have attempted to create a program that recognizes the need to interweave all concerns of the public—environmental, social, and economic—in the decision-making process; that recognizes that present limitations on manpower preclude its immediate implementation throughout the country; and that we believe to be responsive to the overall objectives and needs of the Federal Water Pollution Control Act to the extent that the law now allows.

We recognize that this program, in its effort to protect water quality to the full extent of the commerce clause, will extend Federal regulation over discharges of dredged or fill material to many areas that have never before been subject to Federal permits or to this form of water quality protection. We therefore strongly urge the public to review and comment further on this interim final regulation in order that it can be modified, where necessary and legally permissible, to fully address your concerns, desires, goals, and objectives. To assist you in your analysis and understanding of this regulation, representatives from the Corps of Engineers intend to travel throughout the country during the next 90 days and conduct public hearings on this regulation. We urge your participation in these hearings when they are scheduled in your area.

As we move into this new program, we also urge your support and understanding. To the extent that enforcement of its provisions becomes necessary, the Corps of Engineers intends to request the Department of Justice and the Environmental Protection Agency to take appropriate action. However, we intend to pursue a reasonable enforcement program over these activities that have never before been subject to Federal regulation, relying initially on an intensive public information campaign to make the public aware of the requirements of Section 404 of the FWPCA. It is our desire and intention to work closely with the Department of Justice and the Environmental Protection Agency to achieve this purpose.

On May 6, 1975, the Environmental Protection Agency, in conjunction with the Department of the Army, published proposed guidelines for public comment which are required by section 404(b) of the FWPCA in the review of a permit application for the discharge of dredged or fill material. It is anticipated that final guidelines will be published about August 15, 1975. During the interim, the present procedures will be utilized by Corps District Engineers in the review of permit applications for the discharge of dredged or fill material in navigable waters.

There follows a brief discussion of the pertinent sections of this regulation which address the discharge of dredged or fill material in navigable waters:

*Paragraph (d)(2):* This paragraph defines the term "navigable waters" and in so doing identifies those waters of the United States which are subject to Corps jurisdiction under section 404 of the FWPCA.

With respect to the coastal regions of the country, Corps jurisdiction would extend to all coastal waters subject to the ebb and flow of the tide shoreward to their mean high water mark (mean higher high water mark on the Pacific Coast) and also to all wetlands, mudflats, swamps, and similar areas which are contiguous or adjacent to coastal waters. This would include wetlands periodically inundated by saline or brackish waters that are characterized by the presence of salt water vegetation capable of growth and reproduction, and also wetlands (including marshes, shallows, swamps and similar areas) that are periodically inundated by freshwater and normally characterized by the prevalence of vegetation that requires saturated soil conditions for growth and reproduction. In months to come, we intend to publish a list of fresh, brackish, and salt water vegetation that can be used as one of the indicators in determining the extent of Corps jurisdiction in these areas.

With respect to the inland areas of the country, Corps jurisdiction under Section 404 of the FWPCA would extend to all rivers, lakes, and streams that are navigable waters of the United States, to all tributaries (primary, secondary, tertiary, etc.) of navigable waters of the United States, and to all interstate waters. In addition, Corps jurisdiction would extend to those waters located en-

tirely within one state that are utilized by interstate travelers for water related recreational purposes, or to remove fish for sale in interstate commerce, or for industrial purposes or the production of agricultural commodities sold or transported in interstate commerce. Corps jurisdiction over these water bodies would extend landward to their ordinary high water mark and up to their headwaters, as well as to all contiguous or adjacent wetlands to these waters which are periodically inundated by freshwater, brackish water, or salt water and are characterized by the prevalence of aquatic vegetation, as described in the preceding paragraph, that are capable of growth and reproduction. Manmade canals which are navigated by recreational or other craft are also included in this definition. Drainage and irrigation ditches have been excluded.

We realize that some ecologically valuable water bodies or environmentally damaging practices may have been omitted. To insure that these waters are also protected, we have given the District Engineer discretionary authority to also regulate them on a case by case basis.

*Paragraph (d) (2) (ii).* Several additional definitions amplify the definition of navigable waters and are expressed in this paragraph. "Ordinary high water mark", used as a measurement point to determine the extent of Federal jurisdiction in inland freshwater rivers, streams, and lakes that do not have wetlands contiguous or adjacent to them, is established as that point on shore which is inundated 25% of the time (derived by a flow duration curve based on available water stage data).

"Headwaters" has been defined as the point on a stream beyond which the flow of the water body is normally less than five cubic feet per second. However, other factors, such as the volume of flow and point and nonpoint source discharge characteristics in the area will also be considered in determining these limits. Finally, "lakes" have been defined to include all natural bodies of water greater than five acres in surface area and also all bodies of standing water created by impounding any navigable water. This would not include stock watering ponds and settling basins, other than those that result from the impoundment of a navigable water.

