


Monday
May 19, 1980

Part X

# Environmental Protection Agency

Consolidated Permit Regulations

Exhibit 23, page 1 of 6

ENVIRONMENTAL PROTECTION AGENCY

**40 CFR Parts 122, 123, 124, and 125**

[FRL 1453-5]

**Consolidated Permit Regulations: RCRA Hazardous Waste; SDWA Underground Injection Control; CWA National Pollutant Discharge Elimination System; CWA Section 404 Dredge or Fill Programs; and CAA Prevention of Significant Deterioration**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Final rule.

**SUMMARY:** This rule establishes consolidated permit program requirements governing the Hazardous Waste Management program under the Resource Conservation and Recovery Act (RCRA), the Underground Injection Control (UIC) program under the Safe Drinking Water Act (SDWA), the National Pollutant Discharge Elimination System (NPDES) program and State Dredge or Fill ("404") programs under the Clean Water Act (CWA), and the Prevention of Significant Deterioration (PSD) program under the Clean Air Act, for three primary purposes:

(1) To consolidate program requirements for the RCRA and UIC programs with those already established for the NPDES program.

(2) To establish requirements for State programs under the RCRA, UIC, and Section 404 programs.

(3) To consolidate permit issuance procedures for EPA-issued Prevention of Significant Deterioration permits under the Clean Air Act with those for the RCRA, UIC, and NPDES programs.

**DATES:** These regulations shall become effective as follows: All regulations shall become effective as to UIC permits and programs July 18, 1980, but shall not be implemented until the effective date of 40 CFR Part 146. All regulations shall become effective as to RCRA permits and programs November 19, 1980. Part 124 shall become effective as specified in § 124.21. All other provisions of the regulations shall become effective July 18, 1980. For purposes of judicial review under the Clean Water Act, these regulations will be considered issued at 1 p.m. eastern time on June 2, 1980; see 45 FR 26894, April 22, 1980. In order to assist EPA to correct typographical errors, incorrect cross-references, and similar technical errors, comments of a technical and nonsubstantive nature on the final regulations may be submitted on or before July 18, 1980. The effective date will not be delayed by consideration of such comments.

Comments on the scope and applicability of Executive Order 11990 and Executive Order 11988 to RCRA, UIC, and NPDES permits must be submitted on or before July 18, 1980.

Comments on requirements for Class IV wells must be received by July 15, 1980.

There will be a hearing on the requirements for Class IV wells on July 8, 1980, from 9 a.m. to 5 p.m.

**ADDRESSES:** Comments of a technical and nonsubstantive nature, as well as the comments concerning the scope and applicability of Executive Order 11990 and Executive Order 11988, should be addressed to: Edward A. Kramer, Office of Water Enforcement (EN-336), U.S. Environmental Protection Agency, Washington, D.C. 20460.

Comments on requirements for Class IV wells should be addressed to: Alan Levin, Director, State Program Division (WH-550), Office of Drinking Water, Environmental Protection Agency, Washington, D.C. 20460.

The Public Hearing on Class IV wells will be held at: HEW Auditorium, 330 Independence Avenue, S.W., Washington, D.C.

**FOR FURTHER INFORMATION CONTACT:** Edward A. Kramer, Office of Water Enforcement (EN-336), U.S. Environmental Protection Agency, Washington, D.C. 20460, (202) 755-0750.

**SUPPLEMENTARY INFORMATION:**

*Background*

These final regulations consolidate requirements and procedures for five EPA permit programs. These regulations represent the major product of the Agency's permit consolidation initiative that began in the fall of 1978. They are based on the proposed consolidated permit regulations that were published in the Federal Register for comment on June 14, 1979 (44 FR 32854).

EPA program requirements and State program requirements are established for three programs:

• The Hazardous Waste Management (HWM) program under the Resource Conservation and Recovery Act (RCRA);

• The Underground Injection Control (UIC) program under the Safe Drinking Water Act (SDWA);

• The National Pollutant Discharge Elimination System (NPDES) program under the Clean Water Act (CWA); and

State program requirements only are established for:

• State section 404 "Dredge or Fill" programs under the CWA.

