

**DEPARTMENT OF THE ARMY**
U.S. ARMY ENGINEER DISTRICT, ALASKA
P.O. BOX 898
ANCHORAGE, ALASKA 99506-0898

REPLY TO
ATTENTION OF:

CENPA-OC (27)                                          14 April 1992

MEMORANDUM THRU   Commander, North Pacific Division,
                  ATTN:  CENPD-DE

FOR   CENPD-OC, ATTN:  Cecil Reinke

SUBJECT:  Agency Jurisdiction Over Certain Activities Connected
with Mineral Extraction, Specifically Gold Mining, in Alaska


1.  The Alaska District seeks to elevate to the Washington level
a long-standing dispute with the Environmental Protection Agency
(EPA), concerning agency jurisdiction over certain activities
connected with mineral extraction, specifically gold mining, in
Alaska.  The argument, essentially, is whether the EPA has
jurisdiction over the discharge of tailings (a waste product of
the mining process) into waters of the United States, and if not,
whether EPA can legitimately insist that the Corps of Engineers
(Corps) apply the 404(b)(1) Guidelines to the disposal of those
tailings.  The need to resolve this dispute has become apparent
most recently in the context of processing a permit application
for the re-opening of a gold mine near Juneau.

2.  On 17 July 1991, Becky Ransom of CENPD-OC and Toni London of
CENPA-OC met with Adrienne Allen of the EPA's Regional Counsel's
Office for Region X.  The meeting took place in EPA's Regional
Counsel's Office in Seattle, Washington.  The purpose of the
meeting was to attempt to resolve a difference of opinion between
the Corps and the EPA over which agency has jurisdiction over
various aspects of the proposed A-J mine in Juneau.

3.  The portion of the proposed project which is the source of
the disagreement is the tailings disposal portion.  The applicant
proposes to construct a 350-foot tall dam across Sheep Creek
behind which some 84 million cubic yards of tailings will be
discharged.  The EPA has already precluded the environmentally
preferred alternative for tailings disposal, which was disposal
into marine waters, by stating that EPA would not and could not
issue a permit for marine disposal.  The applicant's proposal,
though not the least environmentally damaging alternative, has
thus become the preferred alternative.  Disposal of the mine
tailings behind the tailings dam will result in a discharge into
Sheep Creek and several acres of wetland.  The Corps has taken
the position that the dam itself and some fill for supporting
facilities is under Corps jurisdiction and requires Corps
authorization.  The tailings behind the dam, however, are a waste
product of the mining operation and are not under our

CENPA-OC                                        14 April 1992
SUBJECT:   Agency Jurisdiction Over Certain Activities Connected
with Mineral Extraction, Specifically Gold Mining, in Alaska


jurisdiction according to the 1986 Memorandum of Agreement with
EPA and our own regulations [33 C.F.R. 323.2(e)].  The water
impounded by the tailings dam continues to be waters of the
United States under the Corps' regulations [33 C.F.R.
328.3(a)(4)].  The EPA, on the other hand, insists that the
impounded waters become a waste treatment system under their
regulations [40 C.F.R. 122.2(g)], and that the tailings discharge
does not require a 402 permit.  They also contend that such a
permit, were it required, would have to be denied under the same
regulation that precluded marine disposal of the tailings.

4.   In the opinion of the District's Office of Counsel, the
impoundment is not a waste treatment system.  The draft
environmental impact statement prepared primarily by the Bureau
of Land Management as the lead agency, consistently refers to the
purpose of the impoundment as being for tailings disposal.
Nowhere, is it called a treatment facility.  Yet EPA is adamant
that it is a treatment facility and that the applicant proposed
to create the impoundment because EPA requires a settling pond
treatment and total recycling of waste water as the best
available technology for mining operations.  The EPA has, in
similar situations, stated that the impounded waters continue to
be waters of the United States.  It is unclear how the A-J mine
situation differs or how EPA draws the distinction as to whether
these impoundments continue to be waters of the United States.

5.   The problem arises because the EPA has made it clear that,
even though they refuse to require a permit for the tailings
disposal, and even though they recognize that the disposal does
not fall under the Corps' regulatory authority, they will insist
that the Corps apply the 404(b)(1) Guidelines to the tailings
disposal, and not just the dam itself.  This does not seem to be
consistent with EPA's assertion that the impoundment is no longer
waters of the United States.  Furthermore, if the Corps is
required to apply the Guidelines to the tailings disposal, it is
more likely that the disposal will not meet the requirements of
the Guidelines.

6.   The proposed A-J mine project is extremely controversial.  It
is very likely that the Government will be sued by the
environmental organizations if the requisite permits are issued.
If the Corps denies the 404 permit the applicant will likely sue
because denial of the 404 permit will preclude re-opening of the
mine.  Our Office of Counsel advises that it is in the

2

CENPA-OC                                              14 April 1992
SUBJECT:    Agency Jurisdiction Over Certain Activities Connected
with Mineral Extraction, Specifically Gold Mining, in Alaska


Government's best interest to resolve this issue before a permit
decision is made.

7.    The Alaska District requests that the question be referred to
the Washington level for resolution as the District and Region X
have been unsuccessful in our efforts to come to an agreement and
there are national policy implications involved.    At least one
more mining project with identical circumstances is presently on
the drawing board and it is unlikely that it will be the last.

8.    Please advise as to how to proceed on projects involving this
issue.


JOHN W. PIERCE
Colonel, CE
Commanding


3

**Exhibit 24, page 3 of 3**