

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY
WASHINGTON, D.C. 20460

OCT 2 1992

OFFICE OF
WATER

MEMORANDUM

SUBJECT: Clean Water Act Regulation of Mine Tailings Disposal

FROM: LaJuana S. Wilcher
       Assistant Administrator

TO: Charles E. Findley, Director
    Water Division, Region X

Thank you for your memorandum dated April 24, 1992, seeking Headquarters assistance in resolving a disagreement between the Region and the U.S. Army Corps of Engineers (Corps) North Pacific Division regarding Clean Water Act permits for two mining projects in Alaska. More specifically, the Region and the Division disagree over the roles of Sections 402 and 404 in regulating the disposal/treatment of mine tailings in waste treatment systems created in waters of the United States.

Wetlands Division staff have discussed this matter with John Studt, Chief of the Regulatory Branch at Corps Headquarters. As explained below, we have reached agreement with Mr. Studt on the appropriate permitting approach for the A-J Mine and Kensington Mine proposed projects, and he will be notifying the North Pacific Division of Corps Headquarters' position on this issue shortly. In resolving this matter, the Wetlands Division has also coordinated with the Office of General Counsel and the Permits Division of the Office of Wastewater Enforcement and Compliance (OWEC).

It is our understanding that the Alaska District has two pending Section 404 applications for the A-J Mine and the Kensington projects, respectively. The companies are seeking Section 404 permits to discharge fill material in waters of the United States in order to create basins for the disposal and treatment of mine tailings. All the parties agree that the mining companies need a Section 404 permit for the discharge of fill material to create the basins themselves, and that a Section 402 permit is needed for any discharges flowing out of the basins following treatment. The point of disagreement between the

Printed on Recycled Paper

EXHIBIT E
Page 1 of 3

Region and the Division has been whether the Corps as part of the Section 404 permit review process, or EPA as part of the Section 402 permit review process, should consider the effect of disposing of the tailings in the basins.

Corps Headquarters agrees with our view that the particular basin created by the discharge of fill material contemplated as part of the A-J and Kensington Mine projects, if permitted by the Corps under Section 404 for purposes of creating a waste treatment system, would no longer be waters of the U.S. (see 33 CFR Section 328.3(a) and 40 CFR Sections 122.2, 230.3(s), and 232.2(q)). Consequently, there is no need for a Section 402 or an additional Section 404 permit to discharge the tailings into the system. However, as part of the Section 404(b)(1) Guidelines analysis required for the discharge of fill material associated with the construction of the facility, the Corps will consider the loss of aquatic values resulting from construction of the facility, including the physical impacts of the discharge of mine tailings into the facility. In addition, the Corps would require that a liner be placed in the disposal/treatment facility, if EPA recommends such liner to protect water quality. The Corps will defer to EPA enforcement of Section 404 permit conditions relating to effectiveness of a liner and to all other aspects of the use (i.e., disposal operations) of the facility.

Certainly, as the Region has previously indicated to the Division, EPA will take the lead in analyzing the waste treatment issues raised by the A-J and Kensington Mines Section 404 permit applications. EPA will provide technical advice on water quality issues and the identification of mitigation measures needed to offset the loss of wetland functions associated with the disposal/treatment area. EPA will also assist in the Corps' Section 404(b)(1) Guidelines evaluation, which would include an analysis of secondary impacts of the construction of the basins, recognizing their intended use.

Consistent with enforcement discretion, the Corps may enforce those Section 404 permit conditions associated with the construction of the disposal/treatment facility and resulting physical impacts. On the other hand, consistent with enforcement discretion and the 1989 Memorandum of Agreement on Section 404 Enforcement, EPA may enforce those Section 404 permit conditions relating to water quality impacts associated with the operation/use of the facility (e.g., whether a liner is needed and whether the liner is effectively protecting water quality).

We are pleased that EPA and Corps Headquarters are in agreement that, for purposes of the A-J Mine and Kensington proposals, it is appropriate for the Corps to consider the loss of aquatic values associated with the tailings disposal as part of the Section 404 permit review process and will require a liner for the disposal/treatment facility, if recommended by EPA, to protect water quality. However, this issue is raised by the two pending Section 404 permit applications and I assume by other

proposed mining projects. Therefore, I believe it is appropriate for the Office of Wetlands, Oceans, and Watersheds and OWEC to work with Corps Headquarters to develop more specific parameters for dealing with the questions likely to be raised by Section 404 permit review of applications to discharge fill material to waters of the U.S. for purposes of creating waste treatment systems. Certainly, there will be close coordination with the Region as part of this effort.

I apologize for our delay in responding to your memorandum. If you have any additional questions or any further problems regarding this issue, please contact me or have your staff call John Meagher at (202) 260-7791.

cc:　Susan Lepow, OGC
　　　John Studt, Corps of Engineers