DAVID W. MÁRQUEZ, Attorney General
CAMERON M. LEONARD, Assistant Attorney General
RUTH HAMILTON HEESE, Assistant Attorney General
State of Alaska, Department of Law
P.O. Box 110300
Telephone: (907) 451-2811
           or (907) 465-3600
Facsimile: (907) 465-6735
Juneau, Alaska 99811-0300

ATTORNEYS FOR INTERVENOR DEFENDANT STATE OF ALASKA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

SOUTHEAST ALASKA CONSERVATION )
COUNCIL, *et al.*,              )
                                )
           Plaintiffs,          )
                                )
    v.                          )
                                )
UNITED STATES ARMY CORPS OF     )
ENGINEERS, *et al.*,            )   Case No. J05-0012 CV (JKS)
                                )
           Defendants,          )
                                )
    v.                          )
                                )
COUER ALASKA, INC., *et al.*,   )
                                )
           Intervenor Defendants.)
_____)

**DECLARATION OF EDMUND J. FOGELS
IN SUPPORT OF STATE OF ALASKA'S
OPPOSITION TO PLAINTIFF'S OPENING BRIEF FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Pursuant to 28 U.S.C. § 1746, I, Edmund J. Fogels, do declare as follows:

1. I am the Acting Deputy Commissioner of the Alaska Department of Natural Resources ("the Department"), and I have served as Acting Deputy Commissioner for this Department since October, 2005. Before that time, beginning November, 2002, I was the Department's Large Mine Project Coordinator, with the responsibility to coordinate state permitting of large mines in Alaska.

2. I am familiar with the permitting and on-going operations of all major mines in this state, and I am also generally familiar with the permitting of any mine that has come into production since the beginning of my tenure with the Department, in 1986.

3. The Alaska Legislature has designated the Department as the lead agency for "all matters relating to the exploration, development, and management of mining," and has directed the Department to "coordinate all regulatory matters concerning mineral resource exploration, development, mining, and associated activities." See AS 27.05.010.

4. In practice, the Department coordinates the permitting responsibilities of all state agencies that may be involved in the permitting and authorization of mines in this state, and also attempts to coordinate the regulatory involvement of federal and municipal entities to the extent possible. The Department assigns project leaders for each major mine project, and those designated project leaders typically coordinate through meetings and other forms of correspondence the interaction of the state agencies involved.

SEACC v. Army COE
J05-0012 CV
I:\CVFNR\LEONARDO\SEACC v. Army COE\our filings\Fogels Decl #2.doc

Declaration of Edmund Fogels
Page 2 of 6

EXHIBIT F
Page 2 of 7

5. I am familiar with the permitting of the Kensington Mine project by state and federal agencies (including the U.S. Army Corps of Engineers ("Corps") and Environmental Protection Agency ("EPA")), as I was the Department's Project Leader for this project. I was responsible for coordinating all State agency permitting activities for this project. I was also responsible for ensuring State participation in the development of the Environmental Impact Statement for the project. I have personally participated in dozens of meetings and telephone conferences regarding the Kensington Mine project over the last few years.

6. The central issue raised in this lawsuit by Plaintiff Southeast Alaska Conservation Council and its co-plaintiffs (hereinafter collectively "SEACC") is whether the tailings disposal facility permitted for the Kensington Mine project complies with the Clean Water Act (CWA). SEACC essentially argues that the type of permitting that occurred in the context of the Kensington Mine Project has never been done for other mining projects, and the core of SEACC's argument is that new source performance standards, in this case the effluent limits for gold mills that use froth flotation process (40 C.F.R. 440.104), must apply to tailings as they are discharged at the tailings disposal site. SEACC's core premise is contradicted by the historical permitting of other mines in Alaska.

