# STATE OF ALASKA

**DEPARTMENT OF ENVIRONMENTAL CONSERVATION**
**DIVISION OF WATER**
Water Non-Point Source Pollution Control Program

Frank H. Murkowski, Governor
555 Cordova Street
Anchorage, AK 99501-2617
Phone: (907) 269-6281
Fax: (907) 269-7508
TTY: (907) 269-7511
http://www.state.ak.us/dec/

May 6, 2005

Rick Richins
RTR Resource Management, Incorporated
1109 W. Main Street
Boise, Idaho 83702

Certified Receipt Number #7004 1160 0004 2848 6168
Return Receipt Requested

Subject: Lynn Canal 31 M, Kensington Mine
Reference No. POA-1990-592-M
State I.D. No. AK 0406-13J

Dear Mr. Richins:

In accordance with Section 401 of the Federal Clean Water Act of 1977 and provisions of the Alaska Water Quality Standards, the Department of Environmental Conservation is issuing the enclosed Certificate of Reasonable Assurance for the proposed development of new mine facilities and associated infrastructure within state waters and wetlands, 45 miles northwest of Juneau, Alaska.

Since this certification also serves as a waste management and disposal authorization, it expires on May 5, 2010.

Department of Environmental Conservation regulations provide that any person who disagrees with this decision may request an adjudicatory hearing in accordance with 18 AAC 15.195 – 18 AAC 15.340 or an informal review by the Division Director in accordance with 18 AAC 15.185. Informal review requests must be delivered to the Director, Division of Water, 410 Willoughby Ave., Juneau 99801, within 15 days after receiving this certification. Adjudicatory hearing requests must be delivered to the Commissioner of the Department of Environmental Conservation, 410 Willoughby Avenue, Suite 303, Juneau, Alaska 99801, within 30 days after the date of this certification. If a hearing is not requested within 30 days, the right to appeal is waived.

By copy of this letter we are advising the U.S. Army Corps of Engineers and the state Office of Project Management and Permitting of our actions and enclosing a copy of the certification for their use.

Sincerely,

**SIGNATURE ON FILE**
Ron Klein
Program Manager

Enclosure
CC: (with encl.)
   John Leeds, COE Juneau
   Pete McGee, ADEC Fairbanks
   People who commented

EPA, AK Operations
F&WS
DNR/OPMP Juneau

000111

Exhibit 17, page 1

# STATE OF ALASKA
# DEPARTMENT OF ENVIRONMENTAL CONSERVATION
# CERTIFICATE OF REASONABLE ASSURANCE

A Certificate of Reasonable Assurance, in accordance with Section 401 of the federal Clean Water Act and the Alaska Water Quality Standards, is issued to Coeur Alaska, Incorporated, 3031 Clinton Drive, Suite 202, Juneau, Alaska 99801, for the proposed placement of fill into approximately 61.7 acres of wetlands and waters, in the development of mining facilities and associated infrastructure. The purpose of this filling is to relocate the major mine components from the Kensington Mine in the vicinity of Comet Beach on Lynn Canal to the Jualin Mine (2 miles to the southeast) in the vicinity of Slate Cove. This is necessary in order to access the ore body from the Jualin side of the peninsula. This certificate also substitutes for, and serves as, a state integrated waste management and disposal authorization under 18 AAC 60.200(b) and AS 46.03.100(d). The department will enforce the terms and conditions of this certification in the same way that it would require compliance with a permit issued under 18 AAC 60 or 18 AAC 72 for the same activity.

The Tailing Disposal Facility (TDF) proposed to be constructed in Slate Creek will be considered a "disposal site" under federal law and policy (see 40 CFR § 230.3(i)), and is hereby authorized as a "treatment work" under state law (see AS 46.03.900(33)). Thus, State of Alaska water quality standards will not have to be met within that area. 18 AAC 70.010(c). Water discharged from the TDF shall meet NPDES permit limitations, and the receiving water, East Fork Slate Creek, must meet state water quality standards.

Proposed facilities requiring said fill placement are listed in Table 1.

The proposed activity is located within Section 1, T36S, R61E; and Sections 10, 14, 15, 23, 24, 25, and 36, T35S, R61E, Copper River Meridian, on the west side of Berners Bay in the vicinity of Slate Creek Cove, 45 air miles northwest of Juneau, Alaska.

Public notice of the application for this certification was given as required by 18 AAC 15.180.

Water Quality Certification is required under Section 401 because the proposed activity will be authorized by a Corps of Engineers permit, reference number POA-1990-592-M, and a discharge may result from the proposed activity.

