

51 FR 8871-01                                                                    Page 1
51 FR 8871-01, 1986 WL 92617 (F.R.)
**(Cite as: 51 FR 8871)**


NOTICES

DEPARTMENT OF DEFENSE

Department of the Army

ENVIRONMENTAL PROTECTION AGENCY

Water Pollution Control; Memorandum of Agreement on Solid Waste

Friday, March 14, 1986

**\*8871** February 28, 1986.

AGENCY: Department of the Army, DoD and Environmental Protection Agency.

ACTION: Notice of agreement.

SUMMARY: The Department of the Army and the Environmental Protection Agency (EPA) have entered into an agreement to promote effective control under the Clean Water Act (CWA) of discharges of solid and semi-solid waste materials discharged into the waters of the United States for the purpose of disposal of waste.

DATE: The Memorandum of Agreement (MOA) was executed on January 23, 1986, and shall take effect on April 23, 1986. Written comments received on or before June 23, 1986, will be considered in any future revision undertaken to the Agreement. Written comments received after June 23, 1986, will be considered if the timing of any future revision allows for such consideration.

ADDRESS: Office of the Assistant Secretary of the Army (Civil Works), U.S. Department of the Army, Room 2E570, Washington, DC, 20310-0103; or Office of Federal Activities (A-104), U.S. Environmental Protection Agency, 401 M Street SW., Washington, DC, 20460.

FOR FURTHER INFORMATION CONTACT:

  Morgan Rees, Assistant for Regulatory Affairs, Office of the Assistant Secretary of the Army (Civil Works), Department of the Army, Pentagon, Room 2E569, Washington, DC, 20310, (202) 695-1370.

  John Meagher, Director, Aquatic Resource Division, Office of Federal Activities (A-104), Environmental Protection Agency, Washington, DC, 20460, (202) 382-5043.

SUPPLEMENTARY INFORMATION: Under section 404 of the CWA, the Army Corps of Engineers (and States approved by EPA) issue permits for discharges of dredged and fill material into waters of the United States which comply with the Act and applicable regulations. Under section 402 of the CWA (the National Pollutant Discharge Elimination System or NPDES Program), EPA (and States approved by EPA) issue permits for discharges of all other pollutants into waters of the United States, which comply with the Act and applicable regulations.

 The MOA was entered into to resolve a difference (since 1980) between Army and EPA over the appropriate CWA program for regulating certain discharges of solid wastes into waters of the United States. The Army Corps of Engineers' definition of "fill material" provides that only those materials discharged for the primary purpose of replacing an aquatic area or of changing the bottom elevation of a waterbody are regulated under the Corps [section 404]() permit program. These discharges include

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51 FR 8871-01                                                                          Page 2
51 FR 8871-01, 1986 WL 92617 (F.R.)
**(Cite as: 51 FR 8871)**

discharges of pollutants intended to fill a regulated wetland to create fast land for development. The Corps definition excludes pollutants discharged with the primary purpose to dispose of waste which, under the Corps definition, would be regulated under section 402. Under EPA's definition of "fill material," all such solid waste discharges would be regulated under section 404, regardless of the primary purpose of the discharger. This difference has complicated the regulatory program for solid wastes discharged into waters of the United States.

 A February 1984 Settlement Agreement in NWF v. Marsh, a case brought by 16 environmental groups against Army and EPA on a number of section 404 matters required resolution of the definition of fill issue by September 1984. Army and EPA have been working toward a resolution since settlement. In Section 404 oversight hearings conducted by the Senate Environment and Public Works Committee in 1985, EPA and Army agreed to make every effort to resolve the matter by the end of 1985.

 The agreement published today provides an interim arrangement between the agencies for controlling discharges. In the longer term, EPA and Army agree that consideration given to the control of discharges of solid waste both in waters of the United States and upland should take into account the results of studies being implemented under the 1984 Hazardous and Solid Waste Amendments (HSWA) to the Resource Conservation and Recovery Act (RCRA), signed into law on November 8, 1984.

 The amendments to RCRA require EPA, by November 8, 1987, to submit a report to Congress determining whether the RCRA Subtitle D Criteria (40 CFR Part 257) are adequate to protect human health and the environment from groundwater contamination, and recommending whether additional authorities are needed to enforce the Criteria. In addition, EPA must revise the Criteria by March 31, 1988, for solid waste disposal facilities that may receive hazardous household waste or small quantity generator hazardous waste. At a minimum, these revisions should require not only groundwater monitoring as necessary to detect contamination, but should also establish criteria for the acceptable location of new or existing facilities, and provide for corrective action, as appropriate.

 The main focus of the interim arrangement is to ensure an effective enforcement program under section 309 of the CWA for controlling discharges of solid and semi-solid wastes into waters of the United States for the purpose of disposal of waste. When warranted, EPA will normally initiate section 309 action to control such discharges. If it becomes necessary to determine whether section 402 or 404 applies to an ongoing or proposed discharge, the determination will be based upon criteria in the agreement, which provide, inter alia, for certain homogeneous wastes to be regulated under the section 402 (NPDES) Program and certain heterogeneous wastes to be regulated under the section 404 Program.

