LEXSEE 55 FED. REG. 9210

ENVIRONMENTAL PROTECTION AGENCY

Department of the Army

AGENCY: Environmental Protection Agency and Department of the Army.

[FRL-3732-3]

*55 FR 9210*

March 12, 1990

DEPARTMENT OF DEFENSE Memorandums of Agreement (MOA); Clean Water Act Section 404(b)(1) Guidelines; Correction
ACTION: Notice; correction.

SUMMARY: This notice corrects a previously published notice *(55 FR 5510;* February 15, 1990) regarding a Memorandum of Agreement (MOA) between the Environmental Protection Agency and the Department of the Army that provides clarification and general guidance regarding the level of mitigation necessary to demonstrate compliance with the Clean Water Act section 404(b)(1) Guidelines. The previously published notice indicated that a copy of the MOA would be published as part of that notice. However, the actual text of the MOA was not in fact published. Consequently, we are correcting that notice by publishing the actual test of the MOA today, as well as re-publishing the original introductory language from the February 15, 1990 Federal Register notice.

DATES: The effective date of this MOA is February 7, 1990.

ADDRESSES: Copies of the MOA are available from:

Office of Wetlands Protection (A-104F), U.S. Environmental Protection Agency, 401 M Street SW., Washington, DC 20460.

Office of the Assistant Secretary of the Army, Department of the Army, Room 2E569, The Pentagon, Washington, DC 20310-0301.

Headquarters, U.S. Army Corps of Engineers, (CECW-OR), 20 Massachusetts Ave., NW., Washington, DC 20314-1000. FOR FURTHER INFORMATION CONTACT: Suzanne E. Schwartz of the Environmental Protection Agency at the address given above; telephone 202/475-7799, (FTS) 475-7799; or David Barrows of the Department of the Army at the address given above; telephone 202/695-1376, (FTS) 695-1376.

**TEXT:** LaJuana S. Wilcher,

Assistant Administrator for Water.

Robert W. Page,

Assistant Secretary of the Army (Civil Works).

On November 15, 1989, the Environmental Protection Agency and the Department of the Army signed a Memorandum of Agreement (MOA) that provides clarification and general guidance regarding the level of mitigation necessary to demonstrate compliance with the Clean Water Act Section 404(b)(1) Guidelines ("the Guidelines"). The agencies developed the MOA in response to questions that had arisen with respect to mitigation requirements under the Guidelines applicable to the review of applications for standard Section 404 permits. The intent of the MOA is to improve consistency

Exhibit 22, page 1

in the implementation of the Guidelines and to eliminate misunderstanding and confusion on the part of agency personnel. Accordingly, we anticipate that the MOA will increase the effectiveness of the Section 404 program by reducing delays in permit processing, minimizing ambiguity in the regulatory program and by providing agency field personnel with a clearer understanding of the procedures for determining appropriate and practicable mitigation under the Guidelines.

The Domestic Policy Council, through its Inter–Agency Task Force on Wetlands, of which both the Environmental Protection Agency and the Army Corps of Engineers are members, has been tasked by the President to develop recommendations regarding attainment of the goal of no net loss of the Nation's wetlands. While the Section 404 regulatory program, including this MOA, can contribute to the attainment of that goal, neither the 404 program nor this MOA establish a no net loss policy for the Nation's wetlands. In meeting this charter, the Task Force will hold a series of public meetings around the country to solicit public views on appropriate strategies for achieving the no net loss of wetlands goal, including both regulatory and non–regulatory approaches. These public meetings will also address specific issues such as losses associated with agricultural activities in wetlands, and losses in specific geographic areas such as the Mississippi River Delta and along the Louisiana Gulf coast. The Task Force will also consider the challenges posed in Alaska where a high proportion of developable land is wetlands and where technical difficulties exist regarding opportunities for compensatory mitigation. The Task Force will also address issues such as the important roles of state and local government and private conservation groups; the need to ensure maximum possible coordination between Section 404 permitting actions and other environmental laws, including the National Environmental Policy Act; the role of market based strategies; mitigation policy, including mitigation banking; and the role of legislation in achieving the goal. The MOA will be reconsidered in light of development of a comprehensive no net loss policy.

The MOA interprets and provides internal guidance and procedures to the Corps and EPA field personnel for implementing existing Section 404 permit regulations. The MOA does not change substantive regulatory requirements. Rather, it provides a procedural framework for considering mitigation, so that all Corps and EPA field offices will follow consistent procedures in determining the type and level of mitigation necessary to ensure compliance with the Section 404(b)(1) Guidelines. The MOA also maintains the flexibility of the Guidelines by expressly recognizing that no net loss of wetlands functions and values may not be achieved in each and every permit action. Specifically, the MOA recognizes that compensatory mitigation may not be required if mitigation is not practicable (as defined in § 230.3(q) of the Guidelines), feasible or would result in only inconsequential environmental benefits. For example, in areas of the country where wetlands constitute a majority of the land type, minor losses of wetland functions may not need to be mitigated by offsite compensatory mitigation. In making this determination field personnel may consider, among other things, the nature of the wetlands functions, cumulative effects on the watershed or ecosystem and whether wetlands in the contiguous area are protected through public ownership or permanent easement. The MOA does not establish any new mitigation requirements beyond those currently found in the Guidelines or modify the Guidelines in any way.

