# DEPARTMENT OF THE ARMY PERMIT

Permittee __Fairbanks Gold Mining, Incorporated__

Permit No. __4-920574, Fish Creek 23__

Issuing Office __U. S. Army Engineer District, Alaska__

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description: Mechanized landclearing and excavation of up to approximately 377 acres of wetlands. Discharge approximately 4,526,140 cubic yards of fill material into approximately 103 acres of waters of the United States in conjunction with the construction of impoundment structures, stockpiles, rock dumps, culverted road crossings, and other components of an open pit gold mine near Fairbanks, Alaska.

All work will be performed in accordance with the attached plans, a total of 33 sheets, dated as follows: Vicinity Map dated March 16, 1993; 3 sheets undated; 7 sheets dated November 10, 1992; 3 sheets dated November 30, 1992; 4 sheets dated January 5, 1993; 1 sheet dated January 7, 1993; 3 sheets dated January 11, 1993; 1 sheet dated January 13, 1993; and 10 sheets dated February 8, 1993.

Project Location: Sections 8 through 10, 13 through 17, and 20 through 22, T. 2 N., R. 2 E.; and sections 7, 8, 17, and 18, T. 2 N., R. 3 E., Fairbanks Meridian; Upper Fish Creek watershed, including Barnes and Upper Barnes Creeks, Walters Creek, Monte Cristo Creek, Pearl Creek, and Fish Creek drainages. The project site would be located approximately 15 miles northeast of Fairbanks, North Star Borough, Alaska.

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on __May 31, 1999__. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification of this permit from this office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and state coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

ENG FORM 1721, Nov 86        EDITION OF SEP 82 IS OBSOLETE.        (33 CFR 325 (Appendix A))

1

Exhibit 24, page 1

4. If you sell the property associated with this permit, you must obtain the signature of the new owner in the space provided and forward a copy of the permit to this office to validate the transfer of this authorization.

5. If a conditioned water quality certification has been issued for your project, you must comply with the conditions specified in the certification as special conditions to this permit. For your convenience, a copy of the certification is attached if it contains such conditions.

6. You must allow representatives from this office to inspect the authorized activity at any time deemed necessary to ensure that it is being or has been accomplished in accordance with the terms and conditions of your permit.

Special Conditions:

1. All of the measures described in the Fort Knox Gold Project Reclamation Plan shall be included in the permit by reference. All measures shall become enforceable requirements of the Section 404 permit.

Continued on 2A

Further Information:

1. Congressional Authorities: You have been authorized to undertake the activity described above pursuant to:

( ) Section 10 of the Rivers and Harbors Act of 1899 (33 U.S.C. 403).

(X) Section 404 of the Clean Water Act (33 U.S.C. 1344).

( ) Section 103 of the Marine Protection, Research and Sanctuaries Act of 1972 (33 U.S.C. 1413).

2. Limits of this authorization.

   a. This permit does not obviate the need to obtain other Federal, state, or local authorizations required by law.

   b. This permit does not grant any property rights or exclusive privileges.

   c. This permit does not authorize any injury to the property or rights of others.

   d. This permit does not authorize interference with any existing or proposed Federal project.

3. Limits of Federal Liability. In issuing this permit, the Federal Government does not assume any liability for the following:

   a. Damages to the permitted project or uses thereof as a result of other permitted or unpermitted activities or from natural causes.

   b. Damages to the permitted project or uses thereof as a result of current or future activities undertaken by or on behalf of the United States in the public interest.

   c. Damages to persons, property, or to other permitted or unpermitted activities or structures caused by the activity authorized by this permit.

   d. Design or construction deficiencies associated with the permitted work.

Special Conditions Continued:

2. All of the measures described in the Fort Knox Gold Project Monitoring Plan shall be included in the permit by reference. All measures shall become enforceable requirements of the Section 404 permit. A full metals scan will be added to the analytes to be monitored in the tailings stream (liquor and solids). Additionally, the permittee will make all records of analysis of the waste stream available to state and Federal resource agencies on request, including authority to make copies of these records.

3. The permittee shall develop to the satisfaction of the District Engineer (DE), a plan to monitor the impacts of the tailings water on avian life. This plan must be approved by the DE prior to the discharge of any tailings into the tailings impoundment. Development of the plan shall be in consultation with the Corps and the U.S. Fish and Wildlife Service.

4. Monitoring results shall be analyzed and presented to the DE and the Environmental Protection Agency Assistant Regional Administrator for Alaska in an annual report, also containing raw data, that includes but is not limited to the following:

a. Is the ground water collection system adequate to collect all ground water that may be contaminated by seepage from the tailings impoundment?

b. Update water balance regularly as data becomes available. Does the system actually operate as planned, with zero discharge? How much water remains unaccounted for?

c. How does the composition of the effluent compare to pilot study effluent?

d. Compare water quality of seepage water to predicted water quality. If different, is the reason that the nature of the effluent differs from that predicted or is the treatment system functioning differently than expected?

e. Does the level of potentially toxic constituents of the tailings change with time as expected?

