DEPARTMENT OF THE ARMY PERMIT

Permittee: J.R. Simplot Company

Permit No. 071-OYC-4-003253

Issuing Office: Walla Walla District

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official of that office acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

Project Description:

Discharge fill material for the construction of a dam, a diversion structure, and a clay cap over a spring area in conjunction with the construction of a tailings impoundment. Location and description as shown on the attached drawing sheets.

THE PLANS AND DRAWINGS (SHEET 1 THROUGH SHEET 5), ENCLOSED HERETO, ARE MADE A PART OF THIS PERMIT.

Project Location:

Tygee Creek and adjacent wetlands, Secs. 15, 16, 21 and 22, T.8S., R.46E., B.M., Caribou County, Idaho.

Permit Conditions:

General Conditions:

1. The time limit for completing the work authorized ends on January 31, 1994 _____. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification of this permit from this office, which may require restoration of the area.

3. If you discover any previously unknown historic or archeological remains while accomplishing the activity authorized by this permit, you must immediately notify this office of what you have found. We will initiate the Federal and state coordination required to determine if the remains warrant a recovery effort or if the site is eligible for listing in the National Register of Historic Places.

ENG FORM 1721, Nov 86          EDITION OF SEP 82 IS OBSOLETE.          (33 CFR 325 (Appendix A))

1

Exhibit 25, page 1

e. Damage claims associated with any future modification, suspension, or revocation of this permit.

4. Reliance on Applicant's Data: The determination of this office that issuance of this permit is not contrary to the public interest was made in reliance on the information you provided.

5. Reevaluation of Permit Decision. This office may reevaluate its decision on this permit at any time the circumstances warrant. Circumstances that could require a reevaluation include, but are not limited to, the following:

   a. You fail to comply with the terms and conditions of this permit.

   b. The information provided by you in support of your permit application proves to have been false, incomplete, or inaccurate (See 4 above).

   c. Significant new information surfaces which this office did not consider in reaching the original public interest decision.

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measures ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions. General condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

_____     _____Feb 1, 1991_____
(PERMITTEE)   SR. VICE PRESIDENT                              (DATE)


This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

_____ MAJ. ___     _____Feb 26, 91_____
(DISTRICT ENGINEER)                                           (DATE)
   Robert D. Volz
   Lieutenant Colonel, Corps of Engineers
   District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below.


_____     _____
(TRANSFEREE)                                                   (DATE)

3

☆ U.S. GOVERNMENT PRINTING OFFICE: 1985 — 717-425

Exhibit 25, page 2

<u>Department of the Army Permit Evaluation</u>

<u>and Decision Document</u>

Applicant:  J.R. Simplot Company

Application No:  071-OYC-4-003253

This document constitutes my Environmental Assessment, Statement of Findings and review and compliance determination according to the 404(b)(1) guidelines for the proposed work (applicant's preferred alternative) described in the attached public notice.

I.   Proposed Project:

The construction of a dam in Tygee Creek and adjacent wetlands for a tailings pond, a diversion structure in Tygee Creek, and the placement of a clay cap over a spring area.

Tygee Creek is proposed to be diverted into a new channel around the proposed tailings pond. On the downstream side of the proposed dam, the creek was originally proposed to be placed into a pipe which would return flows to Tygee Creek. A concrete outlet structure was proposed to be constructed in Tygee Creek at the outlet of the pipe. In response to objections to this design, the pipe and concrete outlet structure have been eliminated. Under current plans, the new Tygee Creek diversion channel will be extended to the northeast where it will then turn to the northwest and run downslope to Tygee Creek. Drop structures will be constructed in this stream to handle Tygee Creek flows and provide for fish passage.

II.  Environmental and Public Interest Factors Considered:

A. Purpose and need:
The purpose of the dam is to create an impoundment for the disposal of mine tailings from the Smoky Canyon Mine. The tailings are composed of silt and clay particles suspended in water. A disposal site with a storage capacity for 25 years of tailings is needed for continued operation of the mine. The purpose of the diversion structure is to divert Tygee Creek flows around the tailings pond. The purpose of the clay cap is to prevent seepage of water from the tailings pond into the groundwater.

