10 SEP 1992

CECW-OR  (CENPD-CO/27 Feb 92)  (1145)  1st End  Ms. Smith/
cs/202-272-0817

SUBJECT: Permitting of Mine Tailings

Commander, CECW-OR, 20 Massachusetts Avenue, NW, Washington, DC 20314-1000

FOR Commander, CENPD-OP, P.O. Box 2870, Portland, OR 97208-2870

1. Reference your request to review a recommended resolution of the CENPD/Environmental Protection Agency (EPA) Region X issue, concerning Section 404 and Section 402 of the Clean Water Act jurisdiction over the discharge of mine tailings into waters of the United States. Although general in nature, your request is within the context of permit applications from Echo Bay Exploration for the Alaska-Juneau (A-J) Gold Mine and Kensington Venture for the Kensington Gold Mine. I have determined that, in the interest of time, it is appropriate for HQUSACE to work with EPA Headquarters to develop specific guidance for the two aforementioned cases first, then to develop guidance for dealing with the general questions you have raised and others which are likely to be raised during the section 404 permit review of applications on a nationwide basis. Therefore, the guidance provided below will address only the issues specific to the applications for A-J and Kensington Gold Mines.

2. The applications for A-J and Kensington Gold Mines involve requests for section 404 permits to discharge fill material which will create basins for the disposal and treatment of mine tailings. It is agreed that the mining companies need a section 404 permit for the discharge of fill material to create the basin itself, and that a section 402 permit is needed for any discharges flowing out of the basin following treatment.

3. The point of disagreement between EPA Region X and CENPD has been whether the Corps of Engineers as part of the section 404 permit review process, or EPA, as part of the section 402 permit review process, should consider the effect of disposing mine tailings in the basin. HQUSACE and EPA Headquarters agree that if the basins to be created by the discharge of fill material, which are contemplated as part of the A-J and Kensington Gold Mine projects, are permitted under section 404 for purposes of creating a waste treatment system, they would no longer be waters of the United States [see 33 CFR 328.3(a) and 40 CFR 122.2, 230.3(s), and 323.3(q)]. Consequently, there is no need for a

Exhibit 27, page 1

CECW-OR
SUBJECT: Permitting of Mine Tailings

section 402 or an additional section 404 permit to discharge the tailings into the system. Our position is that the potential impacts of the discharge of mine tailings must be considered, within the context of the section 404 permit evaluation and public interest review, as secondary impacts. To the extent practical, the section 402 (National Pollutant Discharge Elimination System (NPDES)) permit for the effluent out of the basin should also address such impacts. Ideally, these two permit evaluation processes should take place simultaneously and with the maximum amount of coordination possible.

4. For the purposes of the proposed A-J and Kensington Gold Mine projects, EPA will take the lead in analyzing those waste treatment issues "inside" the proposed waste treatment system raised by the permit applications which affect the effluent's compliance with NPDES criteria. EPA will provide technical advice on water quality issues and will assist in the Corps section 404(b)(1) guidelines evaluation, which will include an analysis of the secondary impacts of the basins, recognizing their intended use. The waste treatment facility must be designed in a manner which allows discharges out of the system to meet minimum NPDES standards. In addition, to protect water quality, a liner, which most likely will involve a discharge requiring section 404 authorization, may be appropriate. EPA will provide guidance to the Corps as to whether such a liner, or any other construction feature to address such issues as the erosion of tailings after reclamation, is required. If such construction features are recommended by EPA, the Corps will require the applicant to submit revised plans which will include the liner or any other appropriate construction feature(s). Any section 404 permit must be based on the revised plans and conditioned so that construction of any portion of the facility is contingent on construction of the liner and other required features.

5. During evaluation of the section 404 permit, the Corps will consider the impacts of the entire basin on aquatic resources, including wetland values, and will require mitigation in accordance with current guidance for Alaska. EPA will recommend, for Corps consideration, specific mitigation measures needed to offset the loss of aquatic resource functions associated within the basin.

6. The section 404 permit will contain special conditions related to the construction of the waste treatment facility including construction activities associated with protecting water quality (e.g., clay liner). EPA will provide the Corps with appropriate conditions relating to construction activities

2

CECW-OR
SUBJECT: Permitting of Mine Tailings

and associated water quality impacts. Consistent with enforcement discretion and the 1989 Memorandum of Agreement between the Department of the Army and EPA concerning Federal Enforcement for the Section 404 Program of the Clean Water Act, the Corps will have first right of refusal to enforce all section 404 permit conditions including those associated with the construction of the clay liner, and its subsequent effectiveness, or other water quality maintenance features. If the Corps chooses not to enforce conditions associated with water quality maintenance features, consistent with enforcement discretion, EPA may enforce such section 404 permit conditions. Any restrictions to ensure that the discharge from the basin will meet effluent guidelines will be through the section 402 permit. The section 404 permit will not be conditioned to control operational use of the facility (i.e., discharging material into the treatment facility).

7. A copy of this endorsement has been provided to the Environmental Protection Agency, Office of Wetlands, Oceans, and Watersheds. If you have any additional questions on this matter, please call Ms. Cheryl Smith at (202) 272-0817.

JOHN F. STUDT
Chief, Regulatory Branch
Operations, Construction
and Readiness Division
Directorate of Civil Works