

UNITED STATES DEPARTMENT OF COMMERCE
**National Oceanic and Atmospheric Administration**
National Marine Fisheries Service
P.O. Box 21668
Juneau, Alaska 99802-1668

December 3, 2004

Forrest Cole
United States Forest Service
Juneau Ranger District
8465 Old Dairy Road
Juneau, Alaska 99801

**RECEIVED**
DEC 0 7 2004
CENPA - CO - R - E - JFO
Alaska District Corps of Engineers

John Leeds
United States Army Corps of Engineers
8800 Glacier Hwy, Suite 106
Juneau, Alaska 99801

RE: Kensington Gold Project, Biological Assessment/Evaluation for Threatened, Endangered, and Forest Service Sensitive Listed Wildlife Species

Dear Mr. Cole and Mr. Leeds:

This letter acknowledges the National Marine Fisheries Service (NMFS) November 17, 2004 receipt of your November 16, 2004 letters jointly requesting initiation of formal section 7 consultation under the Endangered Species Act (ESA). The consultation concerns the effects of the proposed Kensington Gold Mine Project to listed marine species in Berners Bay, specifically Steller sea lions (both eastern and western Distinct Population Segments) and humpback whales. NMFS has reviewed the joint Biological Assessment/Biological Evaluation (BA/BE) that accompanied your letters with respect to these relevant listed species and has determined that the proposed action as described:

1) construction of a dock at Cascade Point;
2) crew shuttle transport between Cascade Point and Slate Creek Cove docks; and
3) barge transit in and out of Berner's Bay docking at Slate Creek Cove

**is likely to adversely affect** Steller sea lions and humpback whales. We disagree with the conclusion of the BA/BE (Section 7, Summary of Determination of Effect) that the action as described **is not likely to adversely affect** these ESA-listed species. Under ESA section 7 consultation guidance, a 'not likely to adversely affect' determination is only appropriate when all effects on listed species are expected to be discountable, insignificant, or completely beneficial (NMFS 1998). Further, the determination of adverse effect is not dependent upon the number of animals taken, whether several dozen or a single animal.



Our conclusion is based upon the potential for disturbance to Steller sea lions and humpback whales and possible disruption of the prey base as a result of crew shuttle transit and dock location/construction. Cooperative feeding by Steller sea lions has been well documented in Berners Bay; the eulachon and herring runs in April and May are likely to be energetically important to foraging Steller sea lions at this time of the year due to increased metabolic demands placed on pregnant females, females with pups, and males preparing to hold territory on the rookeries during the summer. Vessel transit across Berners Bay may result in adverse effects on Steller sea lions through changes in behavior to avoid traffic, especially due to the cooperative feeding tactics employed in Berners Bay. Likewise, regular vessel activity in Berners Bay may displace humpback whales from important foraging areas.

Regular shuttle transit of crew and supplies at proposed speeds of 20-30 knots in this area also introduces for humpback whales the risk of collision associated with high speeds and frequent transport. Under the MMPA, collision resulting in injury or mortality (level A harassment), or disturbance (level B harassment) may result in illegal take; such incidents would also be considered illegal take under the ESA. For these reasons, NMFS remains concerned about the number of daily vessel transits and speed of ferry traffic proposed for Kensington Mine operations.

Indirect impacts of constructing a dock facility at Cascade Point on the herring population may adversely affect foraging Steller sea lions throughout Lynn Canal. Construction of a marine terminal at Cascade Point may decrease important habitat for herring spawning and may affect the future productivity of the stock, and subsequently the availability to Steller sea lions. In addition, NMFS has concerns about dock location and construction as proposed in Slate Creek Cove for access to the Kensington mine. The rocky shorelines on either side of the cove are well-known haul-outs for both Steller sea lions and harbor seals. Finally, the potential for increased usage of these docks as public facilities could substantially increase the traffic in Berners Bay, and adversely affect listed marine mammal species.

The BA/BE includes numerous mitigation measures for humpback whales and Steller sea lions in order to avoid adverse impacts. Generally, NMFS agrees that the proposed measures are necessary, but are not adequate in and of themselves to conclude that the activities associated with the Kensington mine are not likely to adversely affect these listed species. Given the potential for disturbance and disruption to listed marine mammals using Berners Bay as a result of the proposed action, as well as potential indirect impacts to habitat and prey species, NMFS believes that a 'not likely to adversely affect' determination is not an appropriate conclusion for the proposed action.

During meetings with the action agencies and applicant during the informal consultation process, NMFS recommended several measures to limit adverse affect to listed marine mammals in Berners Bay and alleviate the need for formal consultation. Namely, these consisted of using an alternate dock location to Cascade Point and suspending vessel operations during the spring eulachon/herring runs. From the outcome of these meetings and your current request for formal consultation, it is our understanding that these

recommendations are not acceptable to the applicant at this time. Thus, formal consultation will be initiated per your request and the statutory time allowance of 135 days to complete the consultation begins with the date of our receipt of your letters (i.e., November 17, 2004).

NMFS will produce a single biological opinion to serve the consultation requests of both the United States Forest Service and the United States Army Corps of Engineers. All information required of your agencies to initiate consultation was either included with your letters or is otherwise accessible for our consideration and reference. Section 7 allows the Service up to 90 calendar days to conclude formal consultation with your agencies and an additional 45 calendar days to prepare our biological opinion (unless we mutually agree to an extension). Therefore, we expect to provide you with our biological opinion no later than April 1, 2004.

As a reminder, the ESA requires that after initiation of formal consultation, Federal action agencies may not make any irreversible or irretrievable commitment of resources that limits future options. This practice insures that agency actions do not preclude the formulation or implementation of reasonable and prudent alternatives that avoid jeopardizing the continued existence of endangered or threatened species or destroying or modifying their critical habitats.

We also remind you of the requirements of MMPA 101(a)(5) for take of marine mammals through an incidental harassment authorization (IHA) or the promulgation of regulations and issuance of a Letter of Authorization (LOA) under those regulations. For ongoing projects such as the operation of the Kensington Mine, the regulatory/LOA method is usually pursued. It is likely that this would be necessary (given the current proposed action) for Steller sea lions (eDPS and wDPS), harbor seals, and humpback whales. The MMPA specifically prohibits the taking of marine mammals, including harassment, unless the activity is exempted by law or permitted under the MMPA. If an IHA or LOA is not obtained for take of marine mammals under the MMPA, any such take—including take by harassment—would be prohibited by the MMPA. An IHA or LOA can be applied for through NOAA Fisheries' Headquarters Office by contacting Ken Hollingshead at 301-713-2322.

If NMFS determines that the proposed action will result in a take of a listed species, NMFS is required to provide with the biological opinion an incidental take statement (ITS) under the ESA. It is important to note that despite the issuance of an ITS pursuant to the biological opinion, any take of marine mammals would be prohibited if the requirements of MMPA 101(a)(5) have not been met (50 CFR 402.14(i)). Because the ESA and MMPA processes are inter-related in this manner, the action agencies should discuss with NMFS the process for authorizing unintentional take associated with this project. An IHA/LOA should be sought as soon as possible in order for the biological opinion to be completed according to the above timeline.

If you have any further questions concerning this letter, please contact Kaja Brix, Protected Resources Division, NOAA Fisheries at (907) 586-7824.

Sincerely,

James W. Balsiger
Regional Administrator

cc: Hanh Gold, USEPA; Luke Russell, Coeur d'Alene Mines; David Goade, Goldbelt, Inc.