SUE ELLEN WOOLDRIDGE
United States Department of Justice
Environment and Natural Resources Division
Washington, D.C.
TIMOTHY M. BURGESS
United States Attorney
Anchorage, Alaska
MARK A. NITCZYNSKI
US Department of Justice
Environmental Defense Section
1962 Stout Street - 8th Floor
Denver, CO  80294
Phone: (303) 844-1498
Fax: (303) 844-1350
mark.nitczynski@usdoj.gov
RICHARD L. POMEROY
Assistant United States Attorney
District of Alaska
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9
Anchorage, Alaska  99513
Telephone: (907) 271-5071

Attorneys for Defendants United States
Army Corps of Engineers, et al.


## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

| | | |
|---|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, <u>et al.</u>, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. J05-0012 CV (JKS) |
| v. | ) ) | UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR |
| UNITED STATES ARMY CORPS OF ENGINEERS, <u>et al.</u>, | ) ) ) | INUNCTION PENDING APPEAL |
| Defendants. | ) ) ) ) | |

The Federal Defendants, United States Army Corps of Engineers, <u>et al.</u>, hereby oppose

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)

Plaintiffs' Motion for Injunction Pending Appeal (Docket No. 119) ("PI Motion").  The PI

Motion should be denied for the reasons set forth below.[1]

<u>BACKGROUND</u>

As the Court is well aware, this case involves an APA challenge to a Clean Water Act

("CWA" or "Act") section 404 permit issued by the Corps of Engineers to Coeur Alaska, Inc.

("Coeur Alaska") for development of  Kensington Mine, a gold mine north of Juneau, Alaska.

The permit allows the mine to discharge slurried tailings to the bottom of Lower Slate Lake, a

nearby lake that will be dammed and serve as the tailings repository for the mine.  August 4,

2006 Memorandum Decision (Docket No. 117) at 2.  The legal issue in the case was whether the

tailings discharges were properly regulated under CWA section 404, 33 U.S.C. § 1344, pursuant

to the May 9, 2002 "fill rule" promulgated jointly be EPA and the Corps, or must instead be

regulated under CWA section 402.  33 U.S.C. § 1342.  After the Corps issued a revised Record

of Decision on March 29, 2006, expedited briefing on cross-motions for summary judgment was

completed on May 17, 2006.  Plaintiffs challenged both the validity of the fill rule and the

application of those regulations to the Kensington Mine permit.  <u>Id.</u> at 9-11.

On August 4, 2006, the Court denied Plaintiffs' motion for summary judgment, granted

the Federal Defendants' cross-motion, and entered judgment in the Federal Defendants' favor.

Memorandum Decision at 11; Judgment in a Civil Case (Docket No. 118).  As to the validity of

---

[1]  Plaintiffs also have sought "emergency" injunctive relief from the Ninth Circuit.  On August 10, 1006, Plaintiffs filed an "Emergency Motion Under Circuit Rule 27-3" seeking injunctive relief essentially identical to that sought in the PI Motion.  Briefing on that motion has concluded.  The Federal Defendants and intervenors have argued that Plaintiffs' Ninth Circuit motion is improper under Fed. R. App. P. 8.

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    2

the regulations, the court accorded deference to the fill rule under Chevron U.S.A., Inc. v.

NRDC, 467 U.S. 837, 842 (1984) ("Chevron"), and concluded that the regulations were a

permissible construction of the CWA.  Memorandum Decision at 9.  For the Kensington Mine

permit at issue here, the court deferred to the agencies' "duly adopted regulations" and

determined that the Corps' interpretation of the fill rule was a reasonable one.  Id. at 11.  The

court rejected Plaintiffs' argument, based primarily on selected excerpts from the preamble to the

fill rule, that the agencies did not intend to include the mine tailings as "fill material."  Id.

　　　　Also on August 4, 2006, Plaintiffs filed the PI Motion, seeking an order enjoining the

Corps, the Forest Service and Coeur Alaska from "authorizing, allowing or conducting any

further construction activities relating to the use of the lake as a disposal site, including cutting

trees, building roads, clearing shrubs, excavating wetlands, building dams or other structures, or

altering the natural water level of Lower Slate Lake or the natural flow of East Fork Slate Creek"

until the Ninth Circuit reaches a final decision on the merits.  Proposed Order Granting

Injunction Pending Appeal at 2 (Docket No. 119).  Plaintiffs did not move for a preliminary

injunction prior to entry of judgment against them.  On August 4, Plaintiffs also moved for an

expedited hearing on their PI Motion.  (Docket No. 120.)  On August 10, 2004, the Court denied

the motion to expedite.  Minute Order From Chambers Re: Motion at Docket No. 120 ("Minute

Order") (Docket No. 132.)  The Court concluded that "Plaintiffs have not shown that they will

suffer irreparable injury or harm if the motion for an injunction pending appeal is heard in the

ordinary course and time."  Minute Order at 1.

