DAVID W. MÁRQUEZ, Attorney General
CAMERON M. LEONARD, Assistant Attorney General
RUTH HAMILTON HEESE, Assistant Attorney General
State of Alaska, Department of Law
P.O. Box 110300
Telephone:  (907) 451-2811
         or   (907) 465-3600
Facsimile:  (907) 465-6735
Juneau, Alaska 99811-0300
cam_leonard@law.state.ak.us
ruth_hamilton_heese@law.state.ak.us

Attorneys for Intervenor Defendant State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, *et al.*, <br><br>              Plaintiffs, <br><br>  v. <br><br>UNITED STATES ARMY CORPS OF ENGINEERS, *et al.*, <br><br>              Defendants, <br><br>  v. <br><br>COUER ALASKA, INC., *et al.*, <br><br>              Intervenor Defendants. | Case No. J05-0012CV (JKS) |

**STATE OF ALASKA'S OPPOSITION TO PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL**

The State opposes plaintiffs' (collectively referred to as "SEACC") Motion for Injunction Pending Appeal. In its order dated August 10, 2006, this court directed the parties to address the following specific question in their respective briefs on SEACC's motion: Could a reasonable jurist ignore the principle of judicial deference given to an agency's interpretation of the laws the agency administers and instead "conclude that Congress intended to govern the permits in this case under § 402 rather than under § 404," thus justifying issuance of an injunction pending appeal? The answer to this question is a resounding "no," given the long-standing legal precedent, statutory language, regulatory action, and facts applicable to this case.

I.  **Under the Deferential Standard of Review Applicable to this Case, Plaintiffs Have Failed to Raise a Serious Legal Question.**

As this court noted in its August 10th order, the seminal United States Supreme Court decision that controls the outcome of this case is *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984). The analysis begins with the court asking "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. If not, or if there is ambiguity in how Congress addressed the issue, then courts will give deference to the agency's construction of the statute it administers if that construction is reasonable and does not conflict with the expressed intent of Congress. *Id.* at 843-45; *United States v. Riverside Bayview Homes*, 474 U.S. 121, 131 (1985).

State's Opposition to Motion for                                                        Page 2
Injunction Pending Appeal

Indeed, deference is given by the courts particularly "where the Agency's decision on the meaning or reach of the Clean Water Act involves reconciling conflicting policies committed to the Agency's care and expertise under the Act." *Rybachek v. EPA*, 904 F.2d 1276, 1284 (9th Cir. 1990). If an agency's interpretation of the Clean Water Act is reasonable, a court "must defer to the agency's interpretation even if the agency could also have reached another reasonable interpretation." *American Mining Cong. v. EPA*, 965 F.2d 759, 764 (9th Cir. 1992). *See also, Chem. Mfrs. Ass'n v. NRDC*, 470 U.S. 116, 134 (1985) (deferring to EPA's interpretation of the Clean Water Act and stating that "we do not sit to judge the relative wisdom of competing statutory interpretations"). Because Congress bestowed on EPA and the Corps the authority to develop regulations interpreting complex Clean Water Act provisions that the agencies are charged to administer, there is no reason to depart from the judicial deference owed to those agencies' regulations. *See Gonzales v. Oregon*, 126 S. Ct. 904, 914-15 (2006); *Chevron*, 467 U.S. at 863-64.

Moreover, an agency's interpretation of its own regulations is entitled to judicial deference, unless plainly erroneous or inconsistent with the regulations. Such deference is the rule, not the exception. *See, e.g., Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *Wards Cove Packing Corp. v. NMFS*, 307 F.3d 1214, 1218 (9th Cir. 2002).

Under the Clean Water Act, Congress expressly created two regulatory programs. It required that the Corps regulate the discharge of dredged or fill material under the Section 404 program. 33 U.S.C. § 1344(a). Other discharges not involving fill material are regulated by the EPA under the Section 402 program. 33 U.S.C. § 1342. Congress also expressly provided that discharges covered by the Section 404 program are not subject to the Section 402 program. 33 U.S.C. § 1342(a)(1).

However, Congress did not define the terms "fill material" or "discharge of fill material" in the Clean Water Act. The Corps and EPA, acting in their administrative authorities, did define these terms to include mine tailings, slurry and overburden, in a way that does not conflict with any expressed intent of Congress. *See* 33 CFR § 323.2 [Corps' definition]; 40 CFR § 232.2 [EPA's definition]. It is undisputed that the tailings disposed of in the tailings storage facility (TSF) constructed at Lower Slate Lake will impact the bottom elevation of the TSF and will, accordingly, have the affect of fill. *See* Court's August 3, 2006 Decision, at pp. 9-10.

In its August 3, 2006 Decision, this court found that the federal agencies acted reasonably in issuing the 2002 rule defining the terms "fill material" and "discharge of fill material," and in interpreting and applying those revised definitions to regulate the Kensington mine tailings under a Section 404 permit. The agencies' actions were reasonable and do not conflict with any expressed intent of Congress. *Cf. Kentuckians for the Commonwealth, Inc. v.*

**State's Opposition to Motion for**     **Page 4**
**Injunction Pending Appeal**

*Rivenburgh*, 317 F.3d 425, 446 (4th Cir. 2003) (holding that the resolution between EPA and the COE of the line dividing their permitting responsibilities is "just the type of agency action to which the courts must defer").

In light of a long line of well-reasoned jurisprudence, it would be unreasonable for a court to ignore *Chevron* and its progeny, including Ninth Circuit case law, and determine that SEACC has raised any significant legal question that the tailings disposal into the Kensington mine TSF should be permitted under a Section 402 permit rather than a Section 404 permit. SEACC has not advanced any argument to warrant departure from the standard *Chevron*-based deferential review. Its motion for injunction pending appeal, based on arguments that fail to raise any significant legal question, and that have little likelihood of success on appeal, should be denied.

