Demian A. Schane
Thomas S. Waldo
EARTHJUSTICE
325 Fourth Street
Juneau, Alaska 99801
Ph: 907-586-2751
Fax: 907-463-5891
Email: dschane@earthjustice.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, SIERRA CLUB, and LYNN CANAL CONSERVATION,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS; COLONEL TIMOTHY J. GALLAGHER, in his official capacity as District Engineer; LARRY L. REEDER, in his official capacity as Chief of the Regulatory Branch; DOMINIC IZZO, in his official capacity as Principal Deputy Assistant Secretary of the Army (Civil Works); and UNITED STATES FOREST SERVICE,<br><br>　　　　Defendants,<br><br>　　　　and<br><br>COEUR ALASKA, INC., GOLDBELT, INC., and the STATE OF ALASKA,<br><br>　　　　Intervenor-Defendants. | Case No. J05-0012 CV (JKS) |

## DECLARATION OF AARON ISHERWOOD

I, Aaron Isherwood, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am the coordinating attorney for the Sierra Club's national environmental law program. I work out of the headquarters office of the Sierra Club in San Francisco, California, and I am an attorney licensed to practice under the laws of the state of California. I am admitted to practice in the Ninth Circuit Court of Appeals, Northern and Eastern Districts of California, and Western District of Michigan, among other courts.

2. I am familiar with the organization, membership, policies, and practices of the Sierra Club. I have particular expertise and knowledge concerning the environmental law program and environmental litigation docket of the Sierra Club for the entire United States in federal and state courts.

3. My responsibilities include managing and supervising the internal process whereby the Sierra Club evaluates whether to initiate litigation to protect the environment. One important facet of that evaluation is an analysis of the financial obligations and risks involved in proposed environmental litigation. I am submitting this declaration to provide the Court with additional facts concerning the Sierra Club's ability to post a bond in the above-referenced litigation.

4. The Sierra Club is a national nonprofit environmental organization organized and existing as a California public-benefit corporation. Founded in 1892, it is the nation's oldest environmental organization. The Sierra Club has 68

chapters encompassing every state of the union and those chapters are further subdivided into nearly 400 local Sierra Club groups.  The Sierra Club's mission is a broad one to protect the wild places of the earth; to practice and promote the responsible use of natural resources; to educate and enlist the public to protect the environment; and to use all lawful means to achieve these objectives.  The Sierra Club seeks to carry out this mission nationwide and even internationally, and it employs grassroots organizing, public education and outreach, political endorsements, political lobbying, litigation, and other tactics in doing so.

     5.  The Sierra Club uses litigation to advance its environmental agenda by enforcing existing laws that protect the environment.  The organization prosecutes approximately 100 lawsuits annually and typically has a docket of approximately 200 open cases.  A relatively large proportion of Sierra Club's annual docket of cases are filed in federal court to protect federal public lands.  In many of these cases, the Sierra Club obtains preliminary injunctions.

     6.  The Sierra Club prosecutes these public interest lawsuits under "citizen suit" or "private attorney general" provisions that Congress has codified in environmental laws and under the Administrative Procedure Act.  These provisions recognize that citizens typically have no personal or financial stake in the litigation and therefore prosecute lawsuits that benefit the public as a whole.  The stated purpose and beneficial result of the successful prosecution of these kinds of cases

is that private resources are devoted to law enforcement to complement the often inadequate public resources provided by public enforcement agencies.

7. The lawsuits the Sierra Club prosecutes are without exception aimed at vindicating public rights. In these cases, the Sierra Club has no personal or financial stake in the litigation. In the present litigation, the Sierra Club will reap no financial benefit should it prevail in the lawsuit. The nonprofit laws under which the Sierra Club operates prevent the Sierra Club from prosecuting litigation aimed primarily at advancing its own or others' private interests.

8. The size of the Sierra Club budget reflects the fact that the Sierra Club has staff and volunteer members working in every state, in every major city, and in many towns and hamlets throughout the country. Much of the Sierra Club's budget is already committed to existing, ongoing programs. A very large proportion of these commitments include the salaries of existing staff members. These committed funds are not available for general litigation without laying off staff members and/or shutting down or significantly reducing existing, ongoing environmental programs.

9. The entire annual budget for the Environmental Law Program is approximately $1.4 million. The majority of these funds are already committed to pay the salaries and operating expenses of existing staff lawyers and support staff.

10. The imposition of a bond would have a chilling and concrete effect on the ability of the Sierra Club (or any public interest plaintiff) to prosecute lawsuits to advance public interests. If the financial burden of asserting public rights falls solely on the individual public interest litigant, then the incentives intentionally created by Congress to encourage citizen suits and to enforce compliance with environmental laws under the Administrative Procedure Act will be significantly reduced or eliminated.

11. The Sierra Club cannot post a substantial injunction bond without ending or significantly reducing ongoing, environmental programs and/or laying off related program staff. If the Sierra Club were forced to pay a substantial bond, it would be unable to pay the salaries and operating expenses of existing staff lawyers and support staff, thus crippling its litigation program. If it used other unrestricted funds (most of which, as explained above, are committed to existing staff and programs), the Sierra Club would need to eliminate, or sharply reduce, other environmental programs that advance its mission, and lay off program staff.

12. Thus, a single substantial injunction bond would greatly hinder the Sierra Club from carrying out its mission to protect the public interest through the courts. One such bond would consume an enormously disproportionate share of the Sierra Club's available litigation resources, greatly reducing the Sierra Club's ability to vindicate public rights. If the Sierra Club were required to post

substantial bonds in its lawsuits, it could not bear the financial risk of litigating the majority of its cases.

13. Nonprofit organizations operate in a marketplace with established standards for acceptable expenditures. Requiring a disproportionate share of the total litigation resources of the Sierra Club to be put to a single lawsuit would seem an unreasonable standard by any measure of nonprofit resource expenditure, and our donors would not support it.

I declare under penalty of perjury that the foregoing is true and correct.

8/21/06
Date

Aaron Isherwood