During the 90 day comment period, the public is urged to carefully review these various definitions, particularly with respect to "ordinary high water mark," "headwaters," and "lakes" and furnish comments and recommended revisions to assist in the development of a final definition of this term that is consistent with the goals and objectives of the FWPCA to protect water quality.

*Paragraph (d) (4).* The term "dredged material" has been defined to include any material that is excavated or dredged from any of the waters of the United States identified in the preceding paragraphs. It would not include material which is obtained from some other source beyond a water of the United States, and also would not include materials produced in normal farming, silvaculture, and ranching activities such as plowing, cultivating, seeding, and harvesting.

*Paragraph (d) (5).* The term "discharge of dredged material" has been added to the lists of definitions in an effort to clarify the types of activities that fall under this term. Under this definition, therefore, any material which is excavated or dredged from a navigable water and then reintroduced through a point source into a navigable water would fall under this term. The types of activities encompassed by this term would include the depositing into navigable waters of dredged material if it is placed alongside of a newly dredged canal which has been excavated in a wetland area. It would also include maintenance of these canals if excavated material is placed in navigable waters. Also included is the runoff or overflow from a contained land or water disposal area.

The term "discharge of dredged material" does not include the discharge of pollutants into navigable waters that occur during the subsequent land based processing of dredged material extracted for commercial use even though the operation of extracting the materials itself may require a permit from the Corps of Engineers under section 10 of the River and Harbor Act of 1899. Discharges of materials from land based commercial washing operations are regulated under section 402 of the FWPCA.

*Paragraph (d) (6).* The term "fill material" has been defined to mean any pollutant used to create fill in the traditional sense of replacing an aquatic area with dry land or changing the bottom elevation of a water body for any purpose. Again, materials resulting from normal farming, silviculture, and ranching activities, such as plowing, cultivating, seeding, and harvesting for the production of food, fiber, and forest products, would not fall within this term. Farm conservation practices such as terracing, check dams and landleveling would also not be regulated unless they occur in navigable waters. In addition, maintenance or emergency reconstruction of existing structures such as dikes, dams, or levees, will not be regulated.

*Paragraph (d) (7).* A new term "discharge of fill material" has been added to identify the types of activities to be regulated under section 404 of the FWPCA if, and only if, they are performed in a navigable water as that term has been defined in the regulation and discussed in the preceding paragraphs. Those activities falling within this term include site development fills for recreational, industrial, commercial, residential, and other uses; causeways or road fills; dams and dikes; artificial islands; property protection and/or reclamation devices such as riprap, groins, seawalls, breakwaters, and bulkheads and fills; beach nourishment; levees; sanitary landfills; backfill required for the placement of structures such as sewage treatment facilities, intake and outfall pipes associated with power plants, and subaqueous utility lines; and artificial reefs.

*Paragraph (e) (2).* In view of manpower and budgetary constraints it is necessary that this program be phased in over a two year period. Provision for such a phase-in approach exists in this paragraph. Thus, under Phase I, this regulation would become immediately operative in all coastal waters and contiguous or adjacent wetlands as well as inland rivers, lakes and streams that are navigable waters of the United States (which the Corps of Engineers is already regulating) and their contiguous or adjacent wetlands. In Phase II, which would begin on July 1, 1976, we would continue to regulate all of those discharges of dredged material occurring in those waters identified in Phase I and also begin to regulate discharges of dredged or fill material in primary tributaries (the main stems of tributaries directly connecting to navigable waters of the United States) their contiguous or adjacent wetlands, and all lakes. Finally, in Phase III, all discharges of dredged or fill material in navigable waters would be regulated after July 1, 1977.

We believe that the initial thrust of this phase-in program will enable the protection of those wetland and water resources areas that are in immediate danger of being further destroyed through unregulated development. As we move to implement these phases, we will endeavor to utilize general categorical permits to the maximum possible extent relying on individual permit actions to regulate only those environmentally significant activities. We will also attempt to identify additional categories of activities which can be excluded at a later date.

Discharges of dredged or fill material that occur before a particular water body falls under a particular phase are permitted by the regulation in paragraph (e) (2) (i), provided certain prescribed conditions are met before the discharge occurs. Included in these conditions is the requirement to obtain a State water quality certification (or to have the State waive its right to so certify) and the requirement to certify under section 307 (c) (3) of the Coastal Zone Management Act of 1972 that the discharge will be in compliance with an approved coastal zone management program. This paragraph does not automatically exempt all discharges of dredged or fill material not covered by a particular phase from the permitting requirements of this regulation, for it still gives the District Engineer the option of exercising jurisdiction over any activity involving the discharge of dredged or fill material in those cases where the activity will have a significant impact on the environment.

*Paragraph (e) (2) (iii).* This paragraph "grandfathers" all discharges of dredged or fill material in waters other than navigable waters of the United States which were completed before the date of this regulation and also permits any discharge of dredged or fill material of less than 500 cubic yards which was commenced before the date of this regulation and is completed within six months. This 500 cubic yard exemption