In addition, procedures for permit decisionmaking are established for the above four programs, and for

• The Prevention of Significant Deterioration (PSD) program under the Clean Air Act, where this program is operated by EPA or a delegated State agency under 40 CFR 52.21(v); these procedures do not apply to PSD permits issued by States to whom administration of the PSD program has been transferred. (See preamble to Part 124, Subpart C.)

These regulations are an important element of an Agency-wide effort to consolidate and unify procedures and requirements applicable to EPA and State-administered permit programs.

The Agency has also developed a single set of permit application forms for the programs covered by these regulations. These consolidated application forms are published elsewhere in today's Federal Register. They consist of a single general form to collect basic information from all applicants, followed by separate program-specific forms which collect additional information needed to issue permits under each program. The application forms in today's Federal Register include the general information form and the additional forms for certain water discharges under NPDES and for hazardous waste permits under RCRA.

When the draft consolidated application forms were published for public comment, they appeared along with a set of proposed NPDES regulations which were closely related to the contents of the application forms. Those accompanying regulations have now been integrated with the final NPDES regulations which appear as part of these consolidated permit regulations, and are summarized in the proper places in the preamble discussion. For a more thorough discussion and response to comments on those portions of the NPDES regulations, see the preamble to the consolidated application forms published elsewhere in today's Federal Register. Because the draft application forms and accompanying proposed NPDES regulations were originally published together, commented upon together, and are closely related, the detailed discussion of both forms and accompanying regulations has been retained in one place.

Many of the requirements in these regulations apply both to EPA programs and to State programs that receive EPA approval to operate in lieu of a Federal program in a particular State. These common requirements are intended to ensure that State permit programs satisfy minimum statutory and

environmental objectives, while at the same time recognizing that State laws, procedures, and management philosophies differ. EPA also seeks in these regulations to help States rationalize their own regulatory programs by removing or avoiding Federal obstacles to such efforts. These regulations allow greater coordination and cooperation in permit review and issuance between EPA and States with approved RCRA, UIC, NPDES, 404, or PSD programs in instances where a single facility or activity requires permits from both EPA and one or more State agencies.

Although nothing in these regulations would require a State to reorganize its permitting procedures, EPA encourages States to begin or continue efforts toward "one-stop" permitting or other forms of permit program consolidation.

The Agency anticipates a number of benefits to the environment, the regulated community, the general public, and its own institutional efficiency from permits consolidation:

• Environmental Benefits: Consolidation of permit requirements and processing procedures should result in more comprehensive management and control of wastes.

• Regulatory Benefits: More uniform procedures and permit requirements among EPA permit programs should result in more consistency and predictability for the regulated community, and in many instances this should reduce the costs of compliance. Consistent program requirements and a single set of application forms for EPA-issued permits should reduce paperwork and increase efficiency in processing permits.

• Institutional Benefits: The Agency has already experienced greater coordination, sharing of information, and resolution of inconsistencies and overlaps among the various programs during the development of these regulations. This high level of coordination and awareness is expected to continue.

• Public Participation Benefits: Procedures and opportunities for public participation in permit decisions and in State program approvals are more uniform and predictable under these regulations.

• Resource Benefits: Consolidating these permit programs should reduce the resources EPA needs to administer them over the next few years, compared with what the expanding scope of EPA permit programs would otherwise require. Consistent program requirements and use of the consolidated application forms should be particularly helpful in starting up and administering the two new programs (RCRA hazardous waste and UIC) covered by these regulations. If States adopt similar approaches, resource benefits could also be realized at the State level.

### Organization of Final Regulations

The final regulations replace 40 CFR Parts 122, 123, and 124, which were formerly used exclusively for NPDES program regulations. These Parts of the Code of Federal Regulations are being used because they already provide the skeleton for organizing permit regulations, namely:

• PART 122—PERMIT REQUIREMENTS.
• PART 123—STATE PROGRAM REQUIREMENTS.
• PART 124—PROCEDURES FOR DECISIONMAKING.