7. When a mine is developed, one of the key considerations for state and federal regulators is a determination of where the resulting mine tailings will be disposed. While some tailings may be backfilled into the mine itself, more often

SEACC v. Army COE
J05-0012 CV
I:\CVFNR\LEONARDC\SEACC v. Army COE\our filings\Fogels Decl #2.doc

Declaration of Edmund Fogels
Page 3 of 6

EXHIBIT F
Page 3 of 7

than not tailings must be transported to another location near the project site, at either a dry stack or subaqueous tailings disposal site, such as the Kensington tailings storage facility at Lower Slate Lake. These disposal sites are facilities that are developed to treat, manage and store tailings, usually on a permanent basis. (*See* attached Exhibit 1, which appears at Appendix C, page C-8, Figure 1.1, in Volume 2 of the Final Supplemental Impact Statement for the Kensington Gold Project.) The tailings placed at these sites have not been subjected to the federal effluent limits for the ore mining subcategory, cited above, ¶ 6. However, any wastewater associated with the tailings that may eventually discharge from the disposal site into downstream receiving waters -- in this case, the East Fork of Slate Creek -- <u>are</u> subject to the effluent limits, which are imposed through the CWA Section 402 permit (commonly referred to as an NPDES permit) issued by EPA.

8. There are many examples of mining projects in Alaska where tailings disposed of at designated locations -- impounded waters, former wetlands or uplands -- are not subject to the effluent limits set out in 40 C.F.R. 440.104. Several such examples are briefly summarized in the following paragraphs.

9. The tailings from the Red Dog Mine, a large zinc and lead mine in northwest Alaska, are disposed of in an impoundment constructed in the South Fork of Red Dog Creek. Wastewater from the impoundment is treated on a seasonal basis and discharged, under an NPDES permit, to Middle Fork Red Dog Creek below the tailings impoundment.

*SEACC v. Army COE*
J05-0012 CV
I:\CVFNR\LEONARDO\SEACC v. Army COE\our filings\Fogels Decl #2.doc

*Declaration of Edmund Fogels*
Page 4 of 6

EXHIBIT F
Page 4 of 7

10. At the Pogo Mine project, tailings are disposed of at a dry stack facility located in the Liese Creek drainage near the mill. Any seepage from the dry stack is collected, treated, and eventually discharged, under an NPDES permit, to the Goodpaster River below the mine.

11. At the Greens Creek Mine project, tailings are disposed of at a dry stack facility adjacent to Hawk Inlet. Any seepage from the dry stack is collected, treated, and eventually discharged, under an NPDES permit, through an ocean outfall to Hawk Inlet.

12. For the Fort Knox and True North mine complex, tailings are impounded in a pond at a tailings storage facility located in the Fish Creek drainage near the mill. All seepage from the tailings storage facility is collected and recycled so there is no discharge from the facility (and hence no need for an NPDES permit).

13. The disposal of tailings into the designated tailings facilities at all of the mines described above, just as at Kensington, are not subject to the effluent limits in 40 C.F.R. 440.104. Instead, the discharge of mine-related wastewaters _from_ these tailings disposal sites _are_ subject to NPDES permitting requirements, and hence to the federal effluent guidelines, only at that point where, and if, the wastewaters, including some process waters, discharge from the disposal site into a down-stream receiving water. The Section 402 permitting regime for the Kensington Mine TSF is no different.

14. Thus, for many years tailings disposal at treatment and storage facilities in Alaska have not been subject to the effluent limits such as those found in 40

SEACC v. Army COE
J05-0012 CV
I:\CVFNR\LEONARDC\SEACC v. Army COE\our filings\Fogels Decl #2.doc

Declaration of Edmund Fogels
Page 5 of 6

EXHIBIT F
Page 5 of 7

C.F.R. 440.104. Further, I am aware of no example where the effluent limits in 40 C.F.R. 440.14 have been applied to the disposal of tailings into a constructed treatment and storage facility.

15. SEACC's argument that the EPA and Corps' 2002 rulemaking regarding the definition of "fill material" and "discharge of fill material," as well as the May 17, 2004 "Regas memo," made some dramatic change in how the federal and state agencies permitted tailings disposal is simply not supported by the history of mine permitting that I have described above. In my view, that rule-making and implementing memorandum simply brought greater clarity, simplicity and consistency to the established state and federal permitting approach for mine tailings disposal.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 27, 2006, at Anchorage, Alaska.

Edmund J. Fogels
Acting Deputy Commissioner
Alaska Department of Natural Resources

SEACC v. Army COE
J05-0012 CV
I:\CVFNR\LEONARDC\SEACC v. Army COE\our filings\Fogels Decl #2.doc

*Declaration of Edmund Fogels*
Page 6 of 6

EXHIBIT F
Page 6 of 7



Figure 1.1   Final Extent of TSF and Dam Construction

EXHIBIT F
Page 7 of 7