000113

Table 1 - Kensington Gold Project Facility Acres

| Area | Facility Description | Status | Acres of Waters of the U.S.** | Fill Volume*** | Mechanical Land Clearing (acres) |
|---|---|---|---|---|---|
| 1 | Kensington Comet Beach Camp | Existing/Permitted | 0 | 0 | 0 |
| 2 | Kensington Road | Permitted | (0.9) | 0 | 0 |
| 3 | Kensington Borrow Source | Proposed Expansion | (0.3) | 0 | 0.3 |
| 4 | Kensington Development Rock Storage | Existing/Permitted | (5.1) | (500,000) | 0 |
| 5 | Kensington Water Treatment Plant/Ponds | Existing/Permitted | (2.6) | (20,000) | 0 |
| 6 | Kensington Topsoil Stockpile Area | Permitted | (2.1) | (30,000) | 2.1 |
| 7 | Kensington 2050 Waste Rock Dump | Existing | 0 | 0 | 0 |
| 8 | Jualin Process Area | Proposed | 1.1 | 21,000 | 1.1 |
| 9***** | Jualin Development Rock Storage | Proposed | 4.3 | 100,000 | 4.3 |
| 10 | Jualin Process Area Treatment Pond | Proposed | 0 | (20,000) | 0 |
| 11 | Jualin Process Area-Topsoil Stockpile | Proposed | 0 | (10,000) | 0.3 |
| 12 | Jualin Pumphouse Area | Proposed | 0.1 | 0 | 0.1 |
| 13 | Jualin Access Road | Proposed Expansion | 8.2 | 26,000 | 8.2 |
| 14 | Jualin Laydown Area #1 | Existing | (0.4) | (4,800) | 0 |
| 15 | Jualin Laydown Area #2 | Proposed | (3.5) | 0 | 3.5 |
| 16 | Jualin Laydown Area #3 | Existing | (0.8) | 0 | 0 |
| 17 | Jualin Administration Area | Existing | (2.5) | (32,000) | 0 |
| 18 | Jualin Borrow Source #1 | Proposed Expansion | 0 | 0 | 0 |
| 19 | Jualin Borrow Source #2 | Proposed Expansion | (0.1) | 0 | 0.1 |
| 20 | Jualin Borrow Source #3 | Proposed Expansion | (2.4) | 0 | 2.4 |
| 21 | Jualin Borrow Source #4 | Proposed | (0.7) | 0 | 0.7 |
| 22 | Tailings Facility Access Road & Pipeline | Proposed | 4.7 | 20,000 | 4.7 |
| 23 | Tailings Facility Access Road | Proposed | 0.3 | 2,000 | 0.3 |
| 24 | Tailings Lake (tailings as fill) | Proposed | 23.5 | 3,168,000 | 23.5 |
| 25 | Tailings Lake Margin Working Area | Proposed | 8.25 | 450 | 8.25 |
| 25a | Tailings Lake Water Treatment Plant | Proposed | 0.24 | 1000 | 0.24 |
| 25b | Tailings Lake Diversion Pipe Intake Dam | Proposed | 0.01 | 25 | 0 |
| 26 | Tailings Dam Borrow Source | Proposed | (0.3) | 0 | 0.3 |
| 27 | Tailings Pipeline and Access Road | Proposed | 3.0 | 15,000 | 3.0 |
| 28 | Tailings Dam and Plunge Pool Area | Proposed | 5.9 | 120,000 | 0 |
| 29 | Slate Creek Cove Marine Terminal | Proposed | 1.9 | 10,475 | 1.9 |
| 30 | Slate Creek Cove Topsoil Stockpile | Proposed | 0.2 | 4,000 | 0.2 |
| | TOTALS | | 61.7 | 3,497,950 | 65.49 |

**Areas in parentheses are existing, permitted, or have no fill associated with the disturbance to wetlands
***Fill volumes in parentheses are existing or have been previously permitted
****Of the proposed facilities in this amendment, this is the only facility which will not be reclaimed as wetlands

Exhibit 17, page 3

Having reviewed the application and comments received in response to the public notice, the Alaska Department of Environmental Conservation certifies that there is reasonable assurance that the proposed activity, as well as any discharge which may result, will comply with applicable provisions of Section 401 of the Clean Water Act and the Alaska Water Quality Standards, 18 AAC 70, provided that the following conditions are adhered to.

1. The permittee shall submit mine operations, water quality monitoring, and closure plans to the department for its approval before introducing any discharge into the TDF and shall secure department approval for any modification to approved plans.
2. During construction of the tailings dam the construction area shall be isolated from the flowing waters. Techniques such as stream diversion, dam and pump, or stream fluming shall be incorporated into the construction activity to insure that silt laden water resulting from construction activities is not carried downstream and to marine waters.
3. All soil disturbing construction operations that would increase turbidity of surface waters to levels that would violate Alaska Water Quality Standards shall be temporarily suspended if on site monitoring demonstrates said violations.
4. For culverts which carry waters that are discharging or will discharge into fish-bearing fresh waters or marine waters, installation shall not occur within the flowing waters of the stream/drainage. Culvert installation techniques such as stream diversion, dam and pump, or stream fluming shall be incorporated into the installation activity to insure that silt laden water is not carried into sensitive fish habitat. DNR Habitat permits shall address the anadromous fish-bearing streams.
5. Any disturbance in the stream banks or streambed areas shall be stabilized to prevent erosion and resultant sedimentation of the water body during and after operations. Any disturbed areas shall be re-contoured and revegetated as soon as practicable.
6. During the construction and operational phases, spill response equipment and supplies shall be available on site for the cleanup and containment of petroleum product leaks or spills.
7. The wooden portions of the terminal docking shall not be treated with a preservative containing pentachlorophenol and if treated with creosote, the creosote shall be applied via pressure treatment that inhibits leaching at a rate that causes a sheen to form on the water.
8. The mine tailings shall be tested on a quarterly basis, in accordance with a monitoring plan approved by the department, to insure there are no significant deviations from the original tailings analysis which may affect monitoring, closure requirements, water quality, or any other permit condition. Constituent levels that shall be measured include, but are not limited to, aluminum, ammonia, arsenic, cadmium, chromium, copper, iron, lead, mercury, nickel, nitrate, pH, selenium, silver, sulfate, total dissolved solids (TDS), zinc, meteoric water mobility, and acid base accounting. These analyses shall be included in the annual report to the U.S. Forest Service for all agencies to review.
9. Untreated runoff from the topsoil stock pile shall not be allowed to reach any natural body of water.
10. Construction of the infiltration gallery shall be isolated from the flowing waters of the stream.
11. Intertidal fill placed for the marine terminal shall be clean of organics. Fill shall be placed during low tide in those intertidal areas which are dry during low tide.