 To promote regulatory consistency for those seeking to apply for authorization to discharge these wastes into waters of the United States, the agreement encourages the use of the criteria in the MOA by prospective dischargers. It also provides a procedure for the agencies' consideration of any permit applications received, and calls upon the agencies to advise prospective dischargers regarding the probable unsuitability of certain kinds of wastes for discharge into waters of the United States.

 This agreement does not affect the regulatory requirements for materials discharged into waters of the United States for the primary purpose of replacing an aquatic area or of changing the bottom elevation of a water body. Discharges listed in the Corps definition of "discharge of fill material," 33 CFR 323.2(1) remain subject to section 404 even if they occur in association with discharges of wastes meeting the criteria in the agreement for section 402 discharges.

 Unless extended by mutual agreement, the agreement will expire at such time as EPA has accomplished specified steps in its implementation of RCRA, at which time the results of the study of the adequacy of the existing Subtitle D criteria and proposed revisions to the Subtitle D criteria for solid waste disposal facilities, including those that may receive hazardous household wastes and small quantity generator waste, will be known. In addition, data resulting from actions **\*8872**

                   ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51 FR 8871-01                                                          Page 3
51 FR 8871-01, 1986 WL 92617 (F.R.)
**(Cite as: 51 FR 8871)**

under the interim agreement can be considered at that time.

 The Department of Army and EPA will ensure that decisions made pursuant to this agreement meet the requirements of the CWA and are consistent with the Act's objective to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.  EPA and Army will also take steps to ensure that discharges of solid and semi-solid wastes into waters of the United States are evaluated consistently under the section 402 and 404 programs, and that this agreement will be implemented in a manner that imposes no unnecessary burden on the regulated sector.

Text

January 17, 1986.

Memorandum of Agreement Between the Assistant Administrators for External Affairs and Water, U.S. Environmental Protection Agency, and the Assistant Secretary of the Army for Civil Works Concerning Regulation of Discharge of Solid Waste Under the Clean Water Act

*A. Basis of Agreement*

 1. Whereas the Clean Water Act has as its principal objective the requirement  "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters;  and,

 2. Whereas section 301 of the Clean Water Act prohibits the discharge of any pollutant into waters of the United States except in compliance with sections 301, 302, 306, 307, 318, 402, and 404 of the Act;  and

 3. Whereas EPA, and States approved by EPA, have been vested with authority to permit discharges of pollutants, other than dredged or fill material, into waters of the United States pursuant to section 402 of the Clean Water Act that satisfy the requirements of the Act and regulations developed to administer this program promulgated in 40 CFR 122-125;  and

 4. Whereas the Army, and States approved by EPA, have been vested with authority to permit discharges of dredged or fill material into waters of the United States that satisfy the requirements of the Act and regulations developed to administer this program promulgated in 33 CFR Part 320 et seq. and 40 CFR Part 230 et seq.; and

 5. Whereas the definitions of the term "fill material" contained in the aforementioned regulations have created uncertainty as to whether section 402 of the Act or section 404 is intended to regulate discharges of solid waste materials into waters of the United States for the purpose of disposal of waste;  and

 6. Whereas the Resource Conservation and Recovery Act Amendments of 1984  (RCRA) require that certain steps be taken to improve the control of solid waste;  and

 7. Whereas interim control of such discharges is necessary to ensure sound management of the Nation's waters and to avoid complications in enforcement actions taken against persons discharging pollutants into waters of the United States without a permit;

 8. The undersigned agencies do hereby agree to use their respective abilities cooperatively in an interim program to control the discharges of solid waste material into waters of the United States.

*B. Procedures*

 1. When either agency is aware of a proposed or an unpermitted discharge of solid waste into waters of the United States, the agency will notify the discharger of the prohibition against such discharges as provided in section 301 of the Clean Water Act. Such notice is not a prerequisite for an enforcement action by either agency.

               ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
51 FR 8871-01                                                        Page 4
51 FR 8871-01, 1986 WL 92617 (F.R.)
(Cite as: 51 FR 8871)
```

  2. Normally, if an activity in B.1 above warrants action, EPA will issue an administrative order or file a complaint under section 309 to control the discharge.

  3. In issuing a notice of violation or administrative order or in filing a complaint, it is not necessary in order to demonstrate a violation of section 301(a) of the Clean Water Act to identify which permit a permitless discharge should have had. However, after an enforcement action has commenced, a question may be raised by the court, discharger, or other party as to whether a particular discharge having the effect of replacing an aquatic area with dry land or of changing the bottom elevation of a water body meets the primary purpose test for "fill material" in the Corps definition (33 CFR 323.2(k)). For example, such question may be raised in connection with a defense, or it may be relevant to the relief to be granted or the terms of a settlement.

  4. To avoid any impediment to prompt resolution of the enforcement action, if such a question arises, a discharge will normally be considered to meet the definition of "fill material" in 33 CFR 323.2(k) for each specific case by consideration of the following factors:

  a. The discharge has as its primary purpose or has as one principle purpose of multi-purposes to replace a portion of the waters of the United States with dry land or to raise the bottom elevation.

  b. The discharge results from activities such as road construction or other activities where the material to be discharged is generally identified with construction-type activities.

  c. A principal effect of the discharge is physical loss or physical modification of waters of the United States, including smothering of aquatic life or habitat.

  d. The discharge is heterogeneous in nature and of the type normally associated with sanitary landfill discharges.

  5. On the other hand, in the situation in paragraph B.3., a pollutant (other than dredged material) will normally be considered by EPA and the Corps to be subject to section 402 if it is a discharge in liquid, semi-liquid, or suspended form or if it is a discharge of solid material of a homogeneous nature normally associated with single industry wastes, and from a fixed conveyance, or if trucked, from a single site and set of known processes. These materials include placer mining wastes, phosphate mining wastes, titanium mining wastes, sand and gravel wastes, fly ash, and drilling muds. As appropriate, EPA and the Corps will identify additional such materials.

  6. While this document addresses enforcement cases, prospective dischargers who apply for a permit will be encouraged to use the above criteria for purposes of project planning. If a prospective discharger applies for a section 404 permit based on the considerations in paragraph B.4., or for a Section 402 permit based on the considerations in paragraph B.5., the application will normally be accepted for processing. If a prospective discharger applies for a 404 permit for discharge of materials that might be hazardous, he shall be advised that dischargers of wastes to waters of the United States that are hazardous under RCRA are unlikely to comply with the section 404(b)(1) Guidelines. To facilitate processing of applications for permits under sections 402 or 404 for discharges covered by this agreement, an application for such discharge shall not be accepted for processing until the applicant has provided a determination signed by the State or appropriate interstate agency that the proposed discharge will comply with applicable provisions of State law including applicable water quality standards, or evidence of waiver by the State or interstate agency. As mandated under the Clean Water Act, neither a 402 nor a 404 permit will be issued for a discharge of toxic pollutants in toxic amounts. Prospective applicants for section 402 permits shall be advised that the proposed discharge will be evaluated for compliance with the Act, in particular with sections 101(a), 301, 303, 304, 307, 402, and 405 of the Act.

            ©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51 FR 8871-01                                                          Page 5
51 FR 8871-01, 1986 WL 92617 (F.R.)
**(Cite as: 51 FR 8871)**

*C. Determination of Permit*

 1. In enforcement cases, where a question arises under paragraph B.3 as to which permit would be required for a permitless discharge, the enforcing agency will determine whether the criteria in paragraph B.4 or B.5, if either, have been satisfied, with concurrence from the other agency.  If the enforcing agency concludes that neither set of the criteria has been met and additional analysis is required to determine which Section applies, or if the necessary concurrence is not forthcoming promptly, the Division Engineer and the Regional Administrator (or designees) will consult and determine which permit program is applicable.

 2. In non-enforcement situations, the agency receiving an application shall determine whether it meets the criteria in paragraphs 4 or 5, as the case may be. If the agency determines that the criteria applicable to its permit program have not been met, it will ask the other agency to determine whether the criteria for the latter's permit program have been met.

 If neither agency determines that the criteria for its permit program have been met, the Division Engineer and the RA (or their designees) shall consult and determine which agency shall process the application in question.

*D. Publication in the "Federal Register"*

 Since this Memorandum of Agreement clarifies the definition of fill material with **\*8873** respect to discharges of solid waste into waters of the United States, the parties in this agreement shall jointly publish it in the Federal Register within 45 days after it has been signed.

*E. Effective Dates*

 1. This agreement shall take effect 90 days after the date of the last signature below and will continue in effect until modified or revoked by agreement of both parties, or revoked by either party alone upon six months written notice.

 2. This agreement automatically expires at such time as EPA has submitted its Report to Congress on the Results of Study of the Adequacy of the Existing Subtitle D Criteria and has published a Notice of Proposed Revisions to the Subtitle D Criteria in the Federal Register, unless the agencies mutually agree that extension of this agreement is needed.

 Dated:  January 22, 1986.

Jennifer J. Manson,

Assistant Administrator for External Affairs, U.S. Environmental Protection Agency.

 Dated:  January 23, 1986.

Larry Jensen,

Assistant Administrator for Water, U.S. Environmental Protection Agency.

 Dated:  January 17, 1986.

Robert K. Dawson,

Assistant Secretary of the Army (Civil Works).

 Dated:  March 11, 1986.

Jennifer J. Manson,

Assistant Administrator for External Affairs, U.S. Environmental Protection Agency.

              ©   2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

51 FR 8871-01                                                                 Page 6
51 FR 8871-01, 1986 WL 92617 (F.R.)
**(Cite as: 51 FR 8871)**

Lawrence J. Jensen,

Assistant Administrator for Water, U.S. Environmental Protection Agency.

Robert K. Dawson,

Assistant Secretary of the Army for Civil Works, Department of the Army.

[FR Doc. 86-5611 Filed 3-13-86;  8:45 am]

BILLING CODE 3710-08-M

 51 FR 8871-01, 1986 WL 92617 (F.R.)

END OF DOCUMENT

©  2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.