Since signing the MOA, the agencies have conducted discussions with affected Federal agencies regarding the MOA. As a result of those discussions, and in an attempt to clarify the agencies' intent regarding the scope and effect of the MOA, specific changes have been made to the language of the MOA. A copy of this revised MOA is published with this notice.

Memorandum Of Agreement Between the Environmental Protection Agency and the Department of the Army Concerning the Determination of Mitigation Under the Clean Water Act Section 404(b)(1) Guidelines

*I. Purpose*

The United States Environmental Protection Agency (EPA) and the United States Department of the Army (Army) hereby articulate the policy and procedures to be used in the determination of the type and level of mitigation necessary to demonstrate compliance with the Clean Water Act (CWA) Section 404(b)(1) Guidelines ("Guidelines"). This Memorandum of Agreement (MOA) expresses the explicit intent of the Army and EPA to implement the objective of the CWA to restore and maintain the chemical, physical, and biological integrity of the Nation's waters, including wetlands. This MOA is specifically limited to the Section 404 Regulatory Program and is written to provide guidance for agency field personnel on the type and level of mitigation which demonstrates compliance with requirements in the Guidelines. The policies and procedures discussed herein are consistent with current Section 404 regulatory practices and are provided in response to questions that have been raised about how the Guidelines are implemented. The MOA does not change the substantive requirements of the Guidlines. It is intended to provide guidance regarding the exercise of discretion under the Guidelines.

Although the Guidelines are clearly applicable to all discharges of dredged or fill material, including general permits and Corps of Engineers (Corps) civil works projects, this MOA focuses on standard permits (33 CFR 325.5(b)(1). n1 This focus is intended solely to reflect the unique procedural aspects associated with the review of standard permits, and does not obviate the need for other regulated activities to comply fully with the Guidelines. EPA and Army will seek to develop supplemental guidance for other regulated activities consistent with the policies and principles established in this document.

> n 1 Standard permits are those individual permits which have been processed through application of the Crops public interest review procedures (33 CFR 325) and EPA's Section 404(b)(1) Guidelines, including public notice and receipt of comments. Standard permits do not include letters of permission, regional permits, nationwide permits, or programmatic permits.

This MOA provides guidance to Corps and EPA personnel for implementing the Guidelines and must be adhered to when considering mitigation requirements for standard permit applications. The Corps will use this MOA when making its determination of compliance with the Guidelines with respect to mitigation for standard permit applications. EPA will use this MOA in developing its positions on compliance with the Guidelines for proposed discharges and will reflect this MOA when commenting on standard permit applications.

*II. Policy*

A. The Council on Environmental Quality (CEQ) has defined mitigation in its regulations at 40 CFR 1508.20 to include: avoiding impacts, minimizing impacts, rectifying impacts, reducing impacts over time, and compensating for impacts. The Guidelines establish environmental criteria which must be met for activities to be permitted under Section 404. n2 The types of mitigation enumerated by CEQ are compatible with the requirements of the Guidelines; however, as a practical matter, they can be combined to form three general types: avoidance, minimization and compensatory mitigation. The remainder of this MOA will speak in terms of these more general types of mitigation.

> n 2 (except Section 404(b)(2) applies).

B. The Clean Water Act and the Guidelines set forth a goal of restoring and maintaining existing aquatic resources. The Corps will strive to avoid adverse impacts and offset unavoidable adverse impacts to existing aquatic resources, and for wetlands, will strive to achieve a goal of no overall net loss of values and functions. In focusing the goal of no overall net loss to wetlands only, EPA and Army have explicitly recognized the special significance of the nation's wetlands resources. This special recognition of wetlands resources does not in any manner diminish the value of other waters of the United States, which are often of high value. All waters of the United States, such as streams, rivers, lakes, etc., will be accorded the full measure of protection under the Guidelines, including the requirements for appropriate and practicable mitigation. The determination of what level of mitigation constitutes "appropriate" mitigation is based solely on the values and functions of the aquatic resource that will be impacted. "Practicable" is defined at Section 230.3(q) of the Guidelines. n3 However, the level of mitigation determined to be appropriate and practicable under Section 230.10(d) may lead to individual permit decisions which do not fully meet this goal because the mitigation measures necessary to meet this goal are not feasible, not practicable, or would accomplish only inconsequential reductions in impacts. Consequently, it is recognized that no net loss of wetlands functions and values may not be achieved in each and every permit action. However, it remains a goal of the Section 404 regulatory program to contribute to the national goal of no overall net loss of the nation's remaining wetlands base. EPA and Army are committed to working with others through the Administration's interagency task force and other avenues to help achieve this national goal.