5. Before construction of the project authorized by this permit begins, contingency plans will be completed and submitted to the DE that generally describe actions that will be taken if:

a. The ground water collection system is found to be inadequate to collect all water tailings seepage water.

b. Tailings water proves detrimental to avian life.

c. There is a need to return the seepage water to the tailings impoundment for longer than expected. The contingency plan should describe any resulting changes in the reclamation plan.

   e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision. This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

   a. You fail to comply with the terms and conditions of this permit.

   b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

   c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions. General condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

_____     _____
(PERMITTEE)    AND TITLE                                (DATE)

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

FOR: _____     _____
(DISTRICT ENGINEER)    Colonel John W. Pierce            (DATE)
Don M. Kohler, Chief
Project Evaluation Section - North
Regulatory Branch

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below.

_____     _____
(TRANSFEREE)                                             (DATE)

☆U.S. GOVERNMENT PRINTING OFFICE: 1986 — 717-425

Exhibit 24, page 4

DEPARTMENT OF THE ARMY PERMIT EVALUATION

AND DECISION DOCUMENT

APPLICANT: Fairbanks Gold Mining, Incorporated
APPLICATION NO.: 4-920574
WATERWAY NO.: Fish Creek 23

This document constitutes my Environmental Assessment, Statement of Findings and review and compliance determination according to the 404(b)(1) Guidelines for the proposed work (applicant's preferred alternative) [described in the attached public notice], and the proposed water monitoring plan and a reclamation plan [described in the later notice---also attached].

I.    **Proposed Project**: The location and description of work are described in the attached public notices.

Documents listed below are referenced and incorporated to the extent noted later in this document:

1.    DRAFT Project Description for the Fort Knox Mine. August 1992. Prepared by Fairbanks Gold Mining, Incorporated. (Fort Knox #1).

2.    Fort Knox Project Jurisdictional Wetland Survey. March 1993. Prepared by Buell & Associates, Incorporated. (Fort Knox #2).

3.    Fort Knox Project, Environmental Baseline Report (Vols. 1 and 2). May 1992. Prepared by various private consultants for Fairbanks Gold Mining, Incorporated. (Fort Knox #3).

4.    Environmental Assessment: Fort Knox Mine. August 1993. Prepared by CH2M Hill for Fairbanks Gold Mining, Incorporated. (Fort Knox #4). [NOTE: This document was not requested nor has it been adopted by the U.S. Department of the Army (DA).]

5.    Water Resources Management Plan: Fort Knox Project. March 1994. Prepared by Fairbanks Gold Mining, Incorporated. (Fort Knox #5).

6.    Fort Knox Project Reclamation Plan. July 15, 1993, updated March 14, 1994. (Fort Knox #6).

7.    Fort Knox: Tailing Storage Facility Alternative Evaluation. June 12, 1992. (Fort Knox #7).

8.    Draft Golden Valley Electric Association Transmission Line Extension, Gold Hill Substation to Fort Knox Mine. December 30, 1992. Fort Knox #8). Plus the Final Report: Cultural

\* 1 \*

Exhibit 24, page 5

<u>Public facilities and services</u>: The construction, repair and maintenance of the roadways in and adjacent to the project site would constitute a service benefit. Construction and operation of the mine facilities would require the use of electricity which would be provided for a fee by the public utility service. If the project induced increases in population levels there would presumably be a commensurate increase in demand for public service and facilities.

<u>Regional growth</u>: Labor force requirements for the construction and operation of the upland and mining facilities may increase population levels in the area, elevating the potential for regional growth.

<u>Employment</u>: The construction and operation of the facility would provide employment opportunities for the mining industry work force and interests. The applicant has indicated that operation of the facilities would employ up to 300 individuals for the work forces.

<u>Business activity</u>: Local businesses, including food, lodging, storage, construction, communications, finance, transportation, and other services, would benefit from increased expenditures associated with the construction and operation of the facility. The applicant anticipates that additional jobs would be created in these support businesses. See discussion of business activity in Ft. Knox #4.

V.  **Findings:**

   A.  **Other authorizations:**

       **Certificate of Reasonable Assurance (Alaska Department of Environmental Conservation):**

       Date <u>10/06/93</u> issued<u>_X_</u> denied___ waived___
       Special Conditions  Yes___  No<u>_X_</u> (If yes, see attached)

       Pursuant to 33 CFR 320.4(d), the certification of compliance with applicable effluent limitations and water quality standards required under the provisions of section 401 of the Clean Water Act are considered conclusive with respect to water quality consideration. The Regional Administrator, Environmental Protection agency (EPA), has advised the DA of other water quality aspects to be taken into consideration in their submittal of a Technical Assistance Report.