B. Alternatives (33 CFR 320.4(a)(2), 40 CFR 230.10)

(1) No action
Without the proposed tailings pond, the Smoky Canyon Mine would have to cease operations, resulting in the loss of 90 jobs

turbulence; water column stratification; discharge vessel speed and direction; rate of discharge; dredged material characteristics; number of discharges per unit of time; and any other relevant factors affecting rates and patterns of mixing

D. Biological characteristics and anticipated changes (check applicable blocks and provide concise description of impacts)

(X) special aquatic sites (wetlands, mudflats, coral reefs, pool and riffle areas, vegetated shallows, sanctuaries and refuges, as defined in 40 CFR 230.40-45)

Approximately 137 acres of wet meadow and scrub-shrub wetlands will be eliminated by the proposed tailings pond. This loss will be permanent because the pond will be reclaimed with upland vegetation and will be at a higher elevation lacking the stream drainage and subirrigation currently supporting the existing wetland.

(X) habitat for fish and other aquatic organisms

Benthos and periphyton that currently occur in the 13,000 foot reach of Tygee Creek to be relocated around the proposed tailings pond will be eliminated over the short term. Over the long term, new benthos and periphyton communities will develop in the new stream channel and partially replace the communities eliminated by the proposed tailings pond.

The reaches of Tygee and Roberts Creeks impacted by the proposed project do not have significant trout populations or spawning activity due to the morphology of the streams, their heavily silted bottoms, and the high salinity of their water at the alkali flats, which likely inhibits upstream migration. The small trout populations that exist in the affected reaches will be displaced by the project. The relocated stream channel will have boulders placed to provide habitat for aquatic organisms and to allow for fish passage. Over the long term, fish may return to the relocated stream channel. Drop structures will be constructed in the section of the channel below the tailings dam to provide for fish passage.

(X) wildlife habitat (breeding, cover, food, travel, general)

Construction of the proposed tailings pond will eliminate approximately 500 acres of grazing habitat used primarily by small numbers of mule deer and elk. Animals that have grazed in the project area in the past will be displaced to other areas in the vicinity. The inundation of the riparian wetlands would negatively impact potential moose habitat, although their use has not been documented for this area. This impact is expected to be minor because the loss of habitat would affect small numbers of animals primarily during summer and transitional periods when

      ( )  The discharge does not include all appropriate and practicable measures to minimize potential harm to the aquatic ecosystem, namely...

      ( )  There is not sufficient information to make a reasonable judgment as to whether the proposed discharge will comply with the guidelines.

C. Public interest determination: I find that issuance of a Department of the Army permit (with special conditions), as prescribed by regulations published in 33 CFR Parts 320 to 330, and 40 CFR Part 230:

__X__ is not contrary to the public interest      _____ is contrary to the public interest

6 Feb 91
Date

A. Bradley Daly
Preparer

_____
Date

_____
Reviewer

7 Feb 91
Date

Rbt D. V__
Approving Official

# DEPARTMENT OF THE ARMY PERMIT

**Permittee:** J.R. Simplot Company

**Permit Number:** 071-0YC-4-003253, Modification No. 1

**Issuing Office:** Walla Walla District

NOTE: The term "you" and its derivatives, as used in this permit, means the permittee or any future transferee. The term "this office" refers to the appropriate district or division office of the Corps of Engineers having jurisdiction over the permitted activity or the appropriate official acting under the authority of the commanding officer.

You are authorized to perform work in accordance with the terms and conditions specified below.

**Project Description:**

Discharge approximately 52,000 cubic yards of dredged and fill material into 1.8 acres of Tygee Creek and adjacent wetlands to expand and raise the existing Tailings Pond 2 dam.

THE PROJECT SHALL BE CONSTRUCTED ACCORDING TO THE ENCLOSED PLANS AND DRAWINGS (SHEET 1 THROUGH 4), dated October 28, 1996.

**Project Location:**

Tygee Creek, Sec. 15, T.8S., R.46E., Caribou County, Idaho

**Permit Conditions:**

**General Conditions:**

1. The time limit for completing the work authorized ends on <u>December 31, 2011</u>. If you find that you need more time to complete the authorized activity, submit your request for a time extension to this office for consideration at least one month before the above date is reached.