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    3

STANDARD FOR ISSUING PRELIMINARY INJUNCTION PENDING APPEAL

An injunction pending appeal is an "extraordinary remedy," see Shelton v. Nat'l Collegiate Athletic Ass'n, 539 F.2d 1197, 1199 (9th Cir. 1976), and the movant bears the burden of justifying interim relief. Granny Goose Foods, Inc., v. Teamsters, 415 U.S. 423, 442-43 (1974). The standard for evaluating motions for injunctions pending appeal is similar to that employed in deciding whether to grant a preliminary injunction. See Nevada Airlines, Inc. v. Bond, 622 F.2d 1017, 1018 n.3 (9th Cir.1980). Thus, to prevail on their motion for a preliminary injunction here, Plaintiffs must meet their burden to demonstrate "either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in [their] favor." Preminger v. Principi, 422 F.3d 815, 822-23 (9th Cir. 2005) (quoting A & M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir.2001)). Both of these approaches require the court to assess the merits of the parties' positions and the harm or hardship they will face from a grant or denial of the preliminary injunction. Id. at 823. Where the public interest is involved, the Court also reviews "whether [or not] the public interest will be advanced by granting preliminary relief." Id. (quoting Overstreet v. United Bhd. of Carpenters & Joiners, Local Union No. 1506, 409 F.3d 1199, 1207 (9th Cir.2005)).

In the Minute Order, this Court summarized as follows the test for whether to issue an injunction pending appeal:

> Essentially, courts in the Ninth Circuit . . . apply a sliding scale balancing the likelihood that the moving party will prevail against the harm to be anticipated to a party if the injunction is granted or denied. If the moving party establishes a likelihood of success on the merits and irreparable injury if the motion is denied, the injunction should issue. Failing this a

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)          4

moving party must show at least a possibility of success on the merits *i.e.* that reasonable jurists could differ on the controlling questions of law in light of the facts and that a balancing of the hardships as well as the public interest tilts in its favor.

Minute Order at 1. Turning specifically to this case, the Court further stated:

The Court at this stage is satisfied that Congress has made its intent clear and that reasonable jurists could not differ. Its reasons are set out in its order at Docket No. 117. . . Unless the court decides this issue in plaintiffs' favor *i.e.* that a reasonable jurist could ignore Chevron and conclude that Congress intended to govern the permits in this case under § 402 rather than under § 404 no injunction on appeal should issue since the court will not reach the question of balancing the hardships.

Id. at 2.

Not every violation of law mandates injunctive relief, even where a court finds a violation of an environmental statute. Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982); Alaska Wilderness Recreation & Tourism Ass'n v. Morrison, 67 F.3d 723, 731-32 (9th Cir. 1995). There is not necessarily a presumption of irreparable injury in environmental cases, and courts must balance the equities. Romero-Barcelo, 456 U.S. at 312. See also Forest Conservation Council v. United States Forest Service, 66 F.3d 1489, 1496 (9th Cir. 1995) ("injunctive relief is an equitable remedy, requiring the court to engage in the traditional balance of harms analysis, even in the context of environmental litigation"). Further, the Ninth Circuit has explained that courts "must look at the likelihood of future harm before deciding whether to grant an injunction." National Wildlife Fed'n v. Burlington Northern Railroad, 23 F.3d 1508, 1510 (9th Cir. 1994) 23 F.3d at 1511. "[W]hat we require is a definitive threat of future harm . . . not mere speculation." Id. at 1512 n.8.

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    5

<u>ARGUMENT</u>

I.      Plaintiffs Have Not Established Probable Success on the Merits or Raised Serious
        <u>Questions About the Merits of Their Claims.</u>

        Given this Court's Memorandum Decision, Plaintiffs obviously are unable to

demonstrate probable success on the merits.  Indeed, other than the bare assertion that "the Court

of Appeals could decide the matter differently," PI Motion at 4, and the unsupported statement

that "Plaintiffs have raised serious questions going to the merits of their claims," PI Motion at 6,

the PI Motion does not even address the merits of Plaintiffs' arguments.  Thus, the PI Motion

does not even attempt to meet Plaintiffs' burden regarding the merits of their claims to justify the

extraordinary relief that Plaintiffs seek.