## II. The Balance of Hardships Tips Against an Injunction.

The Court has indicated that it will not reach the issue of balancing hardships in this matter unless it first concludes that SEACC has made an adequate showing on the merits. *See* August 10, 2006 Minute Order, at 2. The State offers the following discussion of relative hardships for the Court's consideration in the unlikely event that it reaches that stage of the analysis.

As an initial matter, SEACC has failed to show that it will suffer any continuing, irreparable injury from the permitted activities. The Final Supplemental Environmental Impact Statement and related environmental reviews

and studies underpinning the decision to issue a Section 404 permit for the TSF -- the key agency action challenged by the plaintiffs and upon which action SEACC admits all of its other challenges and alleged injuries hinge -- describe relatively short-term and minor environmental impacts as a consequence of tailings disposal at the TSF.  See generally, AR 3538-3691 (effects analysis of Alt. D).

The Corps of Engineers, in its 2006 Revised ROD, concluded that "the proposed discharge of tailings into Lower Slate Lake would not constitute a significant adverse environmental consequence." AR 61-64; see also AR 63-64. For instance, "the toxicity risks associated with the tailings will be low both during and after mining operations."  AR 4745.  Water discharging from the TSF to downstream receiving waters is expected to meet applicable water quality standards.  AR 65.  In fact, once mining operations cease and reclamation is carried out, Lower Slate Lake is expected to provide a greater area than at present of habitat suitable for, at the least, native species such as Dolly Varden char.  AR 13, 68, 3620-22.  Thus, the environment will suffer no permanent, irreparable injury from the mine operations.

On the other side of the scale, the state and local economies will suffer should an injunction issue. Contrary to SEACC's assertions, economic harms do factor into a court's determination of whether to issue injunctive relief, even in cases where a plaintiff has demonstrated environmental injury. *Hells Canyon Pres. Council*, 9 F. Supp. 2d 1216, 1245-46 (D. Oregon 1998) (holding not only that plaintiffs failed to prove actual success on the merits, but that the

**State's Opposition to Motion for**                                                             **Page 6**
**Injunction Pending Appeal**

irreparable injuries, including economic impacts, that local community would suffer by enjoining road reconstruction work outweighed environmental group's alleged environmental injury). In fact, potential significant economic harms formed part of the basis of the Supreme Court's denial of injunctive relief in *Amoco*. 480 U.S. at 544-45 (oil company's commitment of approximately $70 million dollars for oil exploration was weighed against plaintiffs' claimed environmental injuries).

The Kensington project in operation will have -- and is indeed currently providing during construction -- significant benefits for the State and public interest. See, e.g., AR 57-58 (Corps of Engineers' public interest review in revised ROD); AR 3645-46 (labor costs during construction estimated at $17.3 million); AR 3650-51 (annual wages during mine operation estimated at $15.1 million); AR 3654 (annual tax receipts to state and to Juneau estimated at $10.1 million). The mine will generate millions of dollars of revenue for the state, in the form of both mining license taxes and corporate income taxes. *See* Declaration of Richard Hughes in Support of State's Motion to Intervene, ¶¶ 5 – 8 (attached to this opposition as Exhibit A). It will also generate millions of dollars in income for the municipality of Juneau, in the form of both property taxes and sales taxes. Ex. A at ¶¶ 9 & 10.

Clearly, the economic impact of the mine extends far beyond the taxes paid to the state and municipalities, since it brings hundreds of jobs to the region. While these economic impacts may be difficult to quantify with precision,

there can be no dispute that they are both real and significant. *See generally* Amicus Brief of the Southeast Conference, Docket No. 68. Should this Court enjoin mine construction, the socio-economic harms to the State and its citizens would be extensive. The potential harms to the State and the public interest in this case weigh against issuance of the requested injunction pending appeal.

RESPECTFULLY SUBMITTED this 22nd day of August, 2006, at Juneau, Alaska.

By: /s/ CAMERON M. LEONARD
    Cameron M. Leonard
    Assistant Attorney General
    Alaska Bar No. 8406036

    State of Alaska, Department of Law
    100 Cushman Street, Suite 400
    Fairbanks, AK 99701
    Telephone: (907) 451-2811
    Facsimile: (907) 451-2985
    cam_leonard@law.state.ak.us

By: /s/ RUTH HAMILTON HEESE
    Ruth Hamilton Heese
    Assistant Attorney General
    Alaska Bar No. 9406064

    State of Alaska, Department of Law
    P.O. Box 110300
    Juneau, Alaska 99811-0300
    Telephone: (907) 465-3600
    Facsimile: (907) 465-6735
    ruth_hamilton_heese@law.state.ak.us

### CERTIFICATE OF SERVICE

I, Cameron M. Leonard, certify that on August 22, 2006, a copy of the foregoing document were served electronically to: John C. Berghoff, Jr., David C. Crosby, John W. Hartle, Amy Gurton Mead, Mark A. Nitczynski, Richard L. Pomeroy, Demian A. Schane, Stephen F. Sorensen, and Thomas S. Waldo.

By: /s CAMERON M. LEONARD
    Cameron M. Leonard
    Assistant Attorney General
    Alaska Bar No. 9406064

       State of Alaska
       Department of Law
       100 Cushman Street, Suite 400
       Fairbanks, AK  99701
       Telephone: (907) 451-2811
       Facsimile:  (907) 451-2985
       cam_leonard@law.state.ak.us