Parts 122, 123, and 124 have been organized into Subparts. Subpart A of each Part applies to each permit program included in that Part. Subsequent subparts set forth additional program-specific requirements for the individual programs.

Although the Agency has attempted to unify these regulations, statutory and programmatic considerations preclude complete uniformity. Thus, to review the regulations for a particular program, one must read both the general Subpart A plus any applicable program-specific subpart.

### Summary of the Regulations

• Part 122—Establishes definitions and basic permit requirements for EPA administered RCRA, UIC, and NPDES programs. Part 122 also provides certain requirements applicable to State programs, including State 404 programs, but only to the extent Part 123 explicitly refers to Part 122 requirements. Part 122 spells out in detail who must apply for a permit; contents of the applications; what conditions must be incorporated into permits; when permits may be revised, reissued, or terminated; and other requirements.

• Part 123—Establishes the requirements for State programs operated in lieu of EPA, after a program has received the approval of the Administrator. In addition to the RCRA hazardous waste, UIC, and NPDES programs, Part 123 governs State section 404 programs for discharges of dredged or fill material into certain waters of the United States. After receiving the approval of the Administrator a State may issue section 404 permits, in lieu of the United States Army Corps of Engineers, in so-called "Phase II and III" waters (sometimes referred to as traditionally non-navigable waters). In addition, Part 123 contains the procedures for EPA approval, revision, and withdrawal of a State program.

• Part 124—Establishes the procedures to be followed in making permit decisions under the RCRA hazardous waste, UIC, PSD, and NPDES programs. It includes procedures for public participation, for consolidated review and issuance of two or more permits to the same facility or activity, and for appealing permit decisions. Most requirements in Part 124 are only applicable where EPA is the permit-issuing authority. However, Part 123 requires States to comply with some of the Part 124 provisions, such as the basic public participation requirements of permit issuance.

### Technical Requirements

Technical regulations containing requirements and criteria which apply to decisionmaking under the RCRA, UIC, NPDES, 404, and PSD programs have been developed separately from Parts 122–124. These regulations set the standards for the contents of permits issued under these programs and provide some of the technical bases for determining the adequacy of State programs and individual permit decisions.

The coverage and format of the consolidated permit regulations, and the location of the technical regulations which correspond to each program, are summarized in the following chart:

BILLING CODE 6560-01-M

(2) *Subparts.* Parts 122, 123, and 124 are each organized into subparts. Each Part has a general Subpart A which contains requirements that apply to all the programs covered by that Part. Additional subparts supplement these general provisions with requirements which apply to one or more specified programs. In case of any inconsistency between Subpart A and any program-specific subpart, the program-specific subpart is controlling.

(3) Certain requirements set forth in Parts 122 and 124 are made applicable to approved State programs, including State 404 programs, by reference in Part 123. These references are set forth in § 123.7. If a section or paragraph of Parts 122 or 124 is applicable to States, through reference in § 123.7, that fact is signaled by the following words at the end of the section or paragraph heading: *(applicable to State programs, see § 123.7).* If these words are absent, the section (or paragraph) applies only to EPA-administered permits.

(4) The structure and coverage of these regulations by program is indicated in the following chart. A permit applicant or permittee that is interested in finding out about only one of the programs covered by these regulations can use this chart to determine which regulations to read. If a State is the permitting authority, the applicant or permittee should read the State laws and program regulations which implement the requirements of Part 123 for the relevant program.

| Program | Coverage | | |
|---|---|---|---|
| | Part 122 | Part 123 | Part 124 |
| RCRA | Subparts A and B | Subparts A, B, and F | Subparts A, B, E, and F. |
| UIC | Subparts A and C | Subparts A and C | Subparts A and F. |
| NPDES | Subparts A and D | Subparts A and D | Subparts A, D, E, and F. |
| 404 | Subpart A | Subparts A and E | Subpart A. |
| PSD | None | None | Subparts A, C, and F. |