000114

Exhibit 17, page 4

12. The appropriate water quality protection BMPs shall be utilized during the proposed timber harvest around Lower Slate Lake, to protect the waters of the lake, stream, and ocean.
13. Bridge abutment construction shall be isolated from the flowing waters of the stream.
14. Coeur Alaska, Inc., shall provide proof of financial responsibility in an amount and in form[s] acceptable to the Department, in accordance with AS 46.03.100(f) and 18 AAC 60.265. If the financial assurances provided to other state and federal agencies are not sufficient to satisfy the Department's requirements, Coeur Alaska, Inc. will provide any additional financial assurances determined by the Department to be necessary.
15. Capping of the tailings, addition of organics, or other state approved mitigation measures will be required at or after mine closure if water quality criteria are not met in the impoundment, or if the tailings do not successfully re-colonize as determined by the state.

May 6, 2005
Date

SIGNATURE ON FILE

Ron Klein
Program Manager

# STATE OF ALASKA

FRANK H. MURKOWSKI, GOVERNOR

**DEPARTMENT OF NATURAL RESOURCES**
OFFICE OF PROJECT MANAGEMENT/PERMITTING
ALASKA COASTAL MANAGEMENT PROGRAM

☐ SOUTHCENTRAL REGIONAL OFFICE
550 W 7th AVENUE SUITE 1660
ANCHORAGE, ALASKA 99501
PH: (907) 269-7470 FAX: (907) 269-3891

☒ CENTRAL OFFICE
302 GOLD STREET, SUITE 202
JUNEAU, ALASKA 99801-0030
PH: (907) 465-3562 FAX: (907) 465-3075

☐ PIPELINE COORDINATOR'S OFFICE
411 WEST 4th AVENUE SUITE 2C
ANCHORAGE, ALASKA 99501
PH: (907) 257-1351 FAX: (907) 272-3829

www.alaskacoast.state.ak.us

April 25, 2005

Mr. Rick Richins
Coeur Alaska, Inc., Kensington Mine
3031 Clinton Drive
Juneau, Alaska 99801-7106

Dear Mr. Richins:

**Subject:** Lynn Canal 31/Kensington Mine (Jualin Modifications)
State I.D. No. AK 0406-13J
Final Consistency Response – Concurrence

The Office of Project Management and Permitting (OPMP) has completed coordinating the State's review of the Coeur Alaska, Inc. proposed "Kensington Mine – Jualin Modification" project for consistency with the Alaska Coastal Management Program (ACMP).

OPMP has developed the enclosed final consistency response, in which the State concurs with the Coeur Alaska, Inc. certification that the project is consistent with the ACMP. This final consistency response is the final ACMP decision for this proposed project.

By copy of this letter, I am informing the U.S. Forest Service, the U.S. Army Corps of Engineers, U.S. Environmental Protection Agency, and State review participants of OPMP's finding. If you have any questions, please contact me at joe_donohue@dnr.state.ak.us or 907-465-4664. The State appreciates your cooperation with the ACMP.

Sincerely,

Joe Donohue
ACMP Project Specialist

Enclosure

*"Develop, Conserve, and Enhance Natural Resources for Present and Future Alaskans."*

000116

Exhibit 17, page 6

Distribution List:

    Pete McGee – ADEC/AWQ, Fairbanks *
    Kenwyn George – ADEC/AWQ, Juneau *
    Shannon Stambaugh – ADEC, Anchorage *
    Wayne Dolezal – ADFG, Anchorage *
    Brady Scott – ADNR/DMLW, Juneau *
    Chris Landis – ADNR/DMLW, Juneau *
    John Dunker – ADNR/DMLW/Water Resources, Juneau *
    Al Ott – ADNR/OHMP, Fairbanks *
    Jackie Timothy – ADNR/OHMP, Juneau *
    Carl Schrader – ADNR/OHMP, Juneau *
    Ed Fogels – ADNR/OPMP, Anchorage *
    Randy Bates – ADNR, OPMP, Juneau*
    Bill Jeffress – ADNR/OPMP, Anchorage *
    Stefanie Ludwig – ADNR/SHPO, Anchorage *
    Cameron Leonard – ADOL, Fairbanks *
    Bruce Anders – ADOL, Anchorage *
    Teri Camery – Coastal District, Juneau *
    Peter Freer – City and Borough of Juneau *
    Gary Droubay – Goldbelt, Inc., Juneau *
    John Leeds – USACE, Juneau * **
    Chris Meade – USEPA, Juneau *
    Cindy Godsey – USEPA, Anchorage *
    Patty McGrath – USEPA, Seattle *
    Steve Hohensee – USFS, Juneau *
    Dave Cox – USFS, Juneau *
    Steve Brockmann – USFWS, Juneau *
    Susan Walker – NMFS, Juneau *

* = Emailed, ** = Faxed

FINAL CONSISTENCY RESPONSE – CONCURRENCE        PAGE 2

ALASKA COASTAL MANAGEMENT PROGRAM
FINAL CONSISTENCY RESPONSE
CONCURRENCE

DATE ISSUED: April 25, 2005

PROJECT TITLE: Lynn Canal 31 / Kensington Mine (Jualin Modification)

STATE ID. NO.: AK 0406-13J

AFFECTED COASTAL RESOURCE DISTRICT: Juneau

APPLICANT: Coeur Alaska, Inc.

DESCRIPTION OF PROJECT SUBJECT TO ACMP REVIEW:
According to the Amended Plan of Operation submitted to the U.S. Forest Service in November, 2001, the following modifications to the project have been proposed. A Final Supplement Environmental Impact Statement (FSEIS) evaluating the changes was prepared by the USFS and a Record of Decisions issued December 9, 2004.

In the amended plan, the mine access has been moved from Comet Beach to Slate Creek Cove. Workers would be transported by ferry from a new marine terminal at Cascade Point to a new marine terminal at Slate Creek Cove. An existing mine road from Slate Creek Cove to the former Jualin Mine site would be upgraded. Associated development at the Jualin site includes additional road and construction of processing and support facilities.