> n 3 Section 230.3(q) of the Guidelines reads as follows: "The term practicable means available and capable of being done after taking into consideration *cost, existing technology, and logistics in light of overall project purposes.*" (Emphasis supplied)

C. In evaluating standard Section 404 permit applications, as a practical matter, information on all facets of a project, including potential mitigation, is typically gathered and reviewed at the same time. The Corps, except as indicated below, first makes a determination that potential impacts have been avoided to the maximum extent practicable; remaining unavoidable impacts will then be mitigated to the extent appropriate and practicable by requiring steps to minimize impacts, and, finally, compensate for aquatic resource values. This sequence is considered satisfied where the proposed

mitigation is in accordance with specific provisions of a Corps and EPA approved comprehensive plan that ensures compliance with the compensation requirements of the Section 404(b)(1) Guidelines (example of such comprehensive plans may include Special Area Management Plans, Advance Identification areas (Section 230.80), and State Coastal Zone Management Plans). It may be appropriate to deviate from the sequence when EPA and the Corps agree the proposed discharge is necessary to avoid environmental harm (e.g., to protect a natural aquatic community from saltwater intrusion, chemical contamination, or other deleterious physical or chemical impacts), or EPA and the Corps agree that the proposed discharge can reasonably be expected to result in environmental gain or insignificant environmental losses.

In determining "appropriate and practicable" measures to offset unavoidable impacts, such measures should be appropriate to the scope and degree of those impacts and practicable in terms of cost, existing technology, and logistics in light of overall project purposes. The Corps will give full consideration to the views of the resource agencies when making this determination.

1. Avoidance. n4 Section 230.10(a) allows permit issuance for only the least environmentally damaging practicable alternative. n5 The thrust of this section on alternatives is avoidance of impacts. Section 230.10(a) requires that no discharge shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact to the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences. In addition, Section 230.10(a)(3) sets forth rebuttable presumptions that 1) alternatives for non-water dependent activities that do not involve special aquatic sites n6 are available and 2) alternatives that do not involve special aquatic sites have less adverse impact on the aquatic environment. Compensatory mitigation may not be used as a method to reduce environmental impacts in the evalaution of the least environmetnally dammaging praticable alternatives for the purposes of requirements under Section 230.10(a).

> n 4 Avoidance as used in the Section 404(b)(1) Guidelines and this MOA does not include compensatory mitigation.
>
> n 5 It is important to recognize that there are circumstances where the impacts of the project are so significant that even if alternatives are not available, the discharge may not be permitted regardless of the compensatory mitigation proposed (40 CFR 230.10(c)).
>
> n 6 Special aquatic sites include sanctuaries and refuges, wetlands, mud flats, vegetated shallows, coral reefs and riffle pool complexes.

2. Minimization. Section 230.10(d) states that appropriate and practicable steps to minimize the adverse impacts will be required through project modifications and permit conditions. Subpart H of the guidelines describes several (but not all) means for minimizing impacts of an activity.

3. Compensatory Mitigation. Appropriate and practicable compensatory mitigation is required for unavoidable adverse impacts which remain after all appropriate and practicable minimization has been required. Compensatory actions (e.g., restoration of existing degraded wetlands or creation of man-made wetlands) should be undertaken, when practicable, in areas adjacent or contiguous to the discharge site (on-site compensatory mitigation). If on-site compensatory mitigation is not practicable, off-site compensatory mitigation should be undertaken in the same geographic area if practicable (i.e., in close physical proximity and, to the extent possible, the same watershed). In determining compensatory mitigation, the functional values lost by the resource to be impacted must be considered. Generally, in-kind compensatory mitigation is preferable to out-of-kind. There is continued uncertainty regarding the success of wetland creation or other habitat development. Therefore, in determining the nature and extent of habitat development of this type careful consideration should be given to its likelihood of success. Because the likelihood of success is greater and the impacts to potentially value uplands are reduced, restoration should be the first option considered.

In the situation where the Corps is evaluating a project where a permit issued by another agency requires compensatory mitigation, the Corps may consider that mitigation as part of the overall application for purposes of public notice, but avoidance and minimization shall still be sought.

Mitigation banking may be an acceptable form of compensatory mitigation under specific criteria designed to ensure an environmentally successful bank. Where a mitigation bank has been approved by EPA and the Corps for purposes of providing compensatory mitigation for specific identified projects, use of that mitigation bank for those particular projects is considered as meeting the objectives of Section II.C.3 of this MOA, regardless of the practicability of other forms of compensatory mitigation. Additional guidance on mitigation banking will be provided. Simple purchase or "preservation"

of existing wetlands resources may in only exceptional circumstances be accepted as compensatory mitigation. EPA and Army will develop specific guidance for preservation in the context of compensatory mitigation at a later date.