   B.  A complete application was received on <u>03/18/93</u>. A public notice describing the project was issued on <u>03/23/93</u>, and sent to all interested parties (mailing list) including appropriate State and Federal agencies. The public comment period was further extended to <u>05/24/93</u>. A public notice referencing the same documents for review at a COE office was mailed on the same day to all others. All comments received on this action have been reviewed and are summarized below.

* 32 *

1. Summary of comments received.

    a. Federal agencies:

        i.   U.S. Environmental Protection Agency (EPA) had the following concerns:

             05/03/93

             *   EPA intends on having the Technical Assistance Report completed by July 1, 1993.

             05/20/93

             *   No discharge of waste water to waters of the United States is expected so the project is not required to have a National Pollutant Discharge Elimination System permit.

             *   Virtually the entire Fish Creek Valley bottom within the project site has been disturbed by placer gold mining.

             *   If the Fort Knox project was not built, recovery of the Fish Creek Valley would occur some time after the cessation of placer mining. ...we predict that ecological recovery of the valley would take several decades.

             *   We request the opportunity to offer our comments on the reclamation plan when it is finalized.

             *   Construction and final reclamation of the Fort Knox mine is likely to reduce the input of sediments to Fish Creek from existing operations.

             *   The EPA recommends that, at the time of mine closure, the EPA have the opportunity to review existing data and require additional monitoring.

             *   EPA does not object to a permit being issued for the proposed project provided EPA is given the opportunity to review and comment on the final reclamation plan before the permit is issued and EPA is given the opportunity to review and comment on data regarding toxic constituents of the tailings impoundment.

             07/29/93

             *   Technical Assistance Report (TAR) submitted to DA.

             *   The Fort Knox Gold Mine is likely to have a significant impact on the human environment of Fish Creek and the Fairbanks area. These

\* 33 \*

# FORT KNOX PROJECT MONITORING PLAN

Submitted to:

Alaska Department of Environmental Conservation
Northern Regional Office
1001 Noble Street, Suite 350
Fairbanks, Alaska 99701

and

U.S. Army Corps of Engineers
Alaska District - Regulatory Branch
P.O. Box 898
Anchorage, Alaska 99506-0898

Submitted by:

Fairbanks Gold Mining, Inc.
A Subsidiary of Amax Gold Inc.
P.O. Box 73726
Fairbanks, Alaska 99707-3726

August 20, 1993

## 1.3 PROJECT DESCRIPTION

Fairbanks Gold Mining, Inc. proposes to develop the Fort Knox ore body approximately 15 miles northeast of Fairbanks, Alaska. The proposed mine site is located on state and private lands in the upper headwaters of Fish Creek Valley, approximately 4 miles southeast of Cleary Summit. The project site is accessible by existing roads from the Steese Highway at Cleary Summit. Development of the Fort Knox Project would involve an open-pit mine and related facilities to recover gold. Project design is based on a deposit of 200 million tons of ore, which would be mined at a rate of 35,000 to 50,000 tons per day. The project life is 16 years, possibly longer if additional ore is delineated.

In the beneficiation procedures, the gold ore is crushed, then ground, and processed as a slurry in a mill adjacent to the mine. The gold is extracted in tanks containing a cyanide solution that dissolves the gold. Next the gold is captured by activated carbon, then stripped from the carbon and recovered from solution by electrolysis or precipitation. The concentration of cyanide in the remaining slurry is detoxified in tanks before the tailing are released to the tailing pond. Tailing is piped to, and deposited in, a 1,147-acre impoundment (includes the area of the dam structure) in Fish Creek Valley. The tailing dam is an earth-filled structure designed to hold all process water from the mill, as well as surface runoff water. The dam is designed and maintained to contain the 100-year, 24-hour storm event in addition to the average 30-day spring breakup. The water in the impoundment is intended to contain levels of certain contaminants above drinking and/or aquatic water standards. Contaminant levels will be maintained below toxic levels for avian and terrestrial wildlife species. Impoundment water is not discharged, however, it will be recycled to the mill for reuse in the beneficiation process of the gold ore. Specific surface and groundwater quality and quantity data for the project area and projected post-mining water quality information Is addressed in the _Draft Fort Knox Project Water Resources Management Plan - December, 1992_.

To ensure zero discharge, a seepage control system at the toe of the dam will collect any seepage and return it to the tailing impoundment. A series of three groundwater interceptor wells, just downgradient of seepage control system, will collect groundwater and seepage and pump the water back into the tailing impoundment. Observation wells to monitor ground water quality will be installed downstream of the seepage control system.

A water supply reservoir, dam, causeway, and spillway complex, will cover approximately 175 acres and will be located on Fish Creek 3 miles below the tailing impoundment. Make-up water from the reservoir will be pumped back to the mill for use in the beneficiation process of the gold ore.

The project will employ 200 to 275 workers in three shifts, 24 hours per day, 365 days