2. You must maintain the activity authorized by this permit in good condition and in conformance with the terms and conditions of this permit. You are not relieved of this requirement if you abandon the permitted activity, although you may make a good faith transfer to a third party in compliance with General Condition 4 below. Should you wish to cease to maintain the authorized activity or should you desire to abandon it without a good faith transfer, you must obtain a modification from this permit from this office, which may require restoration of the area.

3253

Such a reevaluation may result in a determination that it is appropriate to use the suspension, modification, and revocation procedures contained in 33 CFR 325.7 or enforcement procedures such as those contained in 33 CFR 326.4 and 326.5. The referenced enforcement procedures provide for the issuance of an administrative order requiring you to comply with the terms and conditions of your permit and for the initiation of legal action where appropriate. You will be required to pay for any corrective measure ordered by this office, and if you fail to comply with such directive, this office may in certain situations (such as those specified in 33 CFR 209.170) accomplish the corrective measures by contract or otherwise and bill you for the cost.

6. Extensions. General condition 1 establishes a time limit for the completion of the activity authorized by this permit. Unless there are circumstances requiring either a prompt completion of the authorized activity or a reevaluation of the public interest decision, the Corps will normally give you favorable consideration to a request for an extension of this time limit.

Your signature below, as permittee, indicates that you accept and agree to comply with the terms and conditions of this permit.

_____   6/2/97

_____   5/23/97
(PERMITTEE)                       (DATE)

This permit becomes effective when the Federal official, designated to act for the Secretary of the Army, has signed below.

_____   23 May 97
(DISTRICT ENGINEER)               (DATE)
Donald R. Curtis, Jr.
Lieutenant Colonel, Corps of Engineers
District Engineer

When the structures or work authorized by this permit are still in existence at the time the property is transferred, the terms and conditions of this permit will continue to be binding on the new owner(s) of the property. To validate the transfer of this permit and the associated liabilities associated with compliance with its terms and conditions, have the transferee sign and date below.

_____   _____
(TRANSFEREE)                      (DATE)

4

TOTAL P.02

Exhibit 25, page 7

Department of the Army Permit Evaluation
and Decision Document

Applicant: J.R. Simplot Company

Application No: 071-OYC-4-003253, Modification No.1

This document constitutes my Environmental Assessment, Statement of Findings and review and compliance determination according to the 404(b)(1) guidelines for the proposed work (applicant's preferred alternative) described in the attached public notice.

I. Proposed Project:

J.R. Simplot Company proposes to discharge approximately 52,000 cubic yards of dredged and fill material onto the existing tailings dam and into an additional 1.8 acres of waters of the United States, including wetlands and the abandoned channel of Tygee Creek, to expand and raise the existing Tailings Pond 2 (TP 2) dam.

Department of the Army permit 071-OYC-4-003253 was issued to the J.R. Simplot Company (Simplot) on February 26, 1991 to discharge dredged and fill material to construct a dam in Tygee Creek and adjacent wetlands for a tailings pond, to construct a diversion structure in Tygee Creek, and to discharge clay to cap over a spring area.

Tygee Creek has been diverted into a new channel around the proposed tailings pond. On the downstream side of the dam, the creek was extended to the northeast of the valley and then turned to the northwest to run downslope to Tygee Creek. The existing dam elevation is approximately elevation 6425. The existing level of the tailings pond is approximately 6415 and approximately 43 percent (59 acres) of the originally mapped wetlands are already inundated by the tailings waters and silt. Approximately 220 acres of the proposed 500 acre impoundment area has been inundated with water and silt and 25 percent of the entire impoundment capacity has been used.

The tailings are the waste by-product of the phosphate mineral transportation method employed by J.R. Simplot Company (Simplot). Simplot combines the mined phosphate rock with water to create a slurry which is then transported offsite by pressurized pipeline. The tailings are composed of silt and clay particles suspended in water. The impoundment settles silt and clay. The water is recycled for further use in the slurry.