        The Court's Memorandum Decision, on the other hand, directly addressed Plaintiffs'

merits arguments – both on the validity of the fill rule and on the application of those regulations

here – and soundly rejected them.  Instead, the Court essentially adopted the analysis suggested

by the Federal Defendants and the intervenors.  On the issue of the validity of the regulations,

the Court observed that Congress "clearly and unequivocally delegated authority to EPA to issue

regulations" under the CWA, and pointed out that "it is undisputed that Congress has not defined

the term 'fill material.'"  Memorandum Decision at 9.  Accordingly, the Court properly deferred

under <u>Chevron</u> to the Corps' and EPA's definitions of "fill material" and "discharge of fill

material."  <u>Id.</u> at 9.  With this background, the Court correctly and squarely held that the

regulations were consistent with the CWA:

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                6

> This Court cannot say that the definition of fill material contained in the regulations promulgated by EPA and the Corps is not a permissible construction of the statute. [T]he Agency could reasonably conclude that its definition is consistent with the distinction Congress sought to make between § 402 and § 404.

Memorandum Decision at 9.

Regarding the application of the regulations to the discharges of slurried tailings at issue here, the Court correctly pointed out that it was "uncontested that the slurry to be discharged into Lower Slate Lake will 'change the bottom elevation of' the lake," and that, therefore, Plaintiffs "do not dispute" that the discharges "at least facially fall[] within the definition of 'fill material' contained in the regulations." Memorandum Decision at 9-10. The Court then directly addressed Plaintiffs' argument that, despite the fact that the tailings fell within the definition of fill material, the inclusion of mine tailings as fill material was contrary to the agencies' intent at the time the regulations were promulgated. Id. at 10. Plaintiffs' argument was based on selected preamble statements accompanying the fill rule. Id. at 10. But as the Court correctly pointed out, "Plaintiffs overlook or ignore other statements included in the adoption statement that contradict Plaintiffs' position." Id. at 11. As a result, the permitting of the tailings discharges under CWA section 404 was not contrary to the agencies' intent when the regulations were promulgated. Id. at 11.

After rejecting Plaintiffs' contentions regarding the preamble to the fill rule, the Court upheld the Corps' determination to regulate the tailings discharges at issue here under section 404:

> While Plaintiffs may offer another plausible interpretation of the regulations in question, that interpretation is not the only reasonable interpretation of the regulation and does not compel this court to strike down the Corps' different interpretation. Congress has deemed it

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    7

> appropriate to delegate to the Administrator of Environmental Protection
> Agency and the Secretary of the Army to coordinate their respective
> jurisdictions under the Clean Water Act. This they have done by duly
> adopted regulations to which this Court must defer.  The Corps properly
> issued the permit to Coeur Alaska, Inc. under § 404 of the Clean Water
> Act.

Memorandum Decision at 11.  (Footnote omitted.)[7]

In sum, neither the Court's Memorandum Decision nor the Clean Water Act suggest that Congress intended the tailings discharges at issue here to be governed by section 402 rather than section 404.  It is undisputed that this fundamental issue was left unresolved by Congress when it chose not to define the term "fill material," thus leaving it to the Corps and EPA to define which discharges would be regulated as discharges of fill material.  The agencies clarified that issue in the fill rule when they jointly promulgated the regulatory definitions of "fill material" and "discharge of fill material," and those definitions expressly cover the discharges at issue here.

Accordingly, there is no question that the Court's determination to defer under <u>Chevron</u> to the agencies' interpretations was proper.  Plaintiffs have not established any likelihood of success on the merits of their claims, nor have Plaintiffs even raised serious questions about the merits of their claims.  Thus, because a reasonable jurist could not "ignore <u>Chevron</u> and conclude that Congress intended to govern the permits in this case under § 402 rather than § 404[,] no injunction on appeal should issue."  Minute Order at 2.

---

[7]  The Court also directly rejected Plaintiffs' other primary contention – that is, that permitting the tailings discharges under section 404 violated other sections of the CWA, including section 306(e).  Section 306(e) does not apply to discharges regulated under section 404.  <u>See</u> United States' Opposition to Plaintiffs' Opening Brief, and Memorandum in Support of Motion for Summary Judgment on Count One of First Amended Complaint (Docket No. 80) at 26-31.  Thus, the Court ruled that "[i]f the permit was properly issued under § 404, those [other] provisions of the CWA are inapplicable."  Memorandum Decision at 7 n.35.

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    8

II.    <u>The Balance of Hardships and the Public Interest Favor Denial of the PI Motion</u>.

In seeking to make their case for irreparable harm, Plaintiffs focus on the allegedly imminent construction of the dam at Lower Slate Lake and the subsequent discharge of tailings to the lake.  PI Motion at 4-5.  However, the discharges to the lake are not projected to begin until 2007.  Moreover, Plaintiffs ignore entirely the reclamation that is required as part of the permitted activity.  As summarized in the Court's Memorandum Decision:

> Reclamation of the 62-acre lake, including capping of the tailings, is required as part of the project.  As a result, it is expected that the lake would recover over time, and would provide at least equivalent aquatic habitat and productivity as it does currently.  This includes habitat for Dolly Varden char and other aquatic organisms.