(c) *Relation to other requirements.* (1) *Consolidated permit application forms.* Applicants for EPA-issued RCRA Part A, UIC, NPDES, or PSD permits and persons seeking interim status under RCRA must submit their applications on EPA's consolidated permit application forms when available. (There will be no form for RCRA Part B applications and therefore no EPA application form is used. See § 122.25.) These forms, like these consolidated regulations, contain a general form covering all programs plus several program-specific forms. Although application forms have been consolidated, they, like permits, have been coordinated without losing their separate legal identities. There is no "consolidated permit." Each permit and application under a program is a separate document. Most of the information requested on these application forms (other than Form 5 for PSD) is required by these regulations. The essential information required in the general form (Form 1) is listed in § 122.4. The additional information required for RCRA Part A applications (Form 3) is listed in § 122.24, for UIC applications (Form 4) in § 122.37, and for NPDES applications (Forms 2a–d) in § 122.53. Applicants for State-issued permits must use State forms which must require at a minimum the information listed in these sections. All minimum information requirements for State 404 permit applications appear in § 123.94.

(2) *Technical regulations.* The five permit programs which are covered in these consolidated permit regulations each have separate additional regulations that contain technical requirements for those programs. These separate regulations are used by permit-issuing authorities to determine what requirements must be placed in permits if they are issued. These separate regulations are located as follows:

```
RCRA ...... 40 CFR Parts 260–266.
UIC ........ 40 CFR Part 146.
NPDES ..... 40 CFR Parts 125, 129, 133, 136.
            40 CFR Subchapter N (Parts 400–460).
404 ........ 40 CFR Part 230.
PSD ........ 40 CFR Part 52.
```

(d) *Authority.* The consolidation of these permit programs into one set of regulations is authorized by sections 101(f) and 501(a) of CWA, sections 1006 and 2002 of RCRA, section 1450 of the SDWA, and section 301 of the CAA.

(e) *Public participation.* This rule establishes the requirements for public participation in EPA and State permit issuance, enforcement, and related variance proceedings; and in the approval of State RCRA, UIC, NPDES, and 404 programs. These requirements carry out the purposes of the public participation requirements of 40 CFR Part 25 (Public Participation), and supersede the requirements of that Part as they apply to actions covered under Parts 122, 123, and 124.

(f) *State authorities.* Nothing in Parts 122, 123, or 124 precludes more stringent State regulation of any activity covered by these regulations, whether or not under an approved State program, except as provided for the RCRA program in §.123.33 (requirement that State RCRA programs under final authorization be consistent with the Federal program and other State programs).

§ 122.2 Purpose and scope of Part 122.

(a) *Subpart A* of Part 122 contains definitions (§ 122.3) and basic permitting requirements (§§ 122.4 through 122.19). Definitions are given for the RCRA, UIC, NPDES, and State 404 programs. Definitions for EPA processing of PSD permits are in Part 124, Subpart C. The permitting requirements apply to EPA administered RCRA, UIC, and NPDES programs. (Permit program requirements for the Federal 404 program administered by the Corps of Engineers do not appear in these regulations but are found in 33 CFR Parts 320–327.) In addition, the permitting requirements apply to State-administered RCRA, UIC, NPDES, and 404 programs to the extent specified by cross-reference in § 123.7.

(b) *Subparts B, C, and D* contain additional requirements for RCRA, UIC and NPDES permitting, respectively. They apply to EPA, and to approved States to the extent specified by cross-reference in § 123.7.

§ 122.3 Definitions.

The following definitions apply to Parts 122, 123, and 124, except Part 124 coverage of the PSD program (see § 124.2). Terms not defined in this section have the meaning given by the appropriate Act. When a defined term appears in a definition, the defined term is sometimes placed within quotation marks as an aid to readers. When a definition applies primarily to one or more programs, those programs appear in parentheses after the defined term.

*Acidizing* (UIC) means the injection of acid through the borehole or "well" into a "formation" to increase permeability and porosity by dissolving the acid-soluble portion of the rock constituents.

*Administrator* means the Administrator of the United States Environmental Protection Agency, or an authorized representative.

*Applicable standards and limitations* (NPDES) means all State, interstate, and Federal standards and limitations to which a "discharge" or a related activity is subject under the CWA, including "effluent limitations," water quality standards, standards of performance, toxic effluent standards or prohibitions, "best management practices," and pretreatment standards under sections 301, 302, 303, 304, 306, 307, 308, 403, and 405 of CWA.

*Application* means the EPA standard national forms for applying for a permit, including any additions, revisions or modifications to the forms; or forms approved by EPA for use in "approved States," including any approved

modifications or revisions. For RCRA, application also includes the information required by the Director under § 122.25 (contents of Part B of the RCRA application).

*Appropriate Act and regulations* means the Clean Water Act (CWA); the Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act (RCRA); or Safe Drinking Water Act (SDWA), whichever is applicable; and applicable regulations promulgated under those statutes. In the case of an "approved State program" appropriate Act and regulations includes State program requirements.

*Approved program* or *approved State* means a State or interstate program which has been approved or authorized by EPA under Part 123.

*Aquifer* (RCRA and UIC) means a geological "formation," group of formations, or part of a formation that is capable of yielding a significant amount of water to a well or spring.

*Area of reviw* (UIC) means the area surrounding an "injection well" described according to the criteria set forth in § 146.06.

*Average monthly discharge limitation* (NPDES) means the highest allowable average of "daily discharges" over a calendar month, calculated as the sum of all daily discharges measured during a calendar month divided by the number of daily discharges measured during that month.

*Average weekly discharge limitation* (NPDES) means the highest allowable average of "daily discharges" over a calendar week, calculated as the sum of all daily discharges measured during a calendar week divided by the number of daily discharges measured during that week.

*Best management practices* ("BMPs") (NPDES and 404) means schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of "waters of the United States." For NPDES, BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage. For State 404 programs, BMPs also include methods, measures, practices, or design and performance standards, which facilitate compliance with section 404(b)(1) environmental guidelines [40 CFR Part 230], effluent limitations or prohibitions under section 307(a), and applicable water quality standards.

*BMPs* (NPDES and 404) means "best management practices."

*Closure* (RCRA) means the act of securing a "Hazardous Waste Management facility" pursuant to the requirements of 40 CFR Part 264.

*Contaminant* (UIC) means any physical, chemical, biological, or radiological substance or matter in water.

*Contiguous zone* (NPDES) means the entire zone established by the United States under Article 24 of the Convention on the Territorial Sea and the Contiguous Zone.

*Continuous discharge* (NPDES) means a "discharge" which occurs without interruption throughout the operating hours of the facility, except for infrequent shutdowns for maintenance, process changes, or other similar activities.

*CWA* means the Clean Water Act (formerly referred to as the Federal Water Pollution Control Act or Federal Water Pollution Control Act Amendments of 1972) Pub. L. 92-500, as amended by Pub. L. 95-217 and Pub. L. 95-576; 33 U.S.C. § 1251 et seq.

*Daily discharge* (NPDS) means the "discharge of a pollutant" meansured during a calendar day or any 24-hour period that reasonably represents the calendar day for purposes of sampling. For pollutants with limitations expressed in units of mass, the "daily discharge" is calculated as the total mass of the pollutant discharged over the day. For pollutants with limitations expressed in other units of measurement, the "daily discharge" is calculated as the average measurement of the pollutant over the day.

*Direct discharge* (NPDES) means the "discharge of a pollutant."

*Director* means the Regional Administrator or the State Director, as the context requires, or an authorized representative. When there is no "approved State program," and there is an EPA administered program, "Director" means the Regional Administrator. When there is an approved State program, "Director" normally means the State Director. In some circumstances, however, EPA retains the authority to take certain actions even when there is an approved State program. (For example, when EPA has issued an NPDES permit prior to the approval of a State program, EPA may retain jurisdiction over that permit after program approval; see § 123.71.) In such cases, the term "Director" means the Regional Administrator and not the State Director.

*Discharge* (NPDES) when used without qualification means the "discharge of a pollutant."

*Discharge of a pollutant* (NPDES) means:

(a)(1) Any addition of any "pollutant" or combination of pollutants to "waters of the United States" from any "point source," or

(2) Any addition of any pollutant or combination of pollutants to the waters of the "contiguous zone" or the ocean from any point source other than a vessel or other floating craft which is being used as a means of transportation.

(b) This definition includes additions of pollutants into waters of the United States from: surface runoff which is collected or channelled by man; discharges through pipes, sewers, or other conveyances owned by a State, municipality, or other person which do not lead to a treatment works; and discharges through pipes, sewers, or other conveyances leading into privately owned treatment works.

This term does not include an addition of pollutants by any "indirect discharger."

*Discharge Monitoring Report* ("DMR") (NPDES) means the EPA uniform national form, including any subsequent additions, revisions, or modifications, for the reporting of self-monitoring results by permitees. DMRs must be used by "approved States" as well as by EPA. EPA will supply DMRs to any approved State upon request. The EPA national forms may be modified to substitute the State Agency name, address, logo, and other similar information, as appropriate, in place of EPA's.

*Discharge of dredged material* (404) means any addition from any "point source" of "dredged material" into "waters of the United States." The term includes the addition of dredged material into waters of the United States and the runoff or overflow from a contained land or water dredged material disposal area. Discharges of pollutants into waters of the United States resulting from the subsequent onshore processing of dredged material are not included within this term and are subject to the NPDES program even though the extraction and deposit of such material may also require a permit from the Corps of Engineers or the State section 404 program.

*Discharge of fill material* (404) means the addition from any "point source" of "fill material" into "waters of the United States." The term includes the following activities in waters of the United States: placement of fill that is necessary for the construction of any structure; the building of any structure or impoundment requiring rock, sand, dirt, or other materials for its construction; site-development fills for recreational, industrial, commercial, residential, and other uses; causeways or road fills; dams and dikes; artificial islands; property protection and/or reclamation

devices such as riprap, groins, seawalls, breakwaters, and revetments; beach nourishment; levees; fill for structures such as sewage treatment facilities, intake and outfall pipes associated with power plants and subaqueous utility lines; and artificial reefs.

*Disposal* (RCRA) means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any "hazardous waste" into or on any land or water so that such hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground water.

*Disposal facility* (RCRA) means a facility or part of a facility at which "hazardous waste" is intentionally placed into or on the land or water, and at which hazardous waste will remain after closure.

*Disposal site* (404) means that portion of the "waters of the United States" enclosed within fixed boundaries consisting of a bottom surface area and any overlaying volume of water. In the case of "wetland" on which water is not present, the disposal site consists of the wetland surface area. Fixed boundaries may consist of fixed geographic point(s) and associated dimensions, or of a discharge point and specific associated dimensions.

*DMR* (NPDES) means "Discharge Monitoring Report."

*Draft permit* means a document prepared under § 124.6 indicating the Director's tentative decision to issue or deny, modify, revoke and reissue, terminate, or reissue a "permit." A notice of intent to terminate a permit, and a notice of intent to deny a permit, as discussed in § 124.5, are types of "draft permits." A denial of a request for modification, revocation and reissuance, or termination, as discussed in § 124.5, is not a "draft permit." A "proposed permit" is not a "draft permit."

*Drilling mud* (UIC) means a heavy suspension used in drilling an "injection well," introduced down the drill pipe and through the drill bit.

*Dredged material* (404) means material that is excavated or dredged from "waters of the United States."

*Effluent limitation* (NPDES) means any restriction imposed by the Director on quantities, discharge rates, and concentrations of "pollutants" which are "discharged" from "point sources" into "waters of the United States," the waters of the "contiguous zone," or the ocean.

*Effluent limitations guidelines* (NPDES) means a regulation published by the Administrator under section 304(b) of CWA to adopt or revise "effluent limitations."

*Effluents* (404) means "dredged material" or "fill material," including return flow from confined sites.

*Emergency permit* means a RCRA, UIC, or State 404 "permit" issued in accordance with §§ 122.27, 122.40 or 123.96, respectively.

*Environmental Protection Agency* ("EPA") means the United States Environmental Protection Agency.

*EPA* means the United States "Environmental Protection Agency."

*Exempted aquifer* (UIC) means an "aquifer" or its portion that meets the criteria in the definition of "underground source of drinking water" but which has been exempted according to the procedures in § 122.35(b).

*Existing HWM facility* (RCRA) means a facility which was in operation or for which construction had commenced, on or before October 21, 1976. Construction had commenced if:

(a) The owner or operator had obtained all necessary Federal, State, and local preconstruction approvals or permits; and

(b)(1) A continuous physical, on-site construction program had begun, or

(2) The owner or operator had entered into contractual obligations—which cannot be cancelled or modified without substantial loss—for construction of the facility to be completed within a reasonable time.

[Note.—This definition reflects the literal language of the statute. However, EPA believes that amendments to RCRA now in conference will shortly be enacted and will change the date for determining when a facility is an "existing facility" to one no earlier than May of 1980; indications are that the conferees are considering October 30, 1980. Accordingly, EPA encourages every owner or operator of a facility which was built or under physical construction as of the promulgation date of these regulations to file Part A of its permit application so that it can be quickly processed for interim status when the change in the law takes effect. When those amendments are enacted, EPA will amend this definition.]

*Existing injection well* (UIC) means an "injection well" other than a "new injection well."

*Facility or activity* means any "HWM facility," UIC "injection well," NPDES "point source," or State 404 dredge or fill activity, or any other facility or activity (including land or appurtenances thereto) that is subject to regulation under the RCRA, UIC, NPDES, or 404 programs.

*Fill material* (404) means any "pollutant" which replaces portions of the "waters of the United States" with dry land or which changes the bottom elevation of a water body for any purpose.

*Final authorization* (RCRA) means approval by EPA of a State program which has met the requirements of § 3006(b) of RCRA and the applicable requirements of Part 123, Subparts A and B.

*Fluid* (UIC) means any material or substance which flows or moves whether in a semisolid, liquid, sludge, gas, or any other form or state.

*Formation* (UIC) means a body of rock characterized by a degree of lithologic homogeneity which is prevailingly, but not necessarily, tabular and is mappable on the earth's surface or traceable in the subsurface.

*Formation fluid* (UIC) means "fluid" present in a "formation" under natural conditions as opposed to introduced fluids, such as "drilling mud."

*General permit* (NPDES and 404) means an NPDES or 404 "permit" authorizing a category of discharges under the CWA within a geographical area. For NPDES, a general permit means a permit issued under § 122.59. For 404, a general permit means a permit issued under § 123.95.

*Generator* (RCRA) means any person, by site location, whose act or process produces "hazardous waste" identified or listed in 40 CFR Part 261.

*Ground water* (RCRA and UIC) means water below the land surface in a zone of saturation.

*Hazardous substance* (NPDES) means any substance designated under 40 CFR Part 116 pursuant to section 311 of CWA.

*Hazardous waste* (RCRA and UIC) means a hazardous waste as defined in 40 CFR § 261.3.

*Hazardous Waste Management facility* ("HWM facility") means all contiguous land, and structures, other appurtenances, and improvements on the land, used for treating, storing, or disposing of "hazardous waste." A facility may consist of several "treatment," "storage," or "disposal" operational units (for example, one or more landfills, surface impoundments, or combinations of them).

*HWM facility* (RCRA) means "Hazardous Waste Management facility."

*Indirect discharger* (NPDES) means a nondomestic discharger introducing "pollutants" to a "publicly owned treatment works."

*Injection well* (RCRA and UIC) means a "well" into which "fluids" are being injected.

*Injection zone* (UIC) means a geological "formation," group of formations, or part of a formation receiving fluids through a "well."