The Dry Tailings Facility on the Comet Beach side has been eliminated and disposal of 4.5 million tons of tailings would occur in Lower Slate Lake, on the Jualin side. Milling operations would be located in the Johnson Creek drainage. A pipeline access road and a cutoff road between the historic Jualin road and the new pipeline access road would be constructed. Water from Johnson Creek used for tailings slurry transport to the TSF and to mine stopes would be recycled to the mill processing operation.

Goldbelt, Inc. proposes to construct a marine terminal facility at Cascade Point, for the dual purpose of berthing tour vessels and transport of personnel to and from the Kensington Mine. The Cascade Point breakwater and dock were reviews in the FEIS as an associated facility of the proposed mining project. The State has reviewed the Cascade Point marine terminal as a separate project (Berners Bay 4, State ID No. AK 0406-14J)

Specifically, the proposed work subject to this ACMP review includes:

FINAL CONSISTENCY RESPONSE - CONCURRENCE                                    PAGE 3

000118

Exhibit 17, page 8

### Lynn Canal 31/Kensington Mine (Jualin Modification)

1/ Discharge of an approximate total of 5,452,700 [5,451,700] cubic yards (CY) of fill and dredged fill materials into approximately 91.7 acres of forested and scrub-shrub wetlands, deep-water habitat and in navigable waters. Fill materials would be placed in navigable waters for construction of a marine terminal in Slate Creek Cove, and placed as follows for other facilities and operations of the mine:

| Proposed Facilities | Acres Impacted | Proposed Fill Volume |
|---|---|---|
| Process Area | 5.3 | 88,000 |
| Tailings Dam | 1.4 | 145,000 |
| Access Road | 12.0 | 26,000 |
| Laydown Area | 5.0 | 4,800 |
| Waste Rock | 4.8 | 311,000 |
| Borrow Areas | 4.2 | 0 |
| Mine Tailings | 45.5 | 4,800,000 |
| Tails Placement | 8.9 | 15,000 |
| Topsoil Stockpile | 1.0 | 33,000 |
| Slate Crk Terminal | 3.6 | 28,900 |
| Total | 91.7 | 5,451,700 |

(Note: This information has been inserted into the final ACMP consistency response to qualify and correct project information used for the proposed ACMP consistency response. The following is from an April 22, 2005 message from the Juneau U.S. Army Corps of Engineers (COE) office – "The acreages and fill volumes in the original public notice stated that approximately 5,451,700 cubic yards (cys) would be discharged into approximately 69.2 acres of US waters. These numbers were incorrect and have been updated: the applicant had included in their table of expected impacts not only acreages of the proposed work, but also the acreages and volumes for actions that had been authorized under the original permit, whether actually constructed or not, as well as other actions that did not require authorization. Note that the total acres of waters that will be impacted is 61.7 acres. Also, note that the Jualin Development Rock Storage site will be the only wetland fill that will NOT be reclaimed as a water of the United States: all other water/wetland fill sites will be reclaimed as waters or wetlands, as appropriate. Thus, the net loss of waters of the United States, after reclamation, will be 4.3 acres.

| Facilities | Acres of Impacted Waters (Acres) | Fill Volume (cys) |
|---|---|---|
| Jualin Process Area | 1.10 | 21,000 |
| Jualin Dev. Rock Storage | 4.30 | 100,000 |
| Jualin Access Road | 8.30 | 26,000 |
| Tailings Fac. Access Rd. | 5.00 | 22,000 |
| Tailings Lake Storage | 23.50 | 3,168,000 |
| Tailings Lake Margin | 8.25 | 450 |

| | | |
|---|---|---|
| Tailings Water Treatment | 0.24 | 1,000 |
| Tailings Lake Diversion | 0.01 | 25 |
| Tailings Pipeline & Road | 3.00 | 15,000 |
| Tailings Dam Facility | 5.90 | 120,000 |
| Slate Creek Cove Terminal | 1.90 | 10,475 |
| Slate Creek Cove Stockpile | 0.20 | 4,000 |
| **TOTALS** | **61.70** | **3,487,950** |

The COE added some acreages together, so this table won't reflect a table of data recently submitted by Coeur to the Corps, but the final numbers are correct.")

2/ **Slate Creek Cove Marine Terminal Facility**: Construction of an approximately 110' long pile-supported dock, plus an approximately 100' long X 12' wide removable float connected to the dock by a 6' wide X 80' long gangway. Construction of a clean gravel fill approach, an approximately 30' wide X 210' long landing craft ramp, a 40' wide X 60' long heavy duty platform, a 24' wide X 120' long transfer bridge on pile-supported dolphins, and a breasting pierhead with 5 breasting/mooring dolphins. This facility would be constructed on State tide and submerged lands containing approximately 6.43 acres. The location is Slate Creek Cove, at the marine terminus of the historic Jualin Mine Road, Section 1, T. 36 S, R. 62 E. CRM.

(Note: The proposed development for the Slate Creek Cove Marine Terminal has since been revised and modified to use less area and less fill volume. The modifications are consistent with the NMFS conservation recommendations. The pile supported dock has been modified and substantially reduced to a short trestle. Instead of five, the revised plan incorporates four breasting/mooring dolphins. Instead of the transfer bridge extending from a heavy duty platform, the transfer bridge extends directly from the filled approach which itself is modified to incorporate a concrete or block built vertical-faced retaining wall. The 210' long landing craft ramp has been eliminated and instead there will be a much shorter earthen filled ramp. This development provides for a significant reduction in the required amount of fill and impacted acres. The proposed tideland lease area is modified from 6.43 acres to approximately 3.8 acres. For the current purposes the proposed work subject to this ACMP review includes what was original proposed rather than the modified development. However, since the development plan as modified will involve less development and therefore less impact to coastal resources, it will still comply with the consistency determination as rendered by this consistency response – DMLW, April 22, 2005.)

3/ **Access Road, Slate Creek Cove Marine Terminal to Kensington Mine/Mill Complex**: Upgrades would be made to an existing single-lane mine access road, including resurfacing, filling, and compacting. Drainage ditches would be improved or constructed, and bridges would be replaced at two locations where the road intersects with Johnson Creek. Seventeen turnouts would be constructed. The road access portion of the project would affect 27.8 acres. The location is T. 36 S, Range 62 E, Section 1, and T. 35 S, R. 62 E, and Sections 10, 14, 15, 23, 24, 25 and 36.

4/ **Water Appropriation, Johnson Creek**: The applicant has requested use of water from Johnson Creek in the amount of 7,500 gallons per day, January through December, for domestic purposes, and up to 218,700 gallons per day for mining and milling, and tailings slurry transport. The location

is Johnson Creek, Section 15, T. 35 S, R. 62 E, Copper River Meridian. This water request has been given case number "LAS 24432".

5/ <u>Water Appropriation, Slate Creek</u>: The applicant has requested use of water from Slate Creek in the amount of 8,530 acre feet per year, at a maximum diversion rate of 5,315 gallons per minute (approximately 11.8cfs), January through December, for the purpose of maintaining water quality and aquatic habitat. The location is Lower Slate Lake and Mid-Lake Slate Creek, within Sections 23, 26 and 27, T. 35 S, R. 62 E., Copper River Meridian. This water request has been given the case number "LAS 24486".

6/ <u>Instream work, Upper Johnson Creek</u>: work has been proposed by the applicant to install an infiltration gallery in the stream bank to supply water for the mine/mill complex. The location is Upper Johnson Creek, T. 35 S, R. 62 E, Section 15, CRM, approximately 1.4 stream miles above a barrier blocking migration of anadromous fish; below the barrier Lower Johnson Creek has been identified as important in supporting populations of anadromous fish. Upper Johnson Creek supports a population of resident Dolly Varden char.

7/ <u>Instream work, Upper Johnson Creek</u>: A bridge replacement (Bridge #1) has been proposed for this location for the access road to the mine/mill complex. Instream work may occur if the existing bridge abutments require removal. The location is Upper Johnson Creek, T. 35 S, R. 62 E, Section 15, CRM, approximately 0.5 stream miles above the natural barrier separating Upper and Lower Johnson Creek; below the barrier Lower Johnson Creek has been identified as important in supporting populations of anadromous fish. Upper Johnson Creek supports a population of resident Dolly Varden char.

8/ <u>Instream work, Upper Johnson Creek</u>: A bridge replacement (Bridge #2) has been proposed for this location for the access road to the mine/mill complex. Instream work may occur if the existing bridge abutments require removal. The location is Upper Johnson Creek, T. 35 S, R. 62 E, Section 15, CRM, approximately 1.4 stream miles above the natural barrier separating Upper and Lower Johnson Creek; below the barrier Lower Johnson Creek has been identified as important in supporting populations of anadromous fish. Upper Johnson Creek supports a population of resident Dolly Varden char.

9/ <u>Discharge of pollutants, including treated domestic wastewater and treated non-domestic wastewater from the Kensington Mine:</u>
   a) Outfall 001 – Lat. 58° 52' 04" N, Long. 135° 06' 55" W, discharge of mine water to Sherman Creek.
   b) Outfall 002 – Lat. 58° 49' 58" N, Long. 134° 57' 58" W, discharge from the Tailings Storage Facility to East Fork Slate Creek.
   c) Outfall 003 – Lat. 58° 51' 58" N, Long. 135° 08' 28" W, discharge of treated domestic wastewater to Lynn Canal.

<u>Project components outside the scope of ACMP review</u>: In association with the Kensington Mine project, the applicant has requested that the State of Alaska temporarily close the Jualin Mine Road (RST 4) to public access to protect public safety.

Background Information
This large mine project was first proposed by Echo Bay Exploration, Inc, in June, 1989, and scoping was performed under the National Environmental Policy Act (NEPA). ACMP-NEPA comments were provided under project number AK 890601-01J. Additional NEPA scoping was performed in 1990, under ACMP project review numbers AK 900501-01J (May, 1990) and AK 900824-11J (August, 1990).

Echo Bay's Exploration Plan was reviewed for ACMP in April, 1991, under AK 910409-08J, and the Draft Environmental Impact Statement (DEIS) was reviewed under ACMP and NEPA in June, 1991, project number AK 910605-07J. There was a change in project applicant, to the "Kensington Venture," a joint venture between Echo Bay Exploration and Coeur d'Alene Mines in 1991, and modifications to the project proposal that were reviewed under AK 910821-01C. Kensington Venture presented an Exploration and Geotechnical Survey Plan of Operations in May, 1992, which was reviewed for ACMP as AK 920505-02J. Coeur Alaska became the sole applicant for the project in July, 1995.

As originally permitted, the Kensington Gold Project proposed to access the historic ore bodies near Berners Bay from the Comet Beach side of Lion's Head Mountain, adjacent to Lynn Canal. The proposal, as amended and permitted in 1997, and reviewed as the "No Action" Alternative in the 2004 Supplemental Environmental Impact Statement, would include off-site processing of flotation tailings and use of a 20 million-ton dry tailings facility (DTF). The proposal included using diesel and liquefied petroleum gas to fuel generators, and discharge of mine water to Sherman Creek (Lynn Canal/Comet Beach side) and DTF effluent to Camp Creek (Lynn Canal/Comet Beach side). No new facilities were proposed for the Jualin Mine side of the peninsula, inside Berners Bay. The DTF was never constructed by Coeur-Alaska. Hence, the NPDES permit was never fully implemented by the applicant.

Additional Information
The State agencies with responsibility for issuing authorizations for the Kensington Mine – Jualin Modification evaluated the proposed project for consistency with the standards and policies of the ACMP. As a result of their consistency evaluations, State agencies compiled a list of recommended alternative measures, that if accepted by the applicant would allow the proposed project to achieve consistency with the standards and policies of the ACMP. Following a period of negotiations between the State agencies and the applicant - Coeur Alaska, Inc. has agreed to incorporate State-recommended alternative measures into the project description.

SCOPE OF PROJECT REVIEW:
Except for the water quality issues addressed through the Alaska Department of Environmental Conservation (ADEC) 401 Certification process, the scope of the project subject to the consistency review includes all activities that require an authorization from a Federal and State agency for the project to proceed. The scope of this ACMP consistency review included all applications and documentation submitted for federal and State authorizations.

AUTHORIZATIONS:
The project must be found consistent with the ACMP before the following Federal and State authorizations may be issued:

FINAL CONSISTENCY RESPONSE – CONCURRENCE                                    PAGE 7

U.S. Army Corps of Engineers (COE)
   Section 404 and 10 Permit No. POA-1990-592-M

U.S. Environmental Protection Agency (USEPA)
   National Pollutant Discharge Elimination System (NPDES) Permit No. AK-005057-1

Alaska Department of Environmental Conservation (ADEC)
   Certificates of Reasonable Assurance (401) (for Section 404 and for NPDES)

Alaska Department of Natural Resources (ADNR)
   Division of Mining, Land & Water (DMLW)
      Land Use Permit No. LAS 24488 (Jualin Mine Road)
      Tidelands Lease No. ADL 107154 (Slate Creek Cove Marine Terminal Facility)
      Water Right Permits nos. LAS 24432 (Johnson Creek), LAS 24486 (Slate Creek)

   Office of Habitat Management & Permitting (OHMP)
      Fish Habitat Permit Nos.:
      FH05-I-0047 Johnson Creek Bridge #1
      FH05-I-0048 Johnson Creek Bridge #2
      FH05-I-0049 Johnson Creek Infiltration Gallery
      FH05-I-0050 Lower Slate Lake Tailings Impoundment Dam

**CONSISTENCY RESPONSE STATEMENT:**
Based on an evaluation of your project by the Alaska Departments of Fish and Game and Natural Resources, and the Juneau Coastal District, and the applicant's acceptance of the alternative measures recommended by the State for the project to achieve consistency with the standards of the ACMP, the State of Alaska proposes to concur with the consistency certification submitted by Mr. Rick Richins of Coeur Alaska, Inc. An analysis by ACMP staff of authorization documents of separate State agencies has reached the conclusion that the conditions placed upon the applicant by these authorizations meet the requirements of the standards and policies of the ACMP, therefore the proposed modifications to the U.S. Forest Service' (USFS) "General Plan of Operations" (POO) for the Kensington Mine and each of the authorizations listed above are found to be consistent with the standards and policies of the ACMP.

Please note that, in addition to their consistency review, State agencies with permitting responsibilities will evaluate this proposed project according to their specific permitting authorities. Agencies will issue permits and authorizations only if they find the proposed project complies with their statutes and regulations in addition to being consistent with the coastal program. An agency permit or authorization may be denied even though the State concurs with the ACMP. Authorities outside the ACMP may result in additional permit/lease conditions. If a requirement set out in the project description (per 11 AAC 110.260) is more or less restrictive than a similar requirement in a resource agency authorization, the applicant shall comply with the more restrictive requirement. Applicants may not use any State land or water without ADNR authorization.

FINAL CONSISTENCY RESPONSE – CONCURRENCE                          PAGE 8

000123

Exhibit 17, page 13

This final consistency response represents a consensus reached between you as the project applicant and the reviewing agencies listed above; regarding the conditions necessary to ensure the proposed project is consistent with the ACMP. We are informing the federal agency responsible for approving a federal authorization for your project that your original proposal has been modified subject to the conditions in this consistency response.

This final consistency response is a final administrative decision for purposes of Alaska Appellate Rules 601-612. Any appeal from this decision to the superior court must be made within 30 days of the date of this consistency response.

ADVISORIES:
Department of Natural Resources:
Division of Mining, Land and Water (DMLW) – On September 15, 2004 OPMP received the following written comments on the DMLW land use authorizations for the Kensington Mine project modification:
"The Land Section of the Division of Mining, Land and Water has reviewed the above referenced development projects for consistency with the Alaska Coastal Management Program. The project proposed relates to the Kensington Mine Project and as of specific concern to the Land section of DNR, Division of Mining Land and Water the project consists of: (1) the development of a marine transfer facility and terminal on State-owned tide and submerged lands at Slate Creek Cove, and (2) for construction and operation upon the Jualin Mine Road, a State easement interest provided under RS-2477 (RST-4).

The DNR land use applications have been received for the project and are identified as:

- Tideland Lease, ADL 107154 (Slate Creek Cove Marine terminal)
- Land Use Permit, LAS 24488 (Jualin Mine Road, RST-4)

Our office concurs with the applicant's certification that the proposed activity complies with and is consistent with the ACMP.

A consistency determination does not obligate the Department of Natural Resources to issue authorization pursuant to AS 38, nor does it supersede statutory obligations thereunder. The applicant may not proceed with any site specific land use activity on the subject State lands until so authorized by the Division of Mining, Land and Water. Authorities outside 6AAC 50 may result in additional permit conditions not contained in the consistency decision."

Water Resource Section – On April 21, 2005 OPMP received the following verification of conditions that will be required for the water use for the "Jualin modification" of the Kensington Mine:
"ADNR/Water Resources, under the authority of the Alaska Water Use Act, will require conditions in the water right permits to protect water resources and aquatic habitat, including the following:

- All diversion flows greater than 30,000 gpd shall be metered.
- Stream Flows downstream from the infiltration gallery in Johnson Creek and downstream from the tailings dam in East Slate Creek shall be continuously monitored and periodically reported

FINAL CONSISTENCY RESPONSE – CONCURRENCE                                   PAGE 9

000124

Exhibit 17, page 14

04-25-05   01:07pm   From-DNR OPMP/ACMP                                    T-092   P 011/016   F-840

to ADNR/Water Resources, according to a stream gauging plan to be prepared by the permittee and submitted to ADNR/Water Resources for prior approval. Water elevations in the TSF reservoir will be continuously monitored and periodically reported to ADNR/Water Resources, according to a reservoir elevation monitoring plan to be prepared by the permittee and submitted to ADNR/Water Resources for prior approval."

<u>Office of Habitat Management and Permitting (OHMP)</u> – On April 21, 2005 OPMP received the following written comments and recommendations:
"Habitats in the project area that may be affected by the proposed project include estuaries; wetlands; streams, and lakes; and important upland habitat. Pursuant to 6 AAC 80.130(b), all habitats that are subject to the provisions of the Alaska Coastal Management Program (ACMP) must be managed so as to maintain or enhance the biological, physical, and chemical characteristics of the habitat that contribute to its capacity to support living resources. In addition,

- Estuaries must be managed so as to assure adequate water flow, natural circulation patterns, nutrients, and oxygen levels, and avoid the discharge of toxic wastes, silt, and destruction of productive habitat;
- Wetlands and tideflats must be managed so as to assure adequate water flow, nutrients, and oxygen levels and avoid adverse effects on natural drainage patterns, the destruction of important habitat, and the discharge of toxic substances.
- Rivers, streams, and lakes must be managed to protect natural vegetation, water quality, important fish or wildlife habitat and natural water flow.

Pursuant to 6 AAC 80.130(d) uses and activities in the coastal area, which will not conform to the above standards, may be allowed if the following are established:

(1) there is a significant public need for the proposed use or activity;
(2) there is no feasible prudent alternative to meet the public need for the proposed use or activity which would conform to the standards; and
(3) all feasible and prudent steps to maximize conformance with the standards will be taken.

The Office of Habitat Management and Permitting (OHMP) has determined that the project would not conform to the above standards because there would be permanent loss of wetlands, estuarine and stream habitats and short-term loss of lake habitat. However, we have further determined that the activity should be allowed pursuant to 6 AAC 80.130(d) for the following reasons:

Public need: The Juneau Coastal District has determined that there is a significant public need for the project. OHMP defers to the expertise of the coastal district in this determination. (Note: As the coordinating State agency and following an evaluation of the Juneau Coastal District's comments and recommendations, OPMP concurs that there is a significant public need for this project.)

Feasible prudent alternative: The applicant has demonstrated that the proposed project is the only feasible prudent alternative that would meet the public need for the project.

FINAL CONSISTENCY RESPONSE – CONCURRENCE                                                PAGE 10

000125

Exhibit 17, page 15

Measures to maximize conformance: Appropriate measures will be taken to maximize conformance with the standard. Foremost will be reclamation of Lower Slate Lake and other wetlands following mine closure. Measures shall include, but will not be limited to the following representative measures.

Estuarine Habitats
Construction and operation of a marine terminals at Cascade Point and Slate Creek Cove would impact habitats for forage fish (herring and eulachon), juvenile salmonids, and marine mammals. Potential impacts would be mitigated through appropriate facility design, in-water construction timing and vessel operational restrictions, water quality and biological monitoring, and vessel operational restrictions as described in the following project-related authorizing documents (noted below). These measures are taken from a list of recommendations submitted by the National Marine Fisheries Service (NMFS) to the State resource agencies:

In-Water Timing Restrictions / Operation Timing Restrictions -
- NMFS recommendation - In-water construction to take place outside timing window to protect outmigrating juvenile salmonids and spawning and rearing marine forage fish; use of vibratory hammers to drive piles to reduce noise impacts to teleost fish.

  State response - The State's tidelands leases will have a stipulation [alternative measure] prohibiting in-water construction from March 15 through June 30. The use of vibratory hammers is recommended whenever practicable. (The CBJ CUP prohibits in-water construction from March 15 through June 15.)

- NMFS recommendation - No construction between March 15 and June 30 to minimize noise impacts to marine mammals. Near-water construction only during winter months when few marine mammals are present.

  State response - CBJ Allowable and Conditional Use permits address in-water construction from March 15 through June 15. Coeur has proposed no construction March 15 through June 30 and that will be reflected in State tideland lease.

  The tidelands lease will also have the following stipulation [alternative measure] that states: "No blasting shall occur on the leased premises during any period when in-water construction activities are prohibited or at any time when Steller sea lions or humpback whales are present within a 1000-foot radius. In-water construction activities will be suspended when humpback whales or Steller sea lions are within 1,000 feet, as determined from on-site monitoring by a NMFS-approved marine mammal biologist."

Water Quality / Biological Monitoring -
- NMFS recommendation - Coeur should support research over the life of the project to better understand the direct and indirect impacts to listed species and their prey. Monitoring is to be directed toward adaptive management: NMFS and other natural resource agencies independently review collected data to assess impacts; if impacts are detected, USFS and USACE would consult with NMFS to determine how to adjust action.

*State response* - The USFS POO requires a marine monitoring program for Berners Bay that includes long-term monitoring for petroleum pollution (PAH) herring spawning habitat and egg biomass, marine mammals and waterbirds. The USFS POO and the CBJ AUP establishes the "Berners Bay Working Group" to evaluate the effectiveness of the monitoring programs. Also, the USFS POO requires that an environmental audit will be performed every six years by an independent third party consultant to determine the effectiveness of the mines environmental systems, and recommend changes if necessary.

- NMFS recommendation - Monitoring of construction activity impacts on marine mammal behavior with results submitted annually to NMFS and USFS to determine effectiveness of mitigation measures.

  *State response* - The USFS POO requires a trained observer during construction activity. Monitoring results will be reviewed by the "Berners Bay Working Group" annually.

- NMFS recommendation - A marine mammal observer is to monitor crew shuttle operations year-round rather than only during April/May.

  *State response* - The USFS POO requires a trained observer during the spring eulachon run. The state will not require the observer year-round.

- NMFS recommendation - Vessel operating procedures to be monitored and evaluated to determine effectiveness at protecting listed species.

  *State response* - The USFS POO requires a trained observer during vessel operations. Monitoring results will be reviewed by the "Berners Bay Working Group" annually.

**Vessel / Aircraft / Vehicle Operation -**
- NMFS recommendation - Reduction of in-water construction noise and other noise reduction measures including speed limits, controlling helicopter altitudes and flight paths, eliminating compression brakes on the haul road.

  *State response* - The CBJ Allowable Use Permit addresses requirements for helicopter flight paths and altitudes, use of compression brakes for emergencies only, and speed limits on the Slate Creek Cove Road to the mine.

- NMFS recommendation - Vessel traffic to be minimized after dark especially during spring eulachon/herring runs.

  *State response* - The USFS POO requires that during spring eulachon and herring runs, ferry operations shall be restricted to daylight hours, to the extent feasible.

- NMFS recommendation - Vessels to be operated year-round at speeds not exceeding 13 knots.

  *State response* - The USFS POO requires that during spring eulachon and herring runs, ferries within Berners Bay shall be operated at speeds not to exceed 13 knots.

Rivers, Streams, and Lake Habitats
Construction of the Tailings Storage Facility would impact fish habitat on Lower Slate Lake, East Fork Slate Creek and Inter-Lake Creek. These impacts will be temporary - only occurring during operations of the Tailings Storage Facility - and will be mitigated through reclamation and monitoring programs as described in the USFS POO and Reclamation Plan's Monitoring Plan.

Wetlands
Wetlands would be impacted by placement of fill in approximately 92 acres of wetlands including forested and scrub wetlands, Lower Slate Lake, and marine waters. (NOTE: The revised project description identifies 61.70 acres.) The majority of the wetlands lost will be reclaimed as wetlands at the end of the project as described in Coeur's "Kensington Reclamation Plan" approved by both ADNR and USFS."

Important Upland Habitat
Winter Goat Habitat: ADF&G has expressed concern that noise and disturbance associated with the project may disturb mountain goats, particularly during winter when they are found at low elevations and are nutritionally stressed. The POO requires that Coeur conduct a monitoring study to determine mountain goat movement and habitat use patterns in relation to mining activities.

<u>Juneau Coastal District</u> – On October 15, 2004 OPMP received the following written comments and recommendations from the Juneau Coastal District Coordinator:
"The Juneau Coastal District has reviewed the above referenced proposal for consistency with the Juneau Coastal Management Program (JCMP) and the Juneau Wetlands Management Plan (JWMP). The project was approved by the CBJ Planning Commission on August 30, 2004 as MJN2004-00003. The consistency review below is the exact language from the JCMP section of the staff report that the Planning Commission approved, with the JCMP-related conditions approved on the final Notice of Decision. . . .

JUNEAU COASTAL MANAGEMENT PROGRAM
The Juneau Coastal District recommends that the project be found consistent with the Juneau Coastal Management Program with the adoption of the following alternative measures:

JCMP Conditions
33. Preserved and pressure-treated wood shall not be used in the water, or have contact with the water, in the construction of the Slate Creek Cove marine terminal.

34. Fill in wetlands shall be avoided and minimized to the greatest extent practicable.

35. The best management practices enumerated in CBJ 549.70.1080 (b) (7) (A) (B) (C) (D) (F) and (G) are incorporated as BMPs for the project. These are:
    * There shall be no work in the stream bed or that would adversely impact the stream during egg incubation or out-migration of salmon smelts;
    * Filtration curtains shall be used to protect streams from turbidity due to adjacent soil disturbance activities;

FINAL CONSISTENCY RESPONSE – CONCURRENCE                                           PAGE 13

- Existing wetlands vegetation shall be stripped in mats and repositioned over regraded soils;

- The amount of fill shall be restricted to the minimum amount necessary to achieve stated purposes;

- All discharge material shall be free from toxic pollutants in toxic amounts as defined by state law; and;

- Erosion at the construction site shall be controlled through re-vegetation and other appropriate means.

- Exposed soils shall be re-vegetated within one year.

**Wetlands Review Board Conditions**

36. Marine construction shall not occur in Slate Creek Cove during the spring concentration of forage fish.

37. A strong monitoring and reporting program shall be instituted for water quality assessment in the Slate Lakes Basin and in Slate Creek Cove, with an emphasis on the fish population.

38. Species in Slate Creek Cove shall be monitored for vessel impacts. Measures shall be taken to reduce impacts to marine species, including reduction of vessel speed, vessel routing and timing of vessel arrivals and departures. Coeur should incorporate provisions for marine mammal protection in the approved Plan of Operations or through an agreement with the National Marine Fisheries Service.

39. Coeur shall sponsor a Berners Bay working group to coordinate activities and promote good communication among the operator, the agencies and the public."

This consistency response may include reference to specific laws and regulations, but this in no way precludes an applicant's responsibility to comply with all other applicable State and federal laws and regulations.

This consistency response is only for the project as described. If, after issuance of a final consistency response, the applicant proposes any changes to the approved project, including its intended use, prior to or during its siting, construction, or operation, the applicant must contact this office immediately to determine if further review and approval of the modifications to the project is necessary. Changes may require amendments to the State authorizations listed in this response, or may require additional authorizations.

If the proposed activities reveal cultural or paleontological resources, the applicant is to stop any work that would disturb such resources and immediately contact the State Historic Preservation

FINAL CONSISTENCY RESPONSE – CONCURRENCE                                 PAGE 14

000129

Exhibit 17, page 19