*III. Other Procedures*

    A. Potential applicants for major projects should be encouraged to arrange preapplication meetings with the Corps and appropriate federal, state or Indian tribal, and local authorities to determine requirements and documentation required for proposed permit evaluations. As a result of such meetings, the applicant often revises a proposal to avoid or minimize adverse impacts after developing an understanding of the Guidelines requirements by which a future Section 404 permit decision will be made, in addition to gaining an understanding of other state or tribal, or local requirements. Compliance with other statutes, requirements and reviews, such as NEPA and the Corps public interest review, may not in and of themselves satisfy the requirements prescribed in the Guidelines.

    B. In achieving the goals of the CWA, the Corps will strive to avoid adverse impacts and offset unavoidable adverse impacts to existing aquatic resources. Measures which can accomplish this can be identified only through resource assessments tailored to the site performed by qualified professionals because ecological characteristics of each aquatic site are unique. Functional values should be assessed by applying aquatic site assessment techniques generally recognized by experts in the field and/or the best professional judgment of Federal and State agency representatives, provided such assessments fully consider ecological functions included in the Guidelines. The objective of mitigation for unavoidable impacts is to offset environmental losses. Additionally for wetlands, such mitigation should provide, at a minimum, one for one functional replacement (i.e., no net loss of values), with an adequate margin of safety to reflect the expected degree of success associated with the mitigation plan, recognizing that this minimum requirement may not be appropriate and practicable, and thus may not be revelant in all cases, as discussed in Section II.B of this MOA. n7 In the absence of more definitive information on the functions and values of specific wetlands sites, a minimum of 1 to 1 acreage replacement may be used as a reasonable surrogate for no net loss of functions and values. However, this ratio may be greater where the functional values of the area being impacted are demonstrably high and the replacement wetlands are of lower functional value or the likelihood of success of the mitigation project is low. Conversely, the ratio may be less than 1 to 1 for areas where the functional values associated with the area being impacted are demonstrably low and the likelihood of success associated with the mitigation proposal is high.

        n 7 For example, there are certain areas where, due to hydrological conditions, the technology for restoration or creation of wetlands may not be available at present, or may otherwise be impracticable. In addition, avoidance, minimizaion, and compensatory mitigation may not be practicable where there is a high proportion of land which is wetlands. EPA and Army, at present, are discussing with representatives of the oil industry, the potential for a program of accelerated rehabilitation of abandoned oil facilities on the North Slope to serve as a vehicle for satisfying necessary compensation requirements.

    C. The Guidelines are the environmental standard for Section 404 permit issuance under the CWA. Aspects of a proposed project may be affected through a determination of requirements needed to comply with the Guidelines to achieve these CWA environmental goals.

    D. Monitoring is an important aspect of mitigation, especially in areas of scientific uncertainty. Monitoring should be directed toward determining whether permit conditions are complied with and whether the purpose intended to be served by the condition is actually achieved. Any time it is determined that a permittee is in non–compliance with mitigation requirements of the permit, the Corps will take action in accordance with 33 CFR Part 326. Monitoring should not be required for purposes other than these, although information for other uses may accrue from the monitoring requirements. For projects to be permitted involving mitigation with higher levels of scientific uncertainty, such as some forms of compensatory mitigation, long term monitoring, reporting and potential remedial action should be required. This can be required of the applicant through permit conditions.

    E. Mitigation requirements shall be conditions of standard Section 404 permits. Army regulations authorize mitigation requirements to be added as special conditions to an Army permit to satisfy legal requirements (e.g., conditions necessary to satisfy the Guidelines) (33 CFR 325.4(a)). This ensures legal enforceability of the mitigation conditions and enhances the level of compliance. If the mitigation plan necessary to ensure compliance with the Guidelines is not reasonably implementable or enforceable, the permit shall be denied.

F. Nothing in this document is intended to diminish, modify or otherwise affect the statutory or regulatory authorities of the agencies involved. Furthermore, formal policy guidance on or interpretation of this document shall be issued jointly.

G. This MOA shall take effect on February 7, 1990, and will apply to those completed standard permit applications which are received on or after that date. This MOA may be modified or revoked by agreement of both parties, or revoked by either party alone upon six (6) months written notice.

Dated: February 6, 1990.

Robert W. Page,

Assistant Secretary of the Army (Civil Works).

LaJuana S. Wilcher,

Assistant Administrator for Water, U.S. Environmental Protection Agency.

[FR Doc. 90–5591 Filed 3–9–90; 8:45 am]

BILLING CODE 6560–50–M