II. Environmental and Public Interest Factors Considered:

A. Purpose and need:

1

reclamation hydrology, the wetland loss will be permanent. This is based on the prediction that the resulting valley floor will be at a higher elevation lacking the stream drainage and sub irrigation currently supporting the existing wetland. Consequently, the area is proposed to be reclaimed with upland vegetation.

(X) habitat for fish and other aquatic organisms: This project will allow the expansion of TP 2. Tygee Creek has already been relocated around the tailings pond and any substantial adverse impacts to Tygee Creek fish and aquatic organisms and their habitat has already occurred.

The proposed work would eliminate additional habitat for aquatic organisms in abandoned Tygee Creek and adjacent wetlands below the impoundment dam. However, these impacts while adverse would be minor as Tygee Creek's relocated segment has been recolonized with new benthos, periphyton, and wetland communities. These partially replace the communities eliminated by the previously authorized work.

Seventy-eight acres of preexisting natural wetlands/aquatic habitat upstream of the dam will be inundated with tailings water and sediment. These habitats will be converted from scrub-shrub and meadow to open water. Overall the habitat diversity and complexity will decline with this conversion. After the tailings pond reaches capacity, slurry deposition will cease and the area will begin drying. Temporarily, areas will remain with shallow surface ponding. These areas will decrease in size and number. Successional plant and animal communities will colonize the site. Open water ponds will transform to submerged wetlands and ultimately to uplands. During that conversion, habitat diversity and complexity will increase. Long term aquatic habitat impacts are uncertain and will depend on the seasonal moisture and drying of the tailings. Due to the uncertainty regarding future site hydrology, the conversion of this area to uplands is presumed. Overall, aquatic habitat is expected to decrease with substantial adverse impacts to aquatic organisms.

(X) wildlife habitat (breeding, cover, food, travel, general): Approximately 220 acres of valley habitat (including 59 acres of wetlands have been altered). Expansion of the proposed tailings pond would eliminate the remaining 280 acres of grazing habitat used primarily by small numbers of mule deer and elk. With the proposed work, animals that have grazed in the project area in the past will be displaced to other areas in the vicinity. This impact is expected to be minor because the loss of habitat would affect small numbers of animals and primarily during summer and transitional periods when available forage habitat is relatively abundant elsewhere. Since the project area is not considered to be winter range for elk or deer, the loss of forage habitat during winter, when adequate forage is critical to

6

survival, would not significantly impact the area's big game populations.

Until the resultant tailings material has dried enough to support the weight of large mammals, there may be occasional animal mortality in the tailing impoundment due to entrapment. Over the long term, the project would have only minor impacts upon deer and elk because, once the tailings pond is abandoned, it is expected to dry and then be reclaimed with native vegetation. This will enable game to use the area once again for foraging during summer and transitional periods.

Small mammals found in the project area include the least chipmunk, deer mouse, montane vole, meadow vole, southern redbacked vole, northern flying squirrel, and long-tailed vole. The most abundant of these is the deer mouse, which inhabits all vegetation types in the project area. These animals occupying the area of the proposed tailings pond will be displaced to adjacent areas or eliminated.

The applicant has observed that Sage grouse populations known to exist in the affected valley area relocated after the initial dam construction and impoundment activities. Sage grouse inhabit the upland sagebrush areas adjacent to Tygee Creek throughout the year. During the winter, they are dependent upon sagebrush areas for food and cover. In the summer, they use the open wetland meadows for feeding and brood rearing and the sagebrush areas for cover. The applicant observed that the lek which existed prior to the original impacts has relocated. Sage grouse leks are the focal point and the most important component of their breeding complex. The expansion of the dam and the subsequent expansion of the proposed tailings pond will eliminate an additional 280 acres of valley floor (including 78 acres if wetlands). The project is likely to adversely affect current sage grouse population's brood-rearing habitat, winter and summer range, and watering sites. From experience with the initial 220 acre impacts, the sage grouse population will relocate to areas with similar habitat found downstream of the project area.

Two greater sandhill crane nesting sites were known to exist in the project area the previously authorized work. It is not certain if they relocated or remain in the project area. If they remain these nesting sites would be eliminated by the proposed tailings pond expansion and be relocated to other suitable nesting habitat.

(X) endangered or threatened species. The bald eagle is known to occur in the project area as an infrequent migrant or transient. Surveys of the project area did not locate any nest sites. No impacts to threatened or endangered species are anticipated as a result of the proposed project.

7

B. 404(b)(1) Compliance/Non-compliance Review (40 CFR 230.12).

( ) The discharge complies with the guidelines.

(X) The discharge complies with the guidelines, with the inclusion of the appropriate and practicable conditions listed above (in III.C.5.) to minimize pollution or adverse effects to the affected ecosystem.

( ) The discharge fails to comply with the requirements of these guidelines because:

( ) There is a practicable alternative to the proposed discharge that would have less adverse effect on the aquatic ecosystem and that alternative does not have other significant adverse environmental consequences.

( ) The proposed discharge will result in significant degradation of the aquatic ecosystem under 40 CFR 230.10(b) or (c).

( ) The discharge does not include all appropriate and practicable measures to minimize potential harm to the aquatic ecosystem, namely.

( ) There is not sufficient information to make a reasonable judgment as to whether the proposed discharge will comply with the guidelines.

C. Public interest determination: I find that issuance of a Department of the Army permit (with special conditions), as prescribed by regulations published in 33 CFR Parts 320 to 330, and 40 CFR Part 230:

__X__ is not contrary to the public interest      ____ is contrary to the public interest

| May 12, 1997 | Robert A. Brochu |
|---|---|
| Date | Preparer |
| 5-21-97 | *A. Bradley Daly* (signature) |
| Date | Reviewer |
| 23 May 97 | *Patty Mully Major* (signature) For Donald R. Curtis |
| Date | Approving Official |

16    Lieutenant Colonel, Corps of Engineers
      District Engineer



**IDAHO DEPARTMENT OF HEALTH AND WELFARE**
**DIVISION OF ENVIRONMENTAL QUALITY**

224 South Arthur, Pocatello, ID 83204-3202, (208) 236-6160

Post-It™ brand fax transmittal memo 7671 | # of pages ▸ 3
To: Linda Trawick | From: Eddie Rideman
Co: WW Corp | Co: ID Corp
Dept: - Regulatory - | Phone #: 522-1645
Fax # (509) 527-7823 | Fax # 509 522-2994

December 4, 1996

Mr. Wayne Perkins
P.O. Box 1270
Afton, Wyoming

Re: U.S. Army Corp of Engineers, Public notice of Application for Permit Reference No. 071-YOC-4-003253 Mod. #1

Dear Mr. Perkins:

As provided in Section 401, Water Pollution Control Act Amendments, P.L. 92-500, as amended, we have reviewed your application to discharge approximately 52,000 cubic yards of dredged and fill material into 1.8 acres of waters of the United States (Tygee Creek) to expand and raise the existing phosphate tailings pond dam for Tailings Pond 2 (TP2). The purpose of the discharge is to raise the height of the tailings pond dam in order to impound more water and tailings behind the dam. The project location is Tygee Creek, Section 15, T.8S., R46E., Boise Meridian, approximately 30 miles east of Soda Springs, Caribou County, Idaho. Water quality certification has been considered and protection requires the following:

> Petroleum products, hazardous, toxic and/or deleterious materials shall not be stored, disposed or accumulated adjacent to or in the immediate vicinity of State waters unless adequate measure and controls are provided to ensure those materials will not enter State waters as the result of high water, precipitation runoff, wind, storage facility failure, accidents in operation, or unauthorized third party activities.

Pursuant to compliance with the above condition, on behalf of the Idaho Department of Health and Welfare, We certify that construction will comply with the applicable requirements of Sections 301, 302, 303, 306 and 307, P.L. 92-500, as amended, and the construction will not cause a violation of the Idaho Water Quality Standards and Wastewater Treatment Requirements.

Exhibit 25, page 12

Wayne Perkins
December 4, 1996
Page 2

This certification does not imply approval of the construction activity by other agencies of the State of Idaho.

Sincerely,

Mark Lowe
Regional Administrator

cc: Robert Brochu
    Scott Benson
    Eric Verner

TOTAL P.02