Memorandum Decision at 4-5.  (Footnotes omitted.)  Thus, as the Court recognized, "the overall impact of the project permitted by the Corps and EPA is to convert Lower Slate Lake into a <u>temporary</u> settling pond . . .." <u>Id.</u> at 5.  (Emphasis added.)  Ultimately, the lake will be larger than it currently is, and will be at least as environmentally productive.  <u>Id.</u>

In addition, Plaintiffs ignore the facts that water upstream of Lower Slate Lake will be diverted around the impoundment, that water from the impoundment will be treated before entering downstream waters, and that discharges of the treated water from the lake are subject to a CWA section 402 permit and must meet state water quality standards.  Memorandum Decision at 5.  Thus, any future harm from the permitted activity will not be great and the reclamation required as part of the project will ensure that the lake impacts are temporary.

Conversely, there is no question that the Kensington Mine is an economic boon to the Juneau area and Southeast Alaska.  The mining activity will stimulate local cash flow, broaden the local tax base and provide hundreds of local jobs, all in the context of a project that has

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    9

passed environmental muster with numerous agencies, this Court and other entities.  See, e.g.,

AR 000005, 000057, 001101.  In turn, while Coeur Alaska and the other intervenors are best

suited to address the details of the harm that they and numerous workers will endure if a

preliminary injunction is entered, there can be no question that the preliminary injunction that

Plaintiffs seek may effectively shut down mine development during the pendency of the

injunction, causing the loss of numerous jobs and the revenue that comes with them.

In addition, the United States has a strong interest in defending the validity of its

regulations and permits issued by the Corps, and in the permitting process itself.  As

demonstrated by the administrative record in this case, the process to obtain a permit under

CWA section 404 is complex, involving, inter alia, notice requirements, public and agency

comments, responses to comments, and compliance with both state and federal environmental

laws.  See, e.g., AR Doc. Nos. 01, 15-18, 37, 54, 61, 63-65, 68, 182-224, 226-249, 252-333, 336-

358, 362-384, 386.  That process should not be derailed by enjoining work that was properly

permitted under the CWA and the applicable regulations.

Finally, the proposed injunction is overbroad.  The only count in the amended complaint

is plead under the CWA.  First Amended Complaint at 11.  The harm alleged under the CWA

necessarily is harm to the waters of the United States, which is the extent of jurisdiction under

the CWA.  Thus, to the extent any injunctive relief is appropriate, it should extend only to

activities that would require a CWA permit.  See Save our Sonoran, Inc. v. Flowers, 408 F.3d

1113, 1123 (9th Cir. 2005).  Plaintiffs' proposed injunction would apply to the Forest Service

even though the Forest Service's approval of the plan of operations does not authorize work in

waters of the United States -- the Corps' section 404 permit does that.  Thus, even if some

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                                10

injunctive relief pending appeal were appropriate (which it isn't), there is no basis to enjoin the

Forest Service.

CONCLUSION

For all of these reasons, the PI Motion should be denied.

Respectfully submitted,

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
UNITED STATES DEPARTMENT OF JUSTICE


  /s/ Mark A. Nitczynski
MARK A. NITCZYNSKI
Environmental Defense Section
UNITED STATES DEPARTMENT OF JUSTICE
999 18th Street, Ste. 945
Denver, CO   80202
PHONE: (303) 312-7300
FAX: (303) 312-7331


TIMOTHY M. BURGESS
United States Attorney
District of Alaska
RICHARD L. POMEROY
Assistant U.S. Attorney


Attorneys for Defendants United States Army
Corps of Engineers, et al.

CERTIFICATE OF SERVICE

I, Mark A. Nitczynski, certify that on this August 22, 2006, I caused to be filed electronically the
foregoing UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR INUNCTION
PENDING APPEAL with the Clerk of Court using the CM/ECF system, which sent a Notice of
Electronic Filing to the following persons: Demian A. Schane and Thomas S. Waldo (counsel for
Plaintiffs); John C. Berghoff, Jr. (counsel for Defendant-Intervenor Coeur Alaska, Inc.); David
C. Crosby (counsel for Defendant-Intervenor Goldbelt, Inc.); Ruth Hamilton Heese and Cameron
Leonard (counsel for Defendant-Intervenor State of Alaska); John W. Hartle (counsel for *amicus*
City and Borough of Juneau); Amy Guerton Mead (counsel for *amicus* Southeast Conference);

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    11

and Stephen F. Sorenson (counsel for *amicus* Berners Bay Consortium).


   /s/ Mark A. Nitczynski
_____

MARK A. NITCZYNSKI

Southeast Alaska Conservation Council, et al. v.
United States Army Corps of Engineers, et al.,
No. J05-0012 